NO. 18-2370

_____

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**OUTDOOR AMUSEMENT BUSINESS ASSOCIATION, INC.,** *et al.*

**Plaintiffs/Appellants/Employers**

**v.**

**DEPARTMENT OF HOMELAND SECURITY,** *et al.*

**Defendants/Appellees/Government**

**and**

**MARGHARITA KURI,** *et al.*

**Intervenors**

_____

Appeal from the United States District Court for the District of Maryland
(Hon. Ellen L. Hollander, District Judge)

_____

## BRIEF OF EMPLOYER-APPELLANTS

_____

**Leon R. Sequeira, Esquire**
616 South Adams Street
Arlington, Virginia 22204
Phone: (202) 255-9023
E-mail:  lsequeira@lrs-law.com

**R. Wayne Pierce, Esquire**
The Pierce Law Firm, LLC
133 Defense Hwy, Suite 201
Annapolis, Maryland 21401-7015
410-573-9955
wpierce@adventurelaw.com

**Attorneys for Employers**

February 11, 2019

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 18-2370      Caption: Outdoor Amusement Business Association v. DHS

Pursuant to FRAP 26.1 and Local Rule 26.1,

See list of attached clients
(name of party/amicus)

who is     appellants    , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

ii

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☑ YES ☐ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

    No such member

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

iii

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | vi |
| Glossary of Abbreviations, Acronyms, Terms, and Visas | xii |
| **Jurisdiction** | 1 |
| **Issues** | 1 |
| **Statement of Case** | 1 |
| **Summary of Argument** | 9 |
| **Argument** | 11 |
| **I. Standard of Review** | 11 |
| **II. Standing** | 11 |
| **III. Congress Did Not Authorize DOL Individually, nor DOL And DHS Jointly, to Promulgate Legislative Rules for the H-2B Visa Program or DOL to Adjudicate H-2B Labor Certifications** | 12 |
| A. DHS-DOL's Rulemaking and DOL's Adjudication Are Precluded by Canons, Clear-Statement Rules and Presumptions | 14 |
| 1. Constitutional-Avoidance Doctrine | 15 |
| 2. Clear-Statement Rule | 17 |
| 3. Major-Question Doctrine | 18 |
| 4. Rule of Lenity | 19 |
| 5. Presumptions | 20 |
| B. DHS-DOL's Rulemaking and DOL's Adjudication Violate the Statute | 21 |
| 1. The Statutory Text Shows Congress Did Not Intend DOL to Become a Final Decisionmaker or "Joint" Actor | 22 |
| 2. The Statutory Structure Shows Congress Did Not Intend DOL to Become a Final Decisionmaker or "Joint" Actor | 23 |
| 3. Pre-Enactment Legislative History Shows Congress Did Not Intend DOL to Become a Final Decisionmaker or a "Joint" Actor | 28 |
| 4. Post-Enactment Legislative History Similarly Shows Congress Did Not Intend DOL to Become a Final Decisionmaker or a "Joint" Actor | 31 |
| C. Congress Did Not Bestow Independent Governmental Authority on DOL | 37 |

iv

    1. DOL Did Not Engage in Longstanding Legislative     37
Rules

    2. Congress Did Not Acquiesce in DOL's 1968     40
Procedures

    D. Employers' Challenge to the 2008 DHS Rule Is Not     43
Time-Barred

**IV. Congress Did Not Authorize DHS to Redelegate to DOL**     48
**Governmental Authority**

    A. The Redelegation Clause Textually Prohibits DHS From     50
Redelegating Governmental Functions

    1. Scope of §1103(a)(6)     50

    2. "Powers, Privileges, or Duties."     51

    3. Transfers Under §1103(a)(6) May Only Be Conferred     52
on Low-level Employees

    B. History Shows That Congress Did Not Authorize     52
Redelegating Governmental Functions

    C. The INA's Structure Shows That Congress Did Not     53
Authorize Redelegation of Functions

    D. DHS Cannot Claim Deference When Construing     54
§1103(a)(6)

**V. DOL Exceeded the Scope Of Its Redelegated Enforcement**     55
**Authority**

**Conclusion**     58

# TABLE OF AUTHORITIES

| **CASES** | **Page** |
|---|:---:|
| *A.F.L.-C.I.O. v. Dole, 923 F.2d 182, 187 (D.C. Cir. 1991)* | 3 |
| *Adams Fruit Co. v. Barrett, 494 U.S. 638, 649-50 (1990)* | 57 |
| *Alvin Lou Media, Inc. v. Federal Communications Comm'n*, 571 F.3d 1 (D.C. Cir. 2009) | 44 |
| *American Bus Ass'n v. Slater, 231 F.3d 1, 9 (D.C. Cir. 2000)* | 21 |
| *Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation, 792 F.2d 782, 796 (9th Cir. 1986)* | 54 |
| *Associated Dry Goods Corp. v. EEOC, 720 F.2d 804, 809 (4th Cir. 1983)* | 38 |
| *Batterton v. Francis*, 432 U.S. 416 (1977) | |
| *Bayou Lawn & Landscape Servs. v. Solis*, No. 3:12cv183, 2012 U.S. Dist. Lexis 69297 (N.D. Fla. Apr. 26, 2012), *aff'd*, 713 F.3d 1080 (11th Cir. 2013) | 12 |
| *Bayou Lawn & Landscape Servs. v. Perez*, 81 F. Supp. 3d 1291 (N.D. Fla. 2014), *vacated on other grounds*, 621 F. Appx. 620 (11th Cir. 2015) | 14 |
| *Bayou Lawn & Landscape Servs. v. Secretary of Labor*, 713 F.3d 1080 (11th Cir. 2013) | 14 |
| *Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)* | 13 |
| *Brown v. Gardner*, 513 U.S. 115 (1994) | 23 |
| *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155 (4th Cir. 1998), *aff'd*, 529 U.S. 120 (2000) | 22 |
| *Butterbaugh v. DOJ, 336 F.3d 1332, 1342 (Fed. Cir. 2003)* | 54 |
| *Chamber of Commerce v. National Labor Relations Bd., 856 F. Supp. 2d 778, 796 (D.S.C. 2012) aff'd, 721 F.3d 152 (4th Cir. 2013)* | 19 |
| *Chase Glades Farms v. Wirtz*, No. 65-86-Civ. (M.D. Fla. filed May 5, 1965) | 39 |
| *Chen v. Carroll, 48 F.3d 1331, 1339 (4th Cir. 1995)* | 16 |
| *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) | 16 |
| *Clark, 543 U.S. 371, 381 (2005)* | 15 |
| *CTIA - The Wireless Ass'n v. Federal Communications Comm'n*, 466 F.3d 105 (D.C. Cir. 2006) | 44 |
| *DeBartolo Corp. v. Florida Gulf Coast Bldg. Council, 485 U.S. 568, 575 (1988)* | 15 |
| *Department of Transpo. v. Association of Am. R.R., 135 S. Ct. 1225, 1241 (2015)* | 50 |

| CASES | Page |
|---|---|
| *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 250, 258 (2001) | 17 |
| *ETSI Pipeline Project v. Missouri*, 484 U.S. 495 (1988) | 21 |
| *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) | 16 |
| *Environmental Def. v. Environmental Protection Agency*, 467 F.3d 1329 (D.C. Cir. 2006) | 44 |
| *Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745 (1973) | 58 |
| *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111 (1947) | |
| *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) | 24 |
| *Fund for Animals v. Kempthorne*, 538 F.3d 124 (2d Cir. 2008) | 54 |
| *G.H. Daniels III & Assocs., Inc. v. Perez, 2015 U.S. App. Lexis 15689, at *12 (10th Cir. 2015)* | 23 |
| *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994) | 41 |
| *Greene v. McElroy*, 360 U.S. 474 (1959) | 43 |
| *Gonzales v. Oregon*, 546 U.S. 243 (2006) | 16 |
| *Haggar Co. v. Helvering*, 308 U.S. 389 (1940) | 41 |
| *Hampton v. Mow Sun Wong, 426 U.S. 88, 114-17 (1976)* | 42 |
| *Hosh v. Lucero, 680 F.3d 375, 383 (4th Cir. 2012)* | 20 |
| *INS v. St. Cyr. 533 U.S. 289, 320 n.45(2001)* | 17 |
| *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001) | 38 |
| *Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S. 607, 646 (1980) | 15 |
| *Interstate Commerce Commission v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270 (1987) | 44 |
| *James V. Hurson Assocs., Inc. v. Glickman, 229 F.3d 277, 282 (D.C. Cir. 2000)* | 38 |
| *Jerri's Ceramic Arts v. Consumer Product Safety Comm'n., 874 F.2d 205, 207 (4th Cir. 1989)* | 37 |
| *King v. Burwell*, 759 F.3d 358 (4th Cir. 2014), *aff'd*, 135 S. Ct. 2480 (2015) | 12 |
| *Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 374 (1986)* | 13 |
| *Louisiana Forestry Ass'n Inc. v. Secretary of Labor*, 745 F.3d 653 (3d Cir. 2014) | 3 |
| *MCI Telecomm S. Corp. v. AT&T Co., 512 U.S. 218, 231 (1991)* | 18 |
| *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144 (1991) | 17 |
| *Mead Corp. v. Tilley, 490 U.S. 714, 726 (1989)* | 57 |
| *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) | 47 |

| CASES | Page |
|---|---|
| *Miller v. United States*, 294 U.S. 435 (1935) | 25 |
| *Mistretta v. United States, 488 U.S. 361, 371 (1989)* | 12 |
| *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) | 18 |
| *Ohio Valley Env'tl Coal. v. Aracoma Coal Co., 556 F.3d 177, 189 (4th Cir. 2009)* | 11 |
| *Outdoor Amusement Bus. Ass'n, Inc. v. DHS, 334 F. Supp.3d 697 (D. Md. 2018)* | 8 |
| *Pan-Am. Petroleum Co. v. United States, 9 F.2d 761, 770-71 (9th Cir. 1926)* | 43 |
| *Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935) | 48 |
| *Perez v. Perez*, No. 3:14-cv-682, 2015 U.S. Dist. Lexis 27606 (N.D. Fla. Mar. 4, 2015) | 14 |
| *Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147 (D.C.Cir.1990) | 46 |
| *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) | 22 |
| *Railway Labor Execs. Ass'n v. National Mediation Bd., 29 F.3d 655, 670 (D.C. Cir. 1994)* | 57 |
| *Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 483-84 (1999)* | 39 |
| *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663 (4th Cir. 1977) | |
| *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc., 547 U.S. 47, 52 n.2 (2006)* | 11 |
| *Rust v. Sullivan, 500 U.S. 173, 191 (1991)* | 15 |
| *San Pedro v. United States*, 79 F.3d 1065 (11th Cir. 1996) | 48 |
| *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935) | 16 |
| *Schism v. United States, 316 F.3d 1259, 1294-95 (Fed. Cir. 2002)* | 42 |
| *Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87-89, 94-95 (1943)* | 16 |
| *South Carolina Med. Ass'n v. Thompson, 327 F.3d 346, 351 (4th Cir. 2003)* | 15 |
| *Sweet Life v. Dole, 876 F.2D 402, 405 (5th Cir. 1989)* | 39 |
| *Texas v. United States, 809 F.3d 134, 180-81 (5th Cir. 2015)* | 19 |
| *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S.Ct. 2507, 2520 (2015)* | 41 |
| *Union Pac. R.R. Co. v Surface Transp. Bd.*, 863 F.3d 816 (8th Cir. 2017) | 20 |
| *U.S. Tel. Ass'n v. FCC, 28 F.3d 1232, 1235 (D.C. Cir. 1994)* | 39 |
| *U.S. Telecom Ass'n v. FCC, 855 F.3d 381, 419 (D.C. Cir. 2017)* | 19 |
| *United States v. Deaton*, 332 F.3d 698 (4th Cir. 2003) | 12 |
| *United States v. Mead*, 533 U.S. 218 (2001) | 17 |
| *United States v. Nixon, 418 U.S. 683,694-96 (1974)* | 56 |

| CASES | Page |
|---|---|
| *United States v. Thompson/Center Arms Co., 504 U.S. 505, 518 n.10 (1992)* | 20 |
| *United States v. Touby, 909 F.2d 759, 770 (3d Cir. 1990)* | 48 |
| *Utility Air Regulatory Group v. Environmental Protection Agency*, 134 S.Ct. 2437 (2014) | 22 |
| *Virginia Agric. Growers' Ass'n v. DOL, 756 F.2d 1025, 1027, 1031 (4th Cir. 1985)* | 2 |
| *WEC Carolina Energy Solutions LLC v. Miller, 687 F.3d 199, 204-206 (4th Cir. 2012)* | 20 |
| *Washington v. Roberge, 278 U.S. 116, 122-23 (1928)* | 12 |
| *Whitman v. American Trucking Ass'ns*, 531 U.S. 457 (2001) | 13 |
| *Whitman v. United States, 135 S.Ct. 352, 354 (2014) (Scalia, J., respecting denial of certiorari)* | 20 |

| STATUTES | Page |
|---|---|
| 5 U.S.C. § 702 | 11 |
| 5 U.S.C. § 704 | 1 |
| 8 U.S.C. §1101 (a) (15) (H) (ii) (b) | 2 |
| 8 U.S.C. § 1103 (a) (1) | 3 |
| 8 U.S.C. § 1103 (a) (6) | 4 |
| 8 U.S.C. § 1103 (g) (1) | 51 |
| 8 U.S.C. §1104 (a) | 52 |
| 8 U.S.C. § 1184 (b) | 24 |
| 8 U.S.C. §1184 (c) (1) | 3 |
| 8 U.S.C. §1184 (c) (14) | 54 |
| 8 U.S.C. §1184 (c) (14) (A) | 4 |
| 8 U.S.C. §1184 (c) (14) (A) (i) | 4 |
| 8 U.S.C. §1324a(h)(3) | 19 |
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 1331 | 1 |
| *Immigration and Nationality Act of 1952*, Pub. L. No. 82-414, ch. 477, 66 Stat. 163 (1952) | 2 |

| REGULATIONS & GUIDELINES | Page |
|---|---|

| REGULATIONS & GUIDELINES | Page |
|---|---|
| 1 C.F.R. § 22.6 | 45 |
| 8 C.F.R. § 214.2 (h) (6) (iii) (A) | 40 |
| 8 C.F.R. § 214.2 (h) (6) (iii) (D) | 5 |
| 8 C.F.R. §§ 214.2 (h) (6) (iii) (C) & (E), (iv) (A), (vi) (A) | 5 |
| 20 C.F.R. § 655, at 304 (2014) | 6 |
| 29 C.F.R. §§503.0, 503.1(c)&(d) | 58 |
| 29 C.F.R. §503.1(a) | 58 |
| 29 C.F.R. § 503.4 | 47 |
| 29 Fed.Reg. 15252, 15253 (Nov. 13, 1964) | 53 |
| 31 Fed. Reg. 6611 (May 4, 1966) | 53 |
| 55 Fed. Reg. 2606 (Jan. 26, 1990) | 53 |
| 67 Fed.Reg. 48354 (July 24, 2002) | 53 |
| 68 Fed.Reg. 10922, 10922 (Mar. 6, 2003) | 50 |
| 73 Fed.Reg. 29942, 29955 (May 22, 2008) | 56 |
| 73 Fed. Reg. 78104 (Dec. 19, 2008) | 53 |
| 75 Fed. Reg. 61578, 61579 (Oct. 5, 2010) | 4 |
| 78 Fed. Reg. 24047, 24061 (Apr. 24, 2013) | 5 |
| 80 Fed. Reg. 24042, 24108 (Apr. 29, 2015) (Subpart A) | 6 |
| 81 Fed. Reg. 42983, 42984 (July 1, 2016) | 4 |

| LEGISLATIVE HISTORY | Page |
|---|---|
| **– Debates** | |
| 159 Cong. Rec. S4615 (June 18, 2013) | 58 |
| **– Reports** | |
| House Comm. on the Judiciary, *Revising the Laws Relating to Immigration, Naturalization, and Nationality: Report to Accompany H.R. 5678*, H.R. Rep. No. 82-1365 (Feb. 14, 1952) | 2 |
| INS, *Annual Report of the INS* 31 (1953) | 2 |
| *Report of the Special Committee on Administrative Law*, 61 Annu. Rep. A.B.A. 720, 780 (1936) | 55 |
| **– Other** | |

| LEGISLATIVE HISTORY | Page |
|---|---|
| 35 Op. Att'y Gen. 15, 1925 U.S. AG Lexis 3, at *7 (1925) | 49 |
| Bressman, Schechter Poultry *at the Millennium: A Delegation Doctrine for the Administrative State*, 109 Yale L.J. 1399, 1416-17 (2000) | 13 |
| *DOL's Opposition to Plaintiffs' Motion for Preliminary Injunction*, *CATA v. DOL*, No. 09-cv-240 (E.D. Pa. Feb. 26, 2010) | 6 |
| Gersen, *Overlapping and Underlapping Jurisdiction in Administrative Law*, 2006 S. Ct. Rev. 201, 222-25 | 21 |
| Argyle R. Mackey, *The New Immigration and Nationality Act and Regulations*, 1 I.&N. Rptr. 29, 29 (Jan., 1953) | 2 |
| Office of Inspector General, *Recommendations for Enhancing Forms Used for H-2B Non-Agricultural Temporary Workers*, Rep. No. 50-19-001-03-321, at 2 (2019) | 19 |
| Rubenstein, *Putting the Immigration Rule of Lenity in its Proper Place*, 59 Admin. L. Rev. 479, 493-94 (2007) | 20 |
| Schoenbrod, *Power Without Responsibility: How Congress Abuses the People Through Delegation* 9 (1993) | 18 |
| Stack, *The Constitutional Foundations of* Chenery, 116 Yale L.J. 952, 992, 996-97 (2007) | 17 |
| Sunstein, 67 U. Chi. L. Rev. 315, 339 (2000) | 17 |
| Sunstein, Chevron *Step Zero*, 92 Va. L. Rev. 187, 191 (2006) | 14 |

| OTHER AUTHORITIES | Page |
|---|---|
| *Black's Law Dictionary* (4th ed. 1951) | 23 |
| *The Concise Oxford Dictionary* (4th ed. 1951) | 23 |

# GLOSSARY OF
## ABBREVIATIONS, ACRONYMS, TERMS, AND VISAS

| | |
|---|---|
| 1968 DOL Rule | – 33 Fed. Reg. 4629 (Mar. 16, 1968) (NPRM), *adopted by* 33 Fed. Reg. 7570 (May 22, 1968), *codified as* 20 C.F.R. §621 (1969) |
| 2008 DHS Rule | – 73 Fed. Reg. 78104 (Dec. 19, 2008), codified as 8 C.F.R. §214.2(h)(6) |
| 2008 DOL Rule | – 73 Fed. Reg. 78020 (Dec. 19, 2008), *codified as* 20 C.F.R. §655, Subpart A (2009) |
| 2012 DOL Rule | – 77 Fed. Reg. 10038 (Feb. 21, 2012) |
| 2013 IFR | – 78 Fed. Reg. 24047 (Apr. 24, 2013) |
| 2015 DHS-DOL Rule | – 80 Fed. Reg. 24042 (Apr. 29, 2015) and *id.* at 24146 |
| 2015 Enforcement Rule | – WHD's H-2B enforcement regulations 80 Fed. Reg. 24084, 24131 (Apr. 29, 2015), *codified as* 29 C.F.R. §503 |
| 2015 Final Wage Rule | – ETA's H-2B administrative regulations governing the wage methodology 80 Fed. Reg. 24146 (Apr. 29, 2015), *codified as* 20 C.F.R. §655.10 |
| 2015 IFR | – 80 Fed. Reg. 24042 (Apr. 29, 2015) (AR 000001-104), consisting of ETA's H-2B program administration regulations known as the "2015 Program Rules," as well as WHD's separate H-2B enforcement regulations known as the "2015 Enforcement Rules" |
| 2015 Program Rules | – ETA's H-2B program administration regulations 80 Fed. Reg. 24050, 24108 (Apr. 29, 2015), *codified as* Subpart A of DOL's 20 C.F.R. §655 |
| Adjudicative clause | – 8 U.S.C. §1184(c)(1) |
| AFL | – American Federation of Labor |
| AG-opinion | – 8 U.S.C. §1103(a)(1) |

| | |
|---|---|
| clause | |
| APA | – Administrative Procedure Act of 1946 |
| AR | – Administrative Record |
| DHS | – Department of Homeland Security |
| DHS's Labor-Certification Regulations | – 8 C.F.R. §214.1(k); 8 C.F.R. §214.2(h)(1)(ii)(D); 8 C.F.R. §214.2(h)(6)(i)(A), (iii)(A), (iii)(C), (iii)(D), (iii)(E), (iv)(A), (iv)(B), (iv)(D), (vi)(A), (viii), (viii)(B), (ix); 8 C.F.R. §214.2(h)(9)(i)(B), (iii)(B); 8 C.F.R. §214.2(h)(11)(ii), (iii)(A)(2). |
| DOL | – Department of Labor |
| DOS | – Department of State |
| Er.Add. | – Employers' Addendum |
| ETA | – Employment and Training Administration |
| H-2B clause | – 8 U.S.C. §1101(a)(15)(H)(ii)(b) |
| IFR | – Interim Final Rule |
| INA | – Immigration and Nationality Act of 1952 |
| INS | – Immigration and Naturalization Service |
| IRCA | – Immigration Reform and Control Act of 1986 |
| J.A. | – Joint Appendix |
| MSSA | – Maryland State Showmen's Association, Inc. |
| NPRM | – Notice of Proposed Rulemaking |
| OABA | – Outdoor Amusement Business Association, Inc. |
| Redelegation clause | – 8 U.S.C. §1103(a)(6) |
| RIN | – Regulatory Information Number |
| SSBLC | – The Small and Seasonal Business Legal Center |
| Subdelegation clause | – 8 U.S.C. §1103(a)(4) |
| USCIS | – United States Citizenship and Immigration Service |
| Wagner-Peyser Act | – 29 U.S.C. §49 |

xiii

WHD      – Wage and Hour Division

### Employment-Based Visas

D    – Crewmembers performing longshore work under 8 U.S.C. §1288(c)(1 (B).

E-3    – Workers in specialty occupations under 8 U.S.C. § 1101(a)(15)(E)(iii).

H-1B    – Professionals in specialty occupations under 8 U.S.C. §§110 (a)(15)(H)(i)(b) and 1182(n)(1)(A).

H-1B1    – Professionals in specialty occupations from enumerated countries under 8 U.S.C. §§1101(a)(15)(H)(i)(b1) and 1182(t)(1)(A).

H-1C    – Registered nurses under 8 U.S.C. §§1101(a)(15)(H)(i)(c) and 1182(m)(2)(A)(ii).

H-2    – Temporary unskilled workers from 1952-1986 under 8 U.S.C. §1101(a)(15)(H)(ii).

H-2A    – Temporary agricultural workers since 1986 under 8 U.S.C. §§1101(a)(15)(H)(ii)(a), 1188(a)(1), and 1188(e)(2).

H-2B    – Temporary nonagricultural workers since 1986 under 8 U.S.C. §1101(a)(15)(H)(ii)(b).

L    – Intra-company transfers under 8 U.S.C. §1101(a)(15)(L).

O    – Professionals with exceptional skill under 8 U.S.C. §§1101(a)(15)(O) and 1184(c)(6)(A)(i).

P-1    – Athletes or performers under 8 U.S.C. §1101(a)(15)(P) and 1184(c)(6)(A)(iii).

PERM    – Immigrants seeking permanent employment under 8 U.S.C. §§1153(b)(3)(C), 1154(b), and 1182(a)(5)(A)(i).

Q    – Cultural exchange focused on the customs, heritage, or traditions of the worker's home country under 8 U.S.C. §1101(a)(15)(Q).

R    – Religious professionals under 8 U.S.C. §§1101(a)(15)(R) and (a) (27) (C) (ii).

## JURISDICTION

This is a challenge to federal agencies' claimed authority. The trial court had jurisdiction under 28 U.S.C. §1331 and 5 U.S.C. §704. This Court has jurisdiction under 28 U.S.C. §1291. The trial court order was docketed on September 12, 2018, J.A. 464, and appeal was filed on November 13, 2018, J.A. 528. This appeal is from a final judgment disposing of all claims.

## ISSUES

1. Whether Congress authorized DOL individually, or DOL and DHS jointly, to promulgate legislative rules for the H-2B visa program, and DOL to adjudicate H-2B labor certifications.

2. Whether Congress authorized DHS to redelegate to DOL authority to promulgate legislative rules for the H-2B visa program and adjudicate H-2B labor certifications.

3. Whether DOL exceeded the scope of its congressionally-sanctioned enforcement authority.

## STATEMENT OF CASE

Employers are a group of individual employers and related trade associations relying upon the H-2B visa program. J.A. 31-34. They sued DHS, DOL, and several component agencies that issued, without statutory authority, the 2008 DHS Rule, 2013 IFR, and 2015 DHS-DOL Rule. J.A. 34-

42.  On cross-motions, the District of Maryland entered summary judgment for the Government on most of the Government's theories of authority and upheld the regulations.  J.A. 465.

## A. Statutory Framework

The H-2B program originated in 1952 when Congress passed the Immigration and Nationality Act and created the H-2 visa for both temporary agricultural and non-agricultural employment.  *Immigration and Nationality Act of 1952*, Pub. L. No. 82-414, 66 Stat. 163 (1952).  The INA's "H-2B clause" defines an H-2B employee as a nonimmigrant alien seeking temporary work "if unemployed persons capable of performing such service or labor cannot be found in this country…."  8 U.S.C. §1101(a)(15)(H)(ii)(b).

It is well-established that Congress created all H visas to promote the national interests, H.R. Rep. No. 82-1365, at 52 (1952); INS Comm'r Argyle R. Mackey, *The New Immigration and Nationality Act and Regulations*, 1 I.&N. Rptr. 29, 29 (Jan., 1953), and alleviate U.S. labor shortages for temporary positions by providing nonimmigrant alien labor, *see* H.R. Rep. 82-1365, at 44-45; INS, *Annual Report of the INS* 31 (1953).  The H-2B program accomplishes these goals by balancing the interests of employers and U.S. workers.  *See, e.g., Virginia Agric. Growers' Ass'n v. DOL*, 756 F.2d 1025, 1027, 1031 (4th Cir. 1985); *Louisiana Forestry Ass'n, Inc. v. Secretary of Labor*, 745 F.3d 653, 667 (3d Cir.

2014); *A.F.L.-C.I.O. v. Dole*, 923 F.2d 182, 187 (D.C. Cir. 1991).

Since 1952, Congress has charged only the Secretary of Homeland Security or her predecessors with exclusive authority for "administration and enforcement" of the INA, 8 U.S.C. §1103(a)(1), and rulemaking authority over the admission of all aliens, §1103(a)(3), including H-2B workers, §1184(a)(1). DHS's Secretary alone is mandated to adjudicate all individual H-2B petitions pursuant to the "adjudicative clause":

> The question of importing any alien as a nonimmigrant under subparagraph (H), (L), (O), or (P)(i) of section 101(a)(15) … in any specific case…**shall be determined by** the [DHS Secretary], after consultation with appropriate agencies of the Government, upon petition of the importing employer.

8 U.S.C. §1184(c)(1)(emphasis added).  DHS's Secretary has two options to accomplish some administrative duties.  The "subdelegation clause"[1] allows the Secretary to subdelegate some authority to DHS employees. §1103(a)(4). The "redelegation clause" narrowly circumscribes when DHS's Secretary may transfer some authority to other agencies, but does not include rulemaking or adjudicative functions:

> [DHS's Secretary] is authorized to confer or impose upon any **employee** of the United States, with the consent of the head of the Department…under whose jurisdiction the employee is serving, any of the **powers, privileges, or duties** conferred or imposed **by this Act**

---

[1] Employers differentiate Congressional "delegations," intradepartmental "subdelegations," and extradepartmental "redelegations."

3

> **or regulations issued thereunder upon officers or employees** of [USCIS].

8 U.S.C.§1103(a)(6)(emphasis added).

Since 1952, Congress has never authorized DOL to promulgate H-2B legislative rules or adjudicate labor certifications. *See* 8 U.S.C. §1184(c)(1)(DHS's Secretary may consult with "appropriate" but unnamed federal agencies). Nor has Congress granted joint or shared H-2B authority to both DHS and DOL.

In 2005, Congress modified DHS's Secretary's enforcement function by authorizing the Secretary to hold hearings to determine H-2B employer non-compliance, *Real ID Act of 2005*, Pub. L. No. 109-13, 119 Stat. 302 (2005)(*codified as* 8 U.S.C. §1184(c)(14)(A)), impose authorized remedies, 8 U.S.C.§1184(c)(14)(A)(i), and debar H-2B employers, §1184(c)(14)(A)(ii). Congress further authorized DHS's Secretary to redelegate to DOL only that portion governing authorized remedies under §1184(c)(14)(A)(i). §1184(c)(14)(B). This redelegation was purportedly accomplished in a January 16, 2009, memorandum, 75 Fed.Reg. 61578, 61579 (Oct. 5, 2010), never published in the *Federal Register*, *see* 81 Fed.Reg. 42983, 42984 (July 1, 2016), and limited to DHS's Secretary's §1184(c)(14)(A)(i) authority only. J.A. 84.

**B. 2008 and 2013 DHS Rules**

4

Even though Congress vested *all* H-2B rulemaking and adjudicative authority in DHS's Secretary, the 2008 DHS Rule abandoned nearly 60 years of administrative practice by refusing to receive H-2B petitions unless they attached an approved DOL labor certification. 73 Fed.Reg. 78104, 78124 (Dec. 19, 2008). In the 2013 IFR, DHS shifted still more authority by requiring DOL to establish, "by regulation," procedures to "determine" prevailing wages. 78 Fed.Reg. 24047, 24061 (Apr. 24, 2013). DHS has, in related DHS's Labor-Certification Regulations, purported to redelegate DHS's statutorily-assigned jurisdiction to DOL, J.A. 39-40, and obligate DOL to establish via legislative rules a labor certification process to make statutory determinations. 8 C.F.R. §214.2(h)(6)(iii)(D). There is, however, no such Congressionally-derived authority and DOL has no such jurisdiction.

Under DHS's Labor-Certification Regulations, DHS no longer adjudicates *all* H-2B petitions, and has extended veto power to DOL as a co-determiner of H-2B petitions. If DOL *denies* a labor certification, the Government acknowledges that DOL's determination is "preclu[sive]." J.A. 202. This is because DHS returns H-2B petitions lacking labor certification without recording them as received, accepting payment, or considering their merits. 8 C.F.R. §§214.2(h)(6)(iii)(C)&(E), (iv)(A), (vi)(A). If DOL *grants* a labor certification, the labor certification is equally final. DHS has expressly

denied that it ever "will…go into the merits of the determination previously

made by DOL…."  73 Fed.Reg. at 78115.  *See also Brief of DOL*, *CATA v. DOL*,

No. 09-cv-240, at *11, 12 (E.D. Pa. Feb. 26, 2010) (labor certifications are

"definitive determination[s…,] binding on USCIS, and no longer merely

advisory").

## C.  2015 DHS-DOL Rule

The so-called jointly-issued 2015 DHS-DOL Rule consists of the 2015

Program Rule, 2015 Enforcement Rule, and 2015 Final Wage Rule.  To

organize the Departments' claimed legal authority, Employers have attached

an evidence summary.  J.A. 169-73.  Immediately before issuing the 2015

DHS-DOL Rule, DOL's authority citation for its program rules in 20 C.F.R.

§655, Subpart A, stated "8 U.S.C. 1101(a)(15)(H)(ii)(b) and 1184," the Wagner-

Peyser Act, and DHS's H-1B regulations.  20 C.F.R. §655, at 304 (2014).  In

the 2015 Program Rule, DOL abandoned its prior authority and cited only

DHS's regulations at "8 C.F.R. §214.2(h)," 80 Fed.Reg. 24042, 24108 (Apr. 29,

2015)(Subpart A), because **DHS, not Congress**, "requires" DOL to provide

consultation "by issuing regulations," 81 Fed.Reg. 42983, 42984 n.1 (July 1,

2016).  By contrast, DHS had never cited authority for DOL's H-2B

regulations, nor did it provide one for the 2015 Program Rule.  80 Fed.Reg. at

24108.  The 2015 Program Rule never claimed that Congress extended

6

rulemaking or adjudicative functions to DOL, nor did the Departments identify a statutory basis for DHS to redelegate such authority to DOL, even though both Departments conceded that DOL *could not issue labor certifications without rulemaking authority*. *Id*. at 24047, 24090.

In the 2015 Final Wage Rule, neither Department provided an authority citation for DOL's Subpart A or the new prevailing-wage section. *See id.* at 24184. Even after acknowledging previous public comments that challenged DOL's rulemaking authority and DHS's redelegation, the Departments misleadingly re-framed the issue as whether DOL had statutory authority "to independently issue legislative rules" without DHS's participation, *id*. at 24151, rather than independent authority direct from Congress, then asserted without explanation that DOL had "statutory authority to issue legislative rules" because of the "consultative relationship" in the adjudicative clause, *id*. at 24154 n.19. Further, the Departments neither acknowledged whether redelegation had occurred, *id*. at 24153 (DHS "disagree[d] with the comments that DHS **improperly** delegated its authority")(emphasis added), identified a legal basis for DHS to redelegate governmental functions to DOL, *id*. at 24184, nor elaborated with particularity, *id*. at 24153 & 24154 n.19 (the Departments did "not think it necessary to provide a further discussion of this issue").

7

Although DOL and DHS claimed to "jointly issue" the 2015 Enforcement Rule, *id.* at 24042, those rules do not contain DHS's authority citation, nor did DHS explain why it was "jointly issuing" a regulation when it had previously redelegated "all" enforcement authority in 2009. DOL's authority citation for the enforcement rules is the H-2B clause and §1184(c), as well as 8 C.F.R. §214.2(h). *Id.* at 24131. The 2015 Enforcement Rules do not identify a statutory basis or an explanation why DOL's limited enforcement function authorized it to bootstrap nearly the entire 2015 Program Rule. *See, e.g.*, *id.* at 24085.

## D. Trial Court Proceedings

Employers' *ultra vires* challenge also alleged the 2015 DHS-DOL Rule was substantively defective because the Departments expressly failed to consider either national or employers' interests, J.A. 44, and restricted the maximum petition length to 9 months, J.A. 44-45. Moreover, Employers were harmed by the Departments' estimated compliance costs exceeding $1.2 billion over 10 years, 80 Fed.Reg. at 24105, 24180-81, or more than $30,000 per day.

On cross-motions, the trial court entered summary judgment for the Government. *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, 334 F. Supp.3d 697 (D. Md. 2018). The trial court ruled that the claims against DHS were time-

8

barred, *id*. at 712-15, and that DHS imposed a permissible condition precedent, *id*. at 715-16.  The trial court apparently ruled that Congress had acquiesced in DOL's jurisdiction, *id*. at 717-20, and conditionally ruled in favor of the enforcement rules provided that they "support[ed]" the redelegated authority, *id*. at 721.  The trial court appeared to rule that DHS could not redelegate jurisdiction to DOL, *id*. at 720-21, and that the agencies improperly "jointly issued" the 2015 DHS-DOL Rule, *id*. at 721-23.

## SUMMARY OF ARGUMENT

Only Congress may grant rulemaking or adjudicative authority to an agency.  If Congress intends for that agency to share or redelegate power extradepartmentally, then Congress must clearly say so.  Without such congressional authority, Departments cannot share power, no matter how expedient.

Under our system of separation of powers, redelegation of authority is dangerous.  Congress assigned DHS a policymaking function, a jurisdiction that it was not free to decline even if it concluded it lacked expertise in Congress's demands.  The Departments' position is unprecedented and raises disturbing questions.

- Whose regulations appear at Subpart A, 20 C.F.R. §655?  The Code of Federal Regulations indicates they are DOL's regulations, but the

9

Government contends at various points that they are DOL's, DHS's, or both.

- By what authority were the regulations promulgated?  Congress bestowed no such authority on DOL, but the Government contends at times that Congress, DHS, or both authorized them.

- Can DHS promulgate regulations and compel another agency to implement and publish them?  Congress gave DHS the option to consult, not conscript.

- Do "consultations" extend rulemaking power to the 105 consultation relationships found within the INA, and thousands more throughout the U.S. Code?

- When Congress has not authorized joint action, may consultants and selected policymakers still do so?

These questions raise fundamental nondelegation, separation-of-powers, and due-process concerns.  Even though Congress spoke consistently for decades that only DHS had rulemaking authority, the Government contends that congressional silence bestowed governmental functions on DOL.  This destroys separation of powers.  If true, the Departments have indicted Congress for dereliction and ask this Court to enable the breach.

This case raises statutory construction issues, but the trial court never mentioned *Chevron* deference or whether it applied.  Notably, the trial court never considered, under what has been called *Chevron* Step Zero, whether *Chevron* even applied.  In this case, there are multiple reasons why *Chevron* does not apply to DHS or DOL's actions: the unlawful-delegation doctrine, constitutional avoidance, clear-statement rules, the major-question doctrine, the *Chenery* doctrine, and the rule of lenity.  And under this Court's venerable precedent, *Brown & Williamson*, Congress made it quite clear that DOL lacked H-2B governmental authority,nor did Congress authorize DHS to redelegate that authority to DOL.

## ARGUMENT

## I.  STANDARD OF REVIEW

Review of both questions of law and fact, *Ohio Valley Env'tl Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 189 (4th Cir. 2009), jurisdiction, *United States v. Deaton*, 332 F.3d 698, 703-04 (4th Cir. 2003), and statutory interpretation issues, *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014), *aff'd*, 135 S. Ct. 2480 (2015), is *de novo*.

## II.  STANDING

Each Employer has standing under the APA, 5 U.S.C. § 702, but standing for only a single plaintiff is sufficient, *Rumsfeld v. Forum for Acad. &*

11

*Inst'l Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). Each Employer participates

directly or through its members in the H-2B program, and has established that

the challenged regulations invade a legally-protected interest that is concrete

and particularized and actual or imminent. J.A. 91-110. Each Employer will

incur a "direct financial burden" from complying with the regulations, *see King*,

759 F.3d at 365, including a proportional share of more than $30,000 per day

for compliance costs. H-2B employers have often established economic harm

from complying with new H-2B regulations. *See, e.g., Bayou Lawn & Landscape*

*Servs. v. Solis*, 2012 U.S. Dist. Lexis 69297, *5-9 (N.D.Fla. Apr. 26, 2012), *aff'd*,

713 F.3d 1080 (11th Cir. 2013); *Louisiana Forestry Ass'n, Inc. v. Solis,* 889 F.

Supp.2d 711, 720 (E.D.Pa. 2012), *aff'd*, 745 F.3d 653 (3d Cir. 2014).

## III.  CONGRESS DID NOT AUTHORIZE DOL INDIVIDUALLY, NOR DOL AND DHS JOINTLY, TO PROMULGATE LEGISLATIVE RULES FOR THE H-2B PROGRAM OR DOL TO ADJUDICATE H-2B LABOR CERTIFICATIONS

There is no serious dispute that only Congress may grant rulemaking,

adjudicative, or enforcement functions to an agency. This nondelegation

doctrine is based upon the delegation clause, U.S. Const. art. I, §1, the

separation-of-powers principle, *Mistretta v. United States*, 488 U.S. 361, 371

(1989), and due process, *Washington v. Roberge*, 278 U.S. 116, 122-23 (1928).

The nondelegation doctrine preserves accountability and forces Congress to

make hard choices.  Bressman, Schechter Poultry *at the Millennium: A Delegation Doctrine for the Administrative State*, 109 Yale L.J. 1399, 1416-17 (2000).  Thus, an agency literally has no power to act unless Congress confers it.  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  The nondelegation doctrine continues to have constitutional force.  *Whitman v. American Trucking Ass'n, Inc.*, 531 U.S. 457, 472 (2001).

Nor is there any dispute that Congress has not explicitly extended a governmental function to DOL, 334 F. Supp. 3d at 717, and DOL cannot adjudicate without rulemaking authority.  Hence, even the Departments have acknowledged that the courts have determined that DOL lacks independent rulemaking or adjudicative authority.  80 Fed.Reg. at 24151.  *See also Bayou Lawn & Servs. v. DOL*, 713 F.3d 1080 (11th Cir. 2013) (preliminary injunction); *Bayou Lawn & Landscape Servs. v. Perez*, 81 F. Supp.3d 1291 (N.D. Fla. 2014) (*vacatur* and permanent injunction), *vacated on other grounds*, 621 F. Appx. 620 (11th Cir. 2015); (*vacatur* and permanent injunction).

What remains is the Government's "circular retreat" from one authority claim to the next.  *See* 334 F. Supp.3d at 717.  But the statute is clear that DOL

13

is at most an unnamed consultant and its actions are devoid of statutory authority. Most compellingly, the Government conceded the point during oral argument. J.A. 404. Congress knows how to extend authority to DOL, just as it has on several other visas. And the fact that DHS is attempting to channel DOL's discretion as a purported congressional delegatee undercuts any plausible claim to independent authority.

And DHS's Labor-Certification Regulations contravened the statute and exceeded whatever authority DHS might have. Congress intended DHS as the policymaker in charge. Under the 2015 DHS-DOL Rule, neither DOL is consulting (it is exercising final decisionmaking for both rulemaking and adjudications), nor is DHS determining (DHS is not the decisive factor for the rules and it has virtually no role in statutorily-mandated fact finding). DHS is improperly redelegating twice, once by construing "consultation" as if it was not a redelegation, and then proclaiming the *same* action is a redelegation under the redelegation clause.

## A.  DHS-DOL's Rulemaking and DOL's Adjudication Are Precluded by Canons, Clear-Statement Rules and Presumptions

The trial court failed entirely to confront *Chevron* Step Zero – the initial inquiry whether the *Chevron* rules even apply. *See* Sunstein, Chevron *Step Zero*, 92 Va. L. Rev. 187, 191 (2006). There is a considerable case law mandating

14

this preliminary inquiry to determine *Chevron's* application and which takes precedence over the agency's views of ambiguity.  This assortment of canons, clear-statement rules, and presumptions protect substantive values in statutes or the Constitution.

**1. Constitutional-Avoidance Doctrine**.  Agencies may not interpret statutes in ways that raise serious constitutional doubts.  If multiple statutory interpretations are "fairly possible" and the constitutional question is serious and substantial, then Congress must decide the issue in an explicit statement. *See Rust v. Sullivan*, 500 U.S. 173, 191 (1991); *Clark*, 543 U.S. 371, 381 (2005)(if interpretation is "plausible," it must be adopted to avoid constitutional problems).  Thus, the constitutional-avoidance doctrine displaces *Chevron* deference.  *DeBartolo Corp. v. Florida Gulf Coast Bldg. Council*, 485 U.S. 568, 575 (1988).

The constitutional-avoidance doctrine applies to nondelegation issues. *Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S. 607, 646 (1980).  To delegate governmental functions to DOL, the unlawful delegation doctrine requires Congress to:

> 1.  Delineate a policy for DOL to administer.  *South Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 351 (4th Cir. 2003)(no constitutional challenge in part because Congress delineated the agency charged with applying the policy).

2.  Select DOL as its "instrumentalit[y]" to carry out the congressional policy.  *Schechter Poultry Corp.* v. *United States,* 295 U.S. 495, 530 (1935); *see also Gonzales v. Oregon*, 546 U.S. 243, 258 (2006)(Congress must delegate "to the official"); *Chen v. Carroll*, 48 F.3d 1331, 1339 (4th Cir. 1995)(Congress must "specifically delegate" to the agency for agency action to be based on "congressional action" and have the force of law).  Congress makes such a selection by committing the issue to the agency's care "by statute."  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845 (1984).

3.  Set boundaries on DOL's authority.  *Schechter*, 295 U.S. at 530.

4.  Set an intelligible principle or standard for measuring DOL's conformance.  *Whitman*, 531 U.S. at 472.

Here, a serious constitutional question arises because Congress did none of these things and exerted even less control than it did with the unconstitutional statute in *Schechter*.  The  Government has previously admitted that Congress did not select nor direct DOL to conform to any standard.  J.A. 222.  Rather than confront this serious constitutional issue, the Supreme Court uses the constitutional-avoidance canon as surrogate for the nondelegation doctrine. Bressman, 109 Yale L.J. at 1409-11.

Another constitutional principle derived from sound separation-of-powers principles is the *Chenery* doctrine, under which a rule may be upheld only on the agency's, not another agency's, basis provided in the record when adopted.  *Securities & Exch. Comm'n v.  Chenery Corp.*, 318 U.S. 80, 87-89, 94-95 (1943).  *Accord Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

16

In short, neither the Government nor this Court can raise belated theories or hypothesize how the Government's position might be sustained, and it violates separation of powers to do so.  *See* Stack, *The Constitutional Foundations of Chenery*, 116 Yale L.J. 952, 992, 996-97 (2007)(*Chenery* doctrine bolsters due process and the nondelegation doctrine's anti-inherency principle by ensuring that agencies ground their action in congressional authority).    Positions raised during litigation are not the result of an agency's delegated power, *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156-57 (1991), and are entitled to "near indifference," *United States v. Mead*, 533 U.S. 218, 228 (2001).  DOL's naked citation to 8 C.F.R. §214.2(h) plainly shows that DOL's 2015 rules were not based on independent authority.

**2. Clear-Statement Rule**.  Clear-statement rules ensure Congress considered and chose the fundamental policy.  A clear-statement rule means that there is no *Chevron* ambiguity for the agency to interpret, *INS v. St. Cyr*. 533 U.S. 289, 320 n.45(2001), and it trumps the agency's interpretation of any statutory ambiguity, *see EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 250, 258 (2001).  *See also* Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 339 (2000) (under clear-statement rules, there is nothing to lament because Congress was unable to muster the will to authorize the agency action).

Congress's responsibility to select instrumentalities raises a clear-statement rule.  The Government must show that Congress "clearly" delineated DOL as the responsible agency.  *Mistretta*, 488 U.S. at 372-73.  *Accord S.C. Med.*, 327 F.3d at 350.  Given that Congress did not designate DOL at all, it certainly did not designate DOL "clearly."  *See Morrison v. National Australia Bank Ltd., 561* U.S. 247, 255 (2010)(when the statute gives no clear indication, there is none)(clear statement rule relieves the court of giving effect to all indicia of intent).

**3.  Major-Question Doctrine**.  Some decisions are so important that they must be made by Congress, thereby denying agencies the power to interpret ambiguity for large-scale statutory changes.  Under the major-question doctrine, issues addressed to a central aspect or "essential characteristic" of the statute that fundamentally expand or contract the statute are not within an agency's authority and are subjected to independent judicial review.  *MCI Telecomm S. Corp. v. AT&T Co.*, 512 U.S. 218, 231 (1991); *Whitman* 531 U.S. at 468.  This promotes accountability and integrity of the democratic process.  Schoenbrod, *Power Without Responsibility: How Congress Abuses the People Through Delegation* 9 (1993)(delegation allows Congress to maintain power without accountability).  Here, the extent to which and by whom the national interests are protected was such a major question.  *See*

*Texas v. United States*, 809 F.3d 134, 180-81 (5th Cir. 2015)(INA's employment-authorization scheme was a major question), *aff'd by equally divided court*, ___ U.S. ___ (2016); *Chamber of Commerce v. National Labor Relations Bd.*, 856 F. Supp. 2d 778, 796 (D.S.C. 2012) *aff'd*, 721 F.3d 152 (4th Cir. 2013) (notice posting mandated in 9 other statutes was a major question).

The major-question doctrine also gives rise to another clear-statement rule.  "For an agency to issue a major rule, Congress must *clearly* authorize the agency to do so.  If a statute only *ambiguously* supplies authority for the major rule, the rule is unlawful."  *U.S. Telecom Ass'n v. FCC, 855* F.3d 381, 419 (D.C. Cir. 2017)(Kavanaugh, J., dissenting) (emphasis in original).  When Congress has debated but declined to pass legislation creating authority, that inaction "does not license the Executive Branch to take matters into its own hands." *Id.* at 426.  The 2015 DHS-DOL Rule was such a major rule, and we will illustrate that Congress extensively debated the issue and failed to legislate.

**4.  Rule of Lenity**.  The INA criminalizes hiring an alien who DHS has not authorized to be so employed.  8 U.S.C. §1324a(h)(3).  This has resulted in more than 70 criminal investigations for failing to comply with DOL's regulations.  Office of Inspector General, *Recommendations for Enhancing Forms Used for H-2B Non-Agricultural Temporary Workers*, Rep. No. 50-19-001-03-321, at 2 (2019).  Under the rule of lenity, only the legislature defines crimes and

19

fixes punishments. *Whitman v. United States*, 135 S.Ct. 352, 354 (2014) (Scalia, J., respecting denial of *certiorari*). Because the INA is a hybrid statute that carries both criminal and administrative penalties, the rule of lenity governs and compels uniform interpretations in both settings. Thus, any ambiguity and permissible interpretations that remain after applying traditional tools of statutory construction must be interpreted in favor of Employers. *See WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204-206 (4th Cir. 2012). Because Congress did not "clearly" intend to criminalize violations of DOL's regulations, interpreting those regulations as authorized must be declined. *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 n.10 (1992)(declining *Chevron* deference for a hybrid criminal-civil statute). The fact that the rule of *immigration* lenity has been narrowed to deportation cases, *Hosh v. Lucero*, 680 F.3d 375, 383 (4th Cir. 2012), does not detract from the constitutionally-based rule of lenity, Rubenstein, *Putting the Immigration Rule of Lenity in its Proper Place*, 59 Admin. L. Rev. 479, 493-94 (2007).

   **5. Presumptions**. The agency as proponent for the new regulation bears the burden of proof. *See Industrial Union,* 448 U.S. at 653.

   Under the doctrine of "exclusive jurisdiction," Congress is presumed to delegate all pertinent authority to a single agency. *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 863 F.3d 816, 826 (8th Cir. 2017)(it is unlikely that

Congress gave the same authority to 2 agencies to develop conflicting rules); Gersen, *Overlapping and Underlapping Jurisdiction in Administrative Law*, 2006 S. Ct. Rev. 201, 222-25. The INA further supports this unitary-agency model. 8 U.S.C. §1103(a)(1) (DHS has INA administrative functions unless Congress itself has conferred it on other officials). Moreover, the Constitution's presumption is that congressional power not expressly conferred on an agency is denied to it. *American Bus Ass'n v. Slater*, 231 F.3d 1, 9 (D.C. Cir. 2000)(Sentelle, J., concurring). And, there is no implied governmental functions when Congress expressly gave that authority elsewhere. *Union*, 863 F.3d at 823. In this case, there is no evidence that Congress "textually committed" this authority to DOL after giving it to DHS. *See Whitman*, 531 U.S. at 468.

## B.  DHS-DOL's Rulemaking and DOL's Adjudication Violate the Statute

In addition to canons, clear statement rules, and presumptions, *Chevron* plays no role when the agency's interpretation violates the statutory design or other congressional restrictions. This was evident in the only redelegation case ever to reach the Supreme Court. *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)(even if agency was entitled to deference, it was prohibited from administering inconsistently with the clear statutory structure). *ETSI's* prohibition has been applied in a well-established line of cases. *See, e.g.,*

21

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86-88 (2002)(intentionally sidestepping whether Congress had spoken directly to the precise question under *Chevron I* and overturning regulations for violating the statute's "remedial design"); *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 161 (4th Cir. 1998)(determining congressional intent without addressing whether Congress and spoken directly to the precise question), *aff'd*, 529 U.S. 120 (2000); *Chamber of Commerce v. National Labor Relations Bd.*, 721 F.3d 152, 161 (4th Cir. 2013)(mere ambiguity does not negate statutory restrictions).

Using traditional tools of statutory construction, *Brown*, 153 F.3d at 161, the correct question is whether Congress in 1952, *see Utility Air Regulatory Group v. Environmental Protection Agency*, 134 S. Ct. 2437, 2444 (2014), intended to delegate governmental functions to DOL, not whether Congress affirmatively withheld jurisdiction, *Brown*, 153 F.3d at 161.

**1. The Statutory Text Shows Congress Did Not Intend DOL to Become a Final Decisionmaker or "Joint" Actor.**

**a. Adjudication**.  Congress's indispensable act under the adjudicative clause is that DHS, and *only DHS*, must "determine" all H-2B petitions.  When the INA was enacted,  "determine" meant "to bring to a conclusion, to settle by authoritative sentence, to decide, … to adjudicate on an issue presented,"

*Black's Law Dictionary* 536 (4th ed. 1951), and "come to a conclusion, give

decision; be the decisive factor when regard to," *The Concise Oxford Dictionary*

327 (4th ed. 1951). Read in context, DHS's mandatory, jurisdictional

responsibility is to be the "decisive factor" in deciding every H-2B petition.

"Consultation" meant the act of "[t]ak[ing] counsel …; seek[ing] information or

advice from." *Id.* at 257. *Accord G.H. Daniels III & Assocs., Inc. v. Perez*, 2015

U.S. App. Lexis 15689, at *12 (10th Cir. 2015). Thus, Congress intended a

consultation as an adjunct to DHS's final decisionmaking, but it did not

authorize the consultant to make a final decision, nor was it a substitute for

DHS serving as the "decisive factor" when adjudicating individual H-2B

petitions.

    **b. Rulemaking**. There is *no* statutory text in which Congress indicated

that any outside agency had any role to play as a consultant or otherwise in H-

2B rulemaking. Nor is there a textual basis for DHS's "joint" action within the

H-2B program.

    **2. The Statutory Structure Shows Congress Did Not Intend DOL to**

**Become a Final Decisionmaker or "Joint" Actor**. The rest of the statute

corroborates that Congress spoke clearly when it reposed all governmental

authority on DHS alone. *Brown v. Gardner*, 513 U.S. 115, 118 (1994)

("Ambiguity is a creature not of definitional possibilities but of statutory

context.").  The Government's position generates "internal inconsistencies," *Brown*, 153 F.3d at 164, and "contortions," *id*. at 166, showing Congress did not intend to grant DOL governmental functions.  DOL's "need to maneuver around the obstacles" from its unprecednted theory shows that DOL is pursuing its own goal, not Congress' goal.  *Id*. at 167.  Similarly, Congress did not equip DOL with the tools to regulate because Congress had no intent for DOL to regulate.  *Id*.  It is also "highly unlikely" that Congress would have made DOL a final decisionmaker through the "subtle device" and "cryptic" way of a consultation clause.  *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000).

a. **Adjudicative Clause**.  The adjudicative clause, instructs DHS to determine "any specific" H-2B petitions, but DHS does not.  Under the Government's view, *see* J.A. 209 n.11, DOL, not DHS, alone makes a binding determination of (1) the availability and (2) capability of U.S. workers, and DOS alone determines (3) immigrant intent via 8 U.S.C. §1184(b).  Even in the case of the final statutory component, (4) temporary need, DOL still exercises final decisionmaking if it denies an application and DHS has, at most, "shared" jurisdiction.  73 Fed.Reg. at 78108.  Far from being Congress's "decisive factor," DHS is barely an afterthought.

24

The Government minimizes DHS's failure to determine "any specific" H-2B petition by suggesting that DHS could do so prospectively by mandating that employers obtain favorable labor certifications.  This argument generates another structural conflict because the adjudicative clause mandates DHS's determination "after" any consultation, and "upon petition of the importing employer," but that never happens because DHS does not review consultants' H-2B decisions.

Another structural conflict is that Congress designated H-2B eligibility as a fact issue, but DHS has disposed of it with a conclusive presumption that DOL's determination is final with no further recourse to DHS's adjudication. *See Miller v. United States*, 294 U.S. 435, 440 (1935) (agency improperly eliminated mandatory factfinding with a conclusive presumption; (emphasis added); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (the remedy created by Congress required case-by-case examination, but agency's rule eliminated that factual inquiry).

Another structural conflict is that Congress's adjudicative clause grouped H-2B with 7 other employment-based visas, thereby suggesting similar governmental functions.  However, Congress declined any DOL role for L, O, and P visas, 20 C.F.R. §656.2(c)(3), while choosing minimalist labor attestations or labor applications for H-1B, H-1B1, and H-1C, *id.* § 655.731-

.732, 655.1112 (c) (2), and labor certifications with rulemaking for H-2A, *id*. §655.161 (a). Congress has a long history of choosing its instrumentalities, yet has steadfastly refused to do the same for the H-2B program for nearly 70 years.

**b. Other Visas**. Other visas are similarly stratified. Congress has subjected only PERM immigrants to full-blown labor certifications, discussed below, with minimalist labor attestations or labor applications for D and E-3, §§655.510(d), 655.731-.732, and declining to delegate any DOL authority for Q and R, §656.2 (c) (3).

DOL as final decisionmaker also conflicts with the role Congress carefully circumscribed for labor certifications. Under the INA, "any" alien – including H-2B workers – performing unskilled labor is inadmissible unless DOL "determines availabililty and adverse effect. 8 U.S.C. §1182(a)(5)(A)(i). However, this requirement does not apply to H-2B workers because of a (1) limitation to designated immigrant visas (PERM or green cards), *id*. §1182(a)(5)(D), and (2) general exception whenever admission is "otherwise provided in this Act," *id*. §1182(a). Making DOL's labor certification as final action ignores both the limitation and the exception of the PERM labor certification. Having "textually committed" when labor certifications are used, *Whitman*, 531 U.S. at 472, the Government cannot create an exception.

26

**c. Other INA Clauses**.  The comprehensiveness of the INA is well established.  Another structural conflict concerns revenue and reporting.  The INA grants DHS the power to generate fees for adjudicating petitions, 8 U.S.C. §1356(m), (t)&(u), but DOL has no such H-2B authority, but does charge for H-2A labor certifications; §1188(a)(2) & (g).  DOL must file periodic reports to Congress for other activities, §1381, but no such requirement exists for the H-2B program.

Another structural conflict is that the redelegation clause strictly limits DHS's ability to construe other clauses as a basis to transfer governmental authority.  *See ETSI*, 484 U.S. at 511, 515-16 (agency cannot require the public to comply with another agency's regulations); *American Bus*, 231 F.3d at 6 n. 1 (agency had no authority to "channel the choices" of a second agency). structure).

Another structural conflict is that Congress chose DHS as the final decisionmaker, and did not give DHS the discretion to decline to exercise its policymaking function.  *See King*, 135 S.Ct. at 2489 (especially unlikely that Congress would delegate to an agency that lacked expertise).

**d.  Congressional Policies**.  Another structural conflict is DOL's longstanding position that its mandate is to protect only U.S. workers, 76 Fed. Reg. 37686, 67686, 37688 (June 28, 2011), at the expense of employers' and

27

the national interest, 77 Fed.Reg 10038, 10053 (Feb. 21, 2012). DHS

implemented regulations that expressly failed to balance employer needs or the

national interest.

Another structural conflict is that Congress' decision to put DHS in

charge was the result of a political compromise to hold DHS politically

accountable. DHS has subverted that careful balance. *Ragsdale*, 535 U.S. at

94.

Moreover, the 2015 DHS-DOL Rules fail to explain numerous

contradictions with existing DHS regulations, such as the definition of

"temporary need." The new 2015 rules do not even purport to accomplish

what DHS demanded. *See* 8 C.F.R. §214.2(h)(6)(iii)(D) (DOL, not DHS, must

"establish" regulations under DOL's, not DHS's, "jurisdiction" to "determine"

and "administer," not consult). And DHS still has a conflicting regulation

proclaiming that DOL opinions are "advisory" only.

**3. Pre-Enactment Legislative History Shows Congress Did Not**

**Intend DOL to Become a Final Decisionmaker or a "Joint" Actor**.

Historically, DOL's Secretary had a negligible role in temporary foreign labor

needs. In the Senate Judiciary Committee's comprehensive report preceding

the INA, Sen. McCarran meticulously identified every agency involved with

any immigration issues, but DOL was not mentioned. Senate Comm. on the

28

Judiciary, *The Immigration and Naturalization Systems of the United States: Report of the Committee on the Judiciary Pursuant to S. Res. 137*, S. Rep. No. 81-1515, at 327-30, 805, 859-69 (1950). This was expressed in the INA, which retained the "over-all structural pattern" of current law. *Id.* at 332.

While the McCarran bill was pending, a national emergency arose with agricultural labor. Mexico refused to provide workers unless DOL was authorized to issue labor certifications, so DOL proposed a bill authorizing DOL, when necessary under an international agreement, to provide rulemaking and adjudication of availability and adverse effect on U.S. labor. *Farm Labor: Hearings on H.R. 2955 and H.R. 3048*, 82d Cong., at 27, 78, 83 (1951). Public Law 78 was quickly passed to respond to the emergency and to carry out the international agreement with Mexico, S. Rep. 82-214, at 5 (1951), and extended adjudicative functions to DOL, but did not authorize DOL's rulemaking. Act of July 12, 1951, Pub. L. No. 82-78, ch. 223, 65 Stat. 119, 120-21 (1951). *See Chamber*, 721 F.3d at 794. (legislating a topic in another statute shows that Congress did not intend to do so elsewhere).

The opposition to the McCarran bill was led by Sen. Humphrey's subcommittee, where DOL testified that it opposed transferring the initial certification function to INS because it would separate "administration from certification." *Hearings on Migratory Labor – Part I*, 82d Cong., at 51 (1952)

29

(testimony of Michael J. Galvin, Acting Secretary of Labor). DOL claimed that it was the only agency with the necessary skills and facilities, so assigning those functions to DOJ was "illogical." *Id.* DOL also testified that it did not have the authority to determine prevailing wages. *Id.* at 77. Sen. Humphrey drafted a bill to accomplish DOL's temporary foreign labor proposals, *id.* at 926, but Humphrey's bill failed.

During hearings, American Federation of Labor's representative wanted DOL to continue recruiting agricultural workers as it had under the Wagner-Peyser Act. *Revision of Immigration, Naturalization, and Nationality Laws: Joint Hearings on S. 716, H.R. 2379, and H.R. 2816*, 82nd Cong., at 117, 121 (1951) (statement of H.L. Mitchell). A second AFL representative testified that DOL "should be required to make a thorough survey of the labor market, certify the need for the importation of foreign labor, and establish regulations governing the importation and use of such labor." *Id.* at 661, 664-65 (statement of Walter J. Mason).

At the request of the AFL, Sen. McCarran introduced an amended bill that now required a labor certification that closely tracked Public Law 78, but limited its application to certain immigrant visas. S. 2055, 82d Cong., at 49-52, § 212 (a) (14) (1951). In the subsequent committee report, Sen. McCarran noted the "strong safeguards" for American labor contained in this labor

30

certification requirement, but then noted that it did not apply when an alien,

such as an H-2 worker, was

> determined to be needed…under certain other provisions of the bill…. It
> is recognized in the bill that as between immigrants and nonimmigrants
> a distinction may be made in the application of certain of the exclusion
> provisions.  Nonimmigrant aliens are granted temporary admission only,
> and subjecting such aliens to some of the grounds for exclusion
> is…unnecessary for the protection of the interests of the United States….

S. Rep. No. 82-1137, at 11, 13, 20 (1952).  During debates, Sen. McCarran

again identified every agency "concerned in any way with the administration

of this [bill]," but still did not identify DOL.  98 Cong. Rec. 8253, 8254 (June

27, 1952).

**4.  Post-Enactment Legislative History Similarly Shows Congress Did
Not Intend DOL to Become a Final Decisionmaker or a "Joint" Actor**.  No

sooner had the INA been adopted, when President Truman convened a

commission.  According to DOL, the INA needed to be amended to require

that DOL determine unavailability of U.S. workers for unskilled positions.

President's Comm'n on Immigration & Naturalization, 82d Cong., *Hearings

before the President's Commission on Immigration and Naturalization* 1380, 1383

(1952) (testimony of Robert Goodwin, DOL).  This never happened.

The INS implementing regulations briefly called for a DOL clearance

order addressing unavailability of U.S. agricultural workers and compliance

31

with DOL's "policies," 18 Fed.Reg. 4925, 4925 (Aug. 19, 1953), but even this tangential reference to DOL was quickly removed, 19 Fed.Reg. 9172, 9175-76 (Dec. 24, 1954). For nearly 2 decades, DOL had no role for H-2 non-agricultural workers.

After the expiration of Public Law 78 in 1964, AFL-CIO pushed to amend the H-2 program by (1) giving DOL control over final determination of admission of workers, rather than advice to INS; and (2) putting DOL in charge of labor certifications. *Immigration: Hearings on S. 500 to Amend the Immigration and Nationality Act – Part 1*, 89th Cong., at 637, 639-48 (1965) (statement of Andrew J. Biemiller, AFL-CIO). The AFL-CIO argued that its amendments were necessary because DOL merely consulted and the Attorney General could and had overruled DOL. *Id.* at 640, 647.

Rep. Gilbert moved on the floor to amend the adjudicative clause, adopt the AFL-CIO amendments, and require that DOL must "certify" the need and "approv[e]" the Attorney General's determination of H-2 visas. Under the statute, DOL supplied an "opinion" as the "expert," but the AG was free to "do what he pleases." 111 Cong. Rec. 21757, 21805, 21806 (Aug. 25, 1965). The amendment, however, was opposed because it would give DOL "veto power" over the Attorney General's actions and hinder the AG's administration, *id.* at 21805 (statement of Rep. Moore), "tak[e] jurisdiction away from the Attorney

32

General and plac[e] it in" DOL, *id.* at 21806 (statement of Rep. Celler), deprive the AG of discretion to deviate from DOL's advice, *id.* (statement of Rep. Resnick), and undercut the AG's ability to reach a "fair and impartial determination" based on input from multiple agencies, *id.* (statement of Rep. Rogers). The amendment was overwhelmingly defeated, 10-96. *Id.*[2]

In a series of INS regulations issued without notice and comment because they "relate[d] to agency procedure," INS finally adopted procedures to obtain DOL's advice for nonagricultural workers. INS initially required DOL to certify unavailability of qualified U.S. workers, 31 Fed.Reg. 4446, 4446 (Mar. 16, 1966), which was quickly amended to permit employers the right to submit "countervailing evidence" for INS to "consider[ ]" in the event of a DOL denial, 31 Fed.Reg. 6611, 6611 (May 4, 1966). INS further required DOL to certify that there was no adverse effect on wages or working conditions, 31 Fed.Reg. 11744, 11744 (Sept. 8, 1966). For more than 40 years,

---

[2] In a related debate, Sen. Holland described three recent federal decisions in which DOL had contended that the H-2 program vested it with "no authority whatsoever to determine whether any labor should be admitted," and that DOL acted "only in an advisory capacity." The trial court agreed, finding that DOL's actions were purely advisory and unreviewable. Sen. Holland also described a DOL memorandum in which DOL acknowledged that its role was purely advisory and any clearance order had "no operative effect as such. The ultimate decision in these cases is the responsibility of the Attorney General …." 111 Cong. Rec. 23504, 23510-11, 23513 (Sept. 13, 1965).

33

INS repeatedly reaffirmed to Congress that this 1966 "procedure" allowed it to "consult" with DOL, permitted "countervailing" evidence, and denied that it extended jurisdiction to DOL to make final decisions.[3]

Some 16 years after the INA was passed, DOL first adopted procedural regulations to certify H-2 applications.  33 Fed.Reg. 4629, 4629 (Mar. 16, 1968), *adopted in* 33 Fed.Reg. 7570, 7570-71 (May 22, 1968).  *See also* 80 Fed. Reg. at 24045, 24147 (DOL adopted regulatory "procedures" in 1968).  DOL characterized the 1968 DOL Rule as "consist[ing] only of principles and procedures of the most general kind."  42 Fed.Reg. 45898, 45898 (Sept. 13, 1977).  For many years, DOL simply applied PERM regulatory procedures to

---

[3] *E.g.,* U.S. DOJ, *Annual Report of the Attorney General of the United States* at 433-34 (1967) ("Before reaching a decision," INS "consult[s]" other agencies); *Employment of Western Hemisphere Natives As Temporary Workers*, in *Report of the Select Commission on Western Hemisphere Immigration* 89, 94 (1968) (INS makes the determination after consulting other agencies); *Hearings on Agricultural Labor Certification Programs and Small Business – Part 1*, 95th Cong., at 5 (1977) (DOL is advisory only and the INS has final decisionmaking) (statement of Leonel J. Castillo, Commissioner, INS); *Hearings on Agricultural Labor Certification Programs and Small Business – Part 2*, 95th Cong., at 289 (1978) (labor certification is advisory and INS makes final decision) (statement of Lyle H. Dahlin, District Director, INS); 49 Fed.Reg. 15182, 15182 (Apr. 18, 1984) (INS must determine unavailability and adverse effect); 52 Fed.Reg. 20554, 20554 (June 1, 1987) (labor certification was just DOL's advice); 55 Fed.Reg. 2606, 2616, 2617 (Jan. 26, 1990) (AG is solely responsible for administering the H-2B program, and INS seeks DOL's advice); *In re Golden Dragon Chinese Restaurant*, 19 I.&N. Dec. 238, 239 (Comm'r Oct. 5, 1984) (DOL is advisory and labor certification is not binding).

H-2 applications. Employment and Training Administration, *Chapter I –*
*Operating Instructions Handbook for Labor Certification Program for Immigrant*
*Workers* at 656-A-12, 656-A-108 (1977). For more than 40 years, DOL
repeatedly reaffirmed to Congress that it was only consulting and providing
advice, and denied that it had jurisdiction to make final decisions.[4]

After 1965, AFL-CIO continued its efforts to extend H-2 jurisdiction to
DOL. *E.g.*, *Hearings on Nonimmigrant Visas*, 91st Cong., at 255, 257, 263, 265-
66 (1969) (testimony of Kenneth A. Meiklejohn, AFL-CIO); *Western*
*Hemisphere Immigration: Hearings on H.R. 981*, 93d Cong., at 289, 294 (Comm.
Print 1973) (same). These efforts generated a steady drumbeat of at least 41

---

[4] *E.g., Hearings on Agricultural Labor Certification Programs and Small Business –*
*Part 1*, 95th Cong., at 27 (1977) (DOL has "no direct statutory responsibility")
(statement of William B Lewis, Administrator, DOL); 43 Fed.Reg. 10306,
10306 (Mar. 10, 1978) (decision whether to grant an H-2 visa petition "is solely
the decision of" INS); *Hearing on the H-2 Program and Nonimmigrants*, 97th
Cong., at 2 (1981) (INS has designated DOL to act in an advisory capacity)
(statement of Malcolm Lovell, Under Secretary, DOL); *Immigration Reform and*
*Control Act of 1983: Hearing on H.R. 1510*, 98th Cong., at 26, 28, 165 (1983)
(DOL "concerned" that DOL's "regulatory authority for the H-2 labor
certification program be codified, while balancing that codification with
retention of the Attorney General's final authority") (statement of Robert W.
Searby, deputy undersecretary, DOL); 49 Fed.Reg. 25837, 25844 (June 25,
1984) (DOL's labor certification is "only advisory," and the AG has "sole
authority for the final approval"); 52 Fed.Reg. 11460, 11460 (Apr. 9, 1987)
(decision to import H-2A labor is "solely" the INS's decision).

additional bills or floor amendments, in all of which Congress rejected DOL's

H-2 nonagricultural jurisdiction and refused to mandate labor certifications.[5]

---

[5]     **Wagner-Peyser Act** – A series of bills proposed to amend the Wagner-Peyser Act to allow DOL to determine unavailability and recruiting efforts. *Migratory Labor Legislation: Hearings on S. 8, S. 195, S. 197, S. 198 – Part 1,* 90th Cong., at 17, 22, 38 (Comm. Print 1967) (discussing S. 1867, 89th Cong. (1965) and S. 198, 90th Cong. (1967)).

    **Amending PERM labor certification** – There were efforts to amend the PERM provision to require labor certifications for H-2 applications. H.R. 14831, 92d Cong., at 7-8, § 8 (1972).

    **Amending H-2 visa** – There were numerous bills to add a labor certification to the definition of an H-2 worker. *Report to Accompany H.R. 981*, H.R. Rep. No. 93-461, at 1 (1973); H.R. 367, 94th Cong., at 1 (1975); H.R. 981, 94th Cong., at 1 (1975); S. 3074, 94th Cong., at 1 (1976); H.R. 12338, 94th Cong., at 1 (1976); H.R. 6022, 95th Cong., at 1 (1977); H.R. 7117, 95th Cong., at 1 (1977); H.R. 7939, 95th Cong., at 1 (1977); H.R. 8452, 95th Cong., at 3-4  (1977); H.R. 8646, 95th Cong., at 1 (1977); H.R. 9268, 95th Cong., at 1, 3-4 (1977); H.R. 11718, 95th Cong., at 3-4 (1978); H.R. 326, 96th Cong., at 1-2 (1979); H.R. 5114, 96th Cong., at 3 (1979).

    **Amending the adjudication clause** – There were numerous bills or floor amendments that proposed to amend the adjudication clause to authorize DOL to issue labor certifications for H-2B applications. S. 2222, 97th Cong., at 57 (1982); H.R. 5872, 97th Cong., at 57 (1982); H.R. 6514, 97th Cong., at 69 (1982); S. 2222, 97th Cong., at 141-42 (1982); H.R. 7357, 97th Cong., at 61 (1982); S. 529, 98th Cong., at 67 (1983); H.R. 1510, 98th Cong., at 56-57 (1983); H.R. 1061, 99th Cong., at 73 (1985); H.R. 4381, 111th Cong., at 2 (2009); S. 2910, 111th Cong., at 10-11 (2009); S. 744, 113th Cong., at 1788 (2013); 159 Cong. Rec. S4615-16 (June 18, 2013).

    **Striking H-2 and substituting new visa** – There were numerous bills or floor amendments to delete the H-2 program and substitute a new visa under which DOL had new labor certification powers. 118 Cong. Rec. 30153, 30168 (Sept. 12, 1972); 119 Cong. Rec. 14180, 14207 (May 3, 1973); H.R. 3739, 94th Cong., at 1-2 (1975); H.R. 8576, 95th Cong., at 2-3 (1977); H.R. 800, 96th Cong., at 2-4 (1979); H.R. 7399, 96th Cong., at 2 (1980); H.R. 944, 97th Cong., at 2, 3 (1981).

    **Restricting displacing employers** – There were multiple bills authorizing DOL to request that INS restrict those H-2B employers who were

## C. Congress Did Not Bestow Independent Governemntal Authority on DOL

Despite compelling evidence that Congress prohibited the regulations at issue, the trial court ruled that DOL's "longstanding" "legislative rules" justified DOL's independent authority. Although the trial court did not identify the legal theory for this conclusion, the trial court's authority and description of congressional actions tracks acquiescence, and that was certainly the doctrine most strongly advanced by the Government, J.A. 416.

**1. DOL Did Not Engage in Longstanding Legislative Rules**. The trial court assumed, without any analysis or the benefit of briefing, that DOL's 1968 Rule was legislative. That is not the Government's *Chenery* position. 80 Fed. Reg. at 24045, 24147 (1968 Rule was regulatory "procedures"); J.A. 72-74 (Government's Answer denied ¶¶ 20-22, 41, 54, 57 that the rules were legislative); J.A. 212 n.12 (DOL's legislative rules limited to 2008 and 2011).

Distinguishing legislative from interpretive rules is not easy. *Jerri's Ceramic Arts v. Consumer Product Safety Comm'n.,* 874 F.2d 205, 207 (4th Cir.

---

displacing U.S. workers. S. 1427, 96th Cong., at 5 (1979); H.R. 5128, 96th Cong., at 6 (1979); S. 47, 97th Cong., at 4-5 (1981).

**Attestations** – There were various bills that would have obligated H-2B employers to file attestations and secure DOL's approval to abide by prevailing wages and working conditions. House Comm. on the Judiciary, *Family Unity and Employment Opportunity Immigration Act of 1990: Report Together With Dissenting Views to Accompany H.R. 4300 – Part 1*, H.R. Rep. 101-723, at 9-10 (1990); S. 2010, 108th Cong., at 14, 18-19 (2004).

1989).  Legislative rules represent the exercise of delegated power, but interpretive rules do not.  *Chen v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995).  A redelegation changing who makes the determination is itself a legislative rule. *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000). When an agency has no rulemaking function, its rules are necessarily interpretive, even if it affects rights and obligations.  Procedural rules establish how the agency does business, and do not create rights or obligations.  *Inova Alexandria Hosp. v. Shalala,* 244 F.3d 342, 349 (4th Cir. 2001).  The key difference between legislative and interpretive rules is the binding effect of the rule.  If the rule finally determines rights and obligations with the force of law, it is legislative.  *Chen*, 48 F.3d at 1340.  A rule is binding if it enforces rights or imposes obligations, or does not leave the agency free to exercise discretion. *Associated Dry Goods Corp. v. EEOC*, 720 F.2d 804, 809 (4th Cir. 1983). Interpretive rules do not bind the agency and the agency retains discretion. *Chen*, 48 F.3d at 340-41.

For nearly 60 years, DOL operated without legislative rules.  DOL's 1968 Rule was not legislative.  DHS's predecessor – without public notice and comment – initiated the 1968 process by calling for DOL's "procedures," and those instructions still remain, 8 C.F.R. §214.2(h)(6)(iii)(D).  DOL had no congressional authority, so the 1968 Rule could not have been legislative.  A

38

redelegation of final decisionmaking would have required notice and comment, and both Departments steadfastly maintained until 2008 that DHS was the sole decisionmaker.  DOL's 1968 Rule determined nothing finally, and it is hard to imagine DOL publishing such skimpy "procedures of the most general kind," 42 Fed. Reg. at 45898, if it intended to limit its discretion, *see U.S. Tel. Ass'n v. FCC*, 28 F.3d 1232, 1235 (D.C. Cir. 1994).

Nor was DOL's interpretation "longstanding"or "a regular practice."  *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999). Employers have compiled DOL's multitudinous legal theories.  J.A. 24-26. DOL has claimed that the 1968 Rule was authorized as

- Procedural.

- Pure acts of discretion, devoid of any statutory mandate and judicially unreviewable.  *Chase Glades Farms v. Wirtz*, No. 65-86-Civ. (M.D. Fla. filed May 5, 1965), *discussed in* 111 Cong. Rec. at 23510-13;  J.A. 222; 49 Fed. Reg. at 29845 (no judicial review after DOL's determination under 1968 Rules); *Sweet Life v. Dole*, 876 F.2D 402, 405 (5th Cir. 1989) (DOL relied upon INS's authority in the 1968 Rules, so INS is a necessary party).  As such, DOL's regulations developed in "splendid isolation" and were "unscrutinized and unscrutinizable."  *See Brown, 513 U.S. at* 122.

39

- Advisory and non-binding.  *See, e.g.*, 8 C.F.R. § 214.2(h)(6)(iii)(A).

- Redelegated under 8 C.F.R. §214.2 but non-binding.  *See, e.g., Va. Agric.,* 756 F.2d at 1027 (agricultural workers).

- 8 U.S.C. §1101(a)(15)(H)(ii)(b) or §1184(c)(1).  *See, e.g.*, J.A. 24-25.

More recently, DOL has claimed authority because

- Redelegated by DHS under 8 C.F.R. §214.2 and binding.  *See, e.g.*, J.A. 25.

- Redelegated by DHS under 8 U.S.C. § 1103 (a) (6) and binding.  *See, e.g.*, J.A. 25.

- Redelegated by DHS under 8 U.S.C. § 1184 (c) (14) and binding.  *See, e.g.*, J.A. 26.


- A byproduct of DHS's requirement, condition precedent, or "jointly issuing" with DHS.  *See, e.g.*, 80 Fed. Reg. at 24045.

- Wagner-Peyser Act.  *See, e.g.*, J.A. 24.

- Derived from congressional acquiescence, ratification, or reenactment. *See, e.g.*, 77 Fed. Reg. at 10043.

- Inherent.  *See, e.g.*, 73 Fed. Reg. at 78044.

   **2.  Congress Did Not Acquiesce in DOL's 1968 Procedures**.  The

Government's acquiescence theory violates separation of powers.  Neither the

Government nor the trial court attempted to establish the elements of acquiescence or related doctrines, such as ratification or reenactment. This obscured the fact that neither the 2008 DHS Rule, 2013 IFR, or the 2015 DHS-DOL Rule claimed acquiescence, so this argument is entitled to "near indifference" as well as a violation of the *Chenery* doctrine. The Government "jointly issued" the 2015 DHS-DOL Role precisely because there was no acquiescence.

The trial court failed to confront the Government's striking inconsistencies. The most embarrassing fact is that Congress only acquiesces in *consistent* agency construction. *See Haggar Co. v. Helvering*, 308 U.S. 389, 398-400 (1940); *cf. Texas Dep't of Hous. & Cmty. Affairs* v. *Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2520 (2015)(Congress acquiesced to "the unanimous holdings" of Courts of Appeals). Here, the most the Government shows is that DOL had no role from 1952-1968, and it has "participa[ted]" in vague ways since 1968, J.A. 212 n.12, but the Government cannot agree on such simple facts as whether DOL: is an advisor or a final decisionmaker; proceeds substantively or procedurally; is judicially reviewable; or has inherent, DHS-redelegated, congressionally-delegated, or executive authority. *See Gardner v. Brown*, 5F3d. 1456, 1464 (Fed. Cir. 1993) (agency's pre-reenactment *procedural* rules did not definitively interpret the statute), *aff'd*, 513 U.S. 115 (1994). DOL never

explained why it took until 2008 to issue legislative rules. Moreover, acquiescence at most creates a "presumption" that the agency's interpretation was correct. *Schism v. United States*, 316 F.3d 1259, 1294-95 (Fed. Cir. 2002) (*en banc*). Any presumption surrounding any *specific* interpretation is overcome because Congress allegedly approved *all* of these inconsistent theories serially for decades, defeated nearly 50 attempts to accomplish this goal legislatively, *see Gonzalez*, 546 U.S. at 267 (Congress extensively debated the issue, so oblique form of delegation is more suspect), repeatedly rejected DOL processing fees, 73 Fed. Reg. at 29944 n.2, and authorized DHS's redelegation in 2005 of enforcement authority (surplusage if Congress had already acquiesced *carte blanche*). The Government's argument also proves too much: It would sustain both the 2008 and 2012 DOL Rules, but they are long vacated for lack of congressional authority.

The trial court never considered that its non-specific acquiescence raises serious nondelegation problems. At minimum, the acquiescence doctrine only applies if Congress provided a clear statement. Congress cannot merely surrender control to the Departments and walk away. *Mistretta,* 488 U.S. at 425 (Scalia, J., dissenting). Congress cannot simply acquiesce in constitutional violations, *Hampton v. Mow* Sun Wong, 426 U.S. 88, 114-17 (1976) (Congress cannot acquiesce in due process violation), and Congress's purported

42

acquiescence failed to clearly select DOL as its instrumentality to exercise governmental functions, *see Greene v. McElroy*, 360 U.S. 474, 507 (1959) (acquiescence does not provide the explicit and clear evidence that Congress *specifically* authorized a practice with doubtful constitutionality); *Pan-Am. Petroleum Co. v. United States*, 9 F.2d 761, 770-71 (9th Cir. 1926), *aff'd*, 273 U.S. 456 (1927)(it is inconceivable that Congress would use a rider so casually to surrender legislative functions without using "clear" terms to exclude all doubt).  The trial court acknowledged that acquiescence did not occur "via statute," 633 F. Supp.3d at 720, but only a statute will satisfy the unlawful delegation doctrine.

Finally, the obvious "trump" to the Government's acquiescence theory is that Congress is clear that DOL lacks governmental functions.  *See Brown,* 513 U.S. at 121 (congressional inaction cannot countermand a duly-enacted statute).  For cases rejecting the Government's acquiescence argument, *see Bayou Lawn*, 2012 U.S. Dist. Lexis 69297, at *12-13; *Bayou Lawn,* 713 F.3d at 1085.

## D.  Employers' Challenge to the 2008 DHS Rules Is Not Time-Barred

The trial court found that the challenge to the 2008 DHS Rule was time-barred.  This should be rejected for two reasons.  First, the D.C. Circuit's "reopener" doctrine applies because the 2013 IFR and 2015 DHS-DOL Rule

restarted the clock.  The reopening doctrine applies when an agency conducts a prior rulemaking or policy, then in a later action restates the policy or otherwise addresses the issue again without altering the original decision. *CTIA - The Wireless Ass'n v. FCC*, 466 F.3d 105, 110 (D.C. Cir. 2006).  A "reconsideration" of a rule is another form of an "application" of a rule.  *Alvin Lou Media, Inc. v. FCC*, 571 F.3d 1, 8 (D.C. Cir. 2009); *Environmental Def. v. Environmental Protection Agency*, 467 F.3d 1329, 1334 (D.C. Cir. 2006)("An official interpretation of a regulation may trigger a reopening.").  When an agency opens an issue anew, even though not explicitly, the agency's renewed adherence is substantively reviewable.  *CTIA*, 466 F.3d at 110.  *Cf. Interstate Commerce Commission v.Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987)(when agency "reopens a proceeding for any reason and, after reconsideration," re-determines or even "merely reaffirms the rights and obligations set forth in the original order," the later order "is reviewable on its merits.").

Actual reconsideration of a regulation is sufficient to reopen it.  To determine whether an agency has reconsidered a prior rule, a court must look to the entire rulemaking, including relevant proposals and the agency's reaction.  *CTIA*, 466 F.3d at 110.  Relevant factors establishing a reopening include ambiguity in the subsequent agency action, the agency supplying *new*

44

*rationales* for the prior rulemaking, and the agency failing to foreclose reopening the precise matter at issue. *Id*. at 110, 112.

In this case, DHS actually reconsidered its 2008 rule. This began with the 2013 IFR, in which DHS mandated that DOL issue H-2B rules and adjudicate prevailing wages. 78 Fed.Reg. at 24061. This was a substantive expansion of the obligations under the 2008 DHS Rule.

DHS's actual reconsideration continued with the 2015 DHS-DOL Rule. DHS affirmatively removed the remaining "countervailing-evidence" provision that allowed employers to continue appealing to DHS. 80 Fed.Reg. at 24050. Reconsideration is also obvious from the second line of the 2015 DHS-DOL Rule: "8 C.F.R. Part 214." *See id*. at 24042. This line means that the 2008 DHS Rule was "directly affected" by the 2015 Rule. 1 C.F.R. § 22.6. In context, the *vacatur* of the 2008 DOL Rule had brought the program to a standstill, and DHS's responsibility was to evaluate alternatives, thereby reopening the issue as a matter of law. Not only did DHS not foreclose reopening the precise matter at issue, but it affirmatively requested public comment on *all* issues. 80 Fed.Reg. at 24050 ("we seek input on every aspect of this interim final rule"). The Departments claimed to review public comments generated for the 2012 DOL Program Rule, which included numerous challenges to DOL's authority and DHS's redelegation. The 2015

45

Rule was the first time that DHS (or any agency) adopted the unprecedented theory to promulgate regulations for another agency. The issue was also reopened because of the express condition on enforcement authority contained in the 2009 Interagency Agreement efeated redelegation of enforcement power. J.A. 83.

Even without actual reconsideration, a "regulation may be constructively reopened when an agency or court changes the regulatory context in such a way that could not have been reasonably anticipated by the regulated entity and is onerous to its interests." *Environmental Def. v. Environmental Protection Agency*, 467 F.3d 1329, 1334 (D.C. Cir. 2006). In this instance, regulated employers could not have reasonably anticipated that a court would vacate the 2008 DOL Rule and DHS would respond by promulgating its own, far-more onerous replacement regulations.[6] Both the 2013 IFR and 2015 Rule were onerous. Not only did DHS mandate that DOL assume governmental functions and remove the final countervailing-evidence provision, but DHS fundamentally altered the obligations under the program by

---

[6] Because any timeliness issue in this case is curable by filing a petition for review with DHS, there is a public interest in avoiding fruitless acts. *See Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152 (D.C.Cir.1990) (if plaintiff's challenge was dismissed as untimely, plaintiff "could file a petition for rulemaking and then raise its claim of unlawfulness when the [agency] denied the petition. Such a requirement would be a waste of everyone's time and resources.").

- Re-defining DHS's "petition" to include DOL's labor certification, 29 C.F.R. §503.4, thereby exposing employers to new civil and criminal liability.

- Dramatically upending the obligations and consequences for participating H-2B employers, such as increased wages, limited seasons, *etc*.

- Unprecedentedly DOL's altering theory of authority and DHS's ownership of DOL's regulations. *CTIA*, 466 F.3d at 110 (reopened because the agency finally gave a legal rationale).

- Expanding to cover U.S. workers. 80 Fed.Reg. at 24085.

Each of these changes greatly burdened participating H-2B employers. The 2013 IFR is indisputably within the statute of limitations. Without the benefit of the 2013 IFR or the 2015 DHS-DOL Rule, the 2008 DHS Rule not only cannot "function sensibly," *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014), but it cannot function *at all*: The 2008 DHS Rule disabled DHS from any processing because it required DOL action that was vacated.

Second, as Employers have shown, there are serious constitutional issues if the 2008 DHS Rule are allowed to remain. Effectively, DHS is failing to exercise its jurisdiction because it has imposed an illegal condition and DHS

47

cannot function without it.  The statute of limitations should be construed to avoid this constitutional issue.

## IV.  CONGRESS DID NOT AUTHORIZE DHS TO REDELEGATE TO DOL GOVERNMENTAL AUTHORITY

The trial court correctly determined that DHS could not redelegate governmental functions to DOL.  Although the Government suggests *post hoc* that it alternatively claims redelegation, there is no evidence that the required "explicit" redelegation even occurred, *see United States v. Touby*, 909 F.2d 759, 770 (3d Cir. 1990), *aff'd*, 500 U.S. 160 (1991); *San Pedro v. United States*, 79 F.3d 1065, 1071 (11th Cir. 1996), or was claimed as a *Chenery* position, J.A. 216.  Because an agency necessarily operates under the same constitutional restrictions placed on Congress by the nondelegation clause, *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 433 (1935), then DHS must "clearly" delineate DOL as a redelegatee.  DHS offered no explicit statutory citation, relying instead on the "most effective administration" of the H-2B program.  80 Fed.Reg. at 24146, 24147.  The most that DHS stated is that it was "permissible" to "allow[]" DOL to issue regulations, 80 Fed.Reg. at 24154, which ambiguously suggested that DHS merely conceded that DOL already had that power, *cf.* 8 U.S.C. §1103 (under the subdelegation clause, only than DHS's approval is necessary).  Thus, courts have dismissed this redelegation theory for failure to prove it

48

occurred. *Daniels*, 2015 U.S. App. Lexis 15689, at *13 n.10; *Bayou Lawn,* 2012 U.S. Dist. Lexis 69297, at *13 & n.10; *Bayou Lawn,* 81 F. Supp.3d at 1293- 95. Rather than precipitously rule on a serious constitutional issue, the Court has the option to compel the Government to redelegate properly. *Cf. Greene*, 360 U.S. at 509 (Harlan, J., concurring)(avoid constitutional ruling until agency adopts a position).

Assuming the issue is ripe, this case raises the anti-redelegation principle underscoring the administrative-function rule. Administrative or governmental functions include rulemaking, adjudication, and enforcement. *E.g.*, B-156510 (Comp. Gen. Feb. 23, 1971)<http://www.gao.gov/products/400043#mt=e-report>. The administrative-function rule is a statutory and constitutional principle prohibiting an agency's redelegating any power requiring the exercise of discretion unless Congress authorized it. 35 Op. Att'y Gen. 15, 1925 U.S. AG Lexis 3, at *7 (1925). This rule applies to "sanctions" under the APA. S. Rep. No. 79-752, at 25 (Nov. 19, 1945)(agency may not "undertake directly or indirectly to exercise the functions of some other agency."). The Reorganization Act prohibits redelegating functions without express notice to and approval by Congress. 5 U.S.C. §903(a)(5). Interagency transfers of

"primary administrative functions" are also prohibited by the Economy Act, 31 U.S.C. § 1535. *E.g.*, B-156510 (Comp. Gen. Feb. 23, 1971).

## A. The Redelegation Clause Textually Prohibits DHS from Redelegating Governmental Functions

There are 3 core components to the redelegation clause, none of which supports DHS's claim.

1. **Scope of §1103(a)(6).** The first element is the conditional phrase that severely limits its scope: The subsection is limited to when the INA or its implementing regulations have "conferred or imposed" a particular status specifically on DHS "officers or employees," not DHS's Secretary. *See Department of Transpo. v. Association of Am. R.R.*, 135 S. Ct. 1225, 1241 (2015)(Thomas, J., concurring)(Congress improperly delegates executive power by authorizing non-officers to perform a "function"). Neither the rulemaking nor adjudicative functions qualify because they are statutorily vested in DHS's Secretary alone. 8 C.F.R. §2.1. *See also* 68 Fed.Reg. 10922, 10922 (Mar. 6, 2003)(§2.1 "vests all authorities and functions of DHS to administer and enforce the immigration laws" in DHS's Secretary). The Government has not shown that it satisfies the statutory scope.

Moreover, §1103(a)(6) requires that the relevant status have been conferred or imposed by statute or regulations issued under the INA. *Cf.* 8

50

U.S.C. §287 (ministerial powers statutorily vested in a INS employees). But DHS subdelegates via a host of sub-regulatory devices. §2.1. The Government has failed to show that any initial subdelegation was undertaken by regulation.

**2. "Powers, privileges, or duties."** The Government also ignores the requisite status. On its face, the statute is expressly limited to "powers, privileges, or duties." Governmental functions are statutorily extended to DHS's Secretary, thus making them presumptively improper for extending to low-level DHS officers or employees.

Completely missing in the Government's interpretation is the critical distinction between "powers, privileges, or duties" and "functions." It is the Department's "functions" that are vested in the Secretary under §2.1 and 8 U.S.C. §1103(g)(1), whereas "powers, privileges, or duties" inhere in low-level officers or employees. *See also* 68 Fed.Reg. at 10922 (DHS Reorganization Plan transferred the "functions" of the INS and DOJ, and "all authorities with respect to those functions," to DHS's Secretary.). This stratification is seen in several other passages. Thus, the "administration and enforcement" of the immigration statute is vested in DHS's Secretary except when "powers, **functions**, and duties [are] conferred upon" named, high-ranking executive officials. 8 U.S.C. §1103(a)(1)(emphasis added). By contrast, the Secretary of State may delegate his "powers, **functions**, or duties" to other federal

51

employees,  8 U.S.C. §1104(a)(emphasis added), but this expansive scope is unavailable to DHS's Secretary.

**3.  Transfers under §1103(a)(6) may only be conferred on low-level employees**.  The third component of §1103(a)(6) is that any transfer of low-level "powers, privileges, or duties" may only be conferred on correspondingly low-level "employees."  This follows from the presumption that the meaning of "employee" does not inexplicably change in the very same sentence.  Thus, any transfer goes from low-level DHS "employees" to equally low-level "employees" in other agencies, but not to officers, and certainly not to heads of departments.  The only role for department heads (such as DOL's Secretary) is to approve the transfer, not to exercise the transferred powers.

There is an obvious shortcoming in the Government's interpretation: It contains no limiting principle.  *Whitman*, 472-73 (overbroad delegation cannot be saved by agency's agreement to restrict its actions).  The only conclusion to be drawn from the Government's position is that **anyone** working for the federal government can be authorized to issue H-2B regulations or adjudicate H-2B applications.  This is, indeed, absurd.  *Bayou Lawn,* 713 F.3d at 1085.

**B.  History Shows That Congress Did Not Authorize Redelegating Governmental Functions**

Even after litigating H-2B authority cases for years, the Government has not cited a single instance in nearly 70 years of administering dozens and dozens of visas in which

- DHS represented that §1103(a)(6) justified redelegation of governmental functions. *See, e.g.*, 67 Fed.Reg. 48354 (July 24, 2002) (AG's power to authorize state or local police to exercise federal immigration enforcement authority during a mass influx of aliens); J.A. 82 (DHS's redelegation of H-2B enforcement function justified solely under 8 U.S.C. §1184(c)(14)). None of DHS's regulations calling for DOL's role within the H-2 or H-2B program was ever based upon §1103(a)(6). *See, e.g.*, 29 Fed.Reg. 15252, 15253 (Nov. 13, 1964); 31 Fed.Reg. 6611, 6611 (May 4, 1966); 55 Fed.Reg. 2606, 2626 (Jan. 26, 1990); 73 Fed.Reg. 78104, 78108, 78112 (Dec. 19, 2008); 78 Fed.Reg. 24047, 24050, 24061 (Apr. 24, 2013); 80 Fed.Reg. 24042, 24108 (Apr. 29, 2015).

- a single court has determined that §1103(a)(6) sustained redelegated functions.

- even a shred of historical evidence supported the Government's theory.

## C.  The INA's Structure Shows That Congress Did Not Authorize Redelegation of Functions

As we have seen, the INA is comprehensive and Congress – not DHS – carefully targets its labor solutions.  When Congress wanted DHS to redelegate or DOL to issue labor certifications, Congress said so.  8 U.S.C. §§1184(c)(14), 1188(e)(2).  Congress has extended no appropriations or fee-for-service when DOL "consults" on H-2B applications, but it has dedicated funding to issue H-2A and PERM labor certifications. 8 U.S.C. §1188(g)(3).

## D.  DHS Cannot Claim Deference When Construing §1103(a)(6)

As we have seen, the constitutional concerns posed by redelegation raise the same issues with constitutional avoidance, clear-statement rules, major questions, the rule of lenity, and presumptions. Every recent Circuit Court decision has uniformly held that redelegating rulemaking authority is presumed invalid and requires an affirmative or clear congressional authorization.  *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 565-66 (D.C. Cir. 2004)(redelegator must show "affirmative evidence of authority to do so."); *Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008)(same); *Butterbaugh v. DOJ*, 336 F.3d 1332, 1342 (Fed. Cir. 2003)(same); *Daniels,* 2015 U.S. App. Lexis 15689, at *12 (same); *Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation*, 792 F.2d 782, 796 (9th Cir. 1986)(agency needs "clear proof" of redelegation authority); *see also Louisiana Forestry Ass'n Inc. v. Secretary of Labor*, 745 F.3d 653, 671 (3d Cir. 2014) (recognizing, but distinguishing, the

54

rule).  There is no evidence of any such congressional authorization for DHS to redelegate this particular power to this particular agency.

The undisputed evidence is dispositive that DOL now exercises final decisionmaking.  DHS has shifted the entire determination of specific statutory criteria, and has abdicated final reviewing authority.  This unbridled discretion to redelegate functions is an "extreme" breach of delegated power.  *Report of the Special Committee on Administrative Law*, 61 Annu. Rep. A.B.A. 720, 780 (1936).

## V.  DOL EXCEEDED THE SCOPE OF ITS REDELEGATED ENFORCEMENT AUTHORITY

The trial court appeared to uphold the 2015 Enforcement Rules, but only to the extent that they "support that lawfully delegated power."  633 F. Supp.3d at 721.  The trial court did not analyze the redelegation issues, but simply surmised without evidence that Congress may have wanted DOL to have rulemaking power.  Thus, the ruling on the enforcement rule raises all of the same authority questions.

In yet another *post hoc* rationalization entitled to "near indifference," the Government contends that DHS belatedly redelegated rulemaking power in conjunction with enforcement authority under the redelegation clause in August, 2009.  For all of the reasons already discussed above, DHS was not authorized to do so because Congress carefully limited the scope of any

redelegation.  See also 73 Fed.Reg. 29942, 29955 (May 22, 2008) (DHS's H-2B

enforcement authority was "significantly narrower" than DOL's H-2A and H-

1B enforcement authority).

DHS claimed to redelegate more than what Congress authorized.

However, DHS was neutered, having already redelegated *all* of its enforcement

authority in 2009, J.A.82; it simply had no power by which to redefine a

covered "petition" to include the attached labor certification.  *United States v.*

*Nixon*, 418 U.S. 683,694-96 (1974) (agency may not exercise regulatory power

once it has been delegated to another).

Congress authorized DHS to redelegate certain enforcement powers to

DOL, but the 2015 Enforcement Rules far exceeded the authorized scope.  The

redelegation of enforcement powers did not imply rulemaking power to DOL.

Enforcement under §1103(a)(1) and rulemaking under §1103(a)(3) are separate

functions and must be separately granted.  *See Martin*, 499 U.S. at 151-57

(enforcement agency lacked rulemaking power that was provided to a separate

agency).  DOL's limited enforcement powers do not authorize DOL to define

the statute.  *Gonzales*, 546 U.S. at 262-63.  The power to decide compliance

with the law does not allow an agency to decide what the law is.  *Id*. at 264.

Nor does investigative power imply rulemaking authority when Congress gave

that authority to another agency.  *Union Pac. R.R. Co. v Surface Transp. Bd*., 863

F.3d 816, 823 (8th Cir. 2017).  The power of indiscriminate redelegation coupled with the power to define crimes is the most "extreme" delegation problem.  61 Annu. Rep. A.B.A at 780-81.

The Government falsely contends that, because DHS was authorized to redelegate enforcement authority, DOL as redelegatee stepped into the shoes of DHS and may exercise all of DHS's powers.  A limited grant of power does not extend unlimited power.  An agency must have power for each specific issue.  *Mead Corp. v. Tilley*, 490 U.S. 714, 726 (1989) ("within the scope of the delegated authority").  An agency does not possess "*plenary* authority to act within a given area simply because Congress has endowed it with *some* authority to act in that area."  *Railway Labor Execs. Ass'n v. National Mediation Bd.*, 29 F.3d 655, 670 (D.C. Cir. 1994)(*en banc*)(emphasis in original).  *See also* S. Rep. No. 79-752, at 25 ("Where the sources are specific in the authority granted, no additional authority may be assumed.").  Thus, when Congress has carefully specified a limited role in some areas (*e.g.*, to act as a consultant or enforcer), but not in others (*e.g.*, to issue rules), that forecloses authority in those other areas.  *See, e.g., Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649-50 (1990)(delegation of authority to promulgate safety "standards" did not include the authority to decide the pre-emptive scope of the statute because "[n]o such delegation regarding [the statute's] enforcement provisions is evident in the

57

statute"); *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir.
1996)(agency's broad grant of procedural rulemaking authority does not
authorize it to issue substantive rules). The same limitation prohibits
expansively extending the scope of DOL's enforcement powers to "the
enforcement of all statutory and regulatory obligations" under all of 8 U.S.C.
§1184(c) and 20 C.F.R. §655. 29 C.F.R. § §503.0, 503.1(c)&(d); 80 Fed.Reg. at
24085.

The Government has improperly expanded the scope of the enforcement
power. Congress only authorized redelegation of the remedies contained in
§1184(c)(14)(A)(i). A hearing function and debarment penalty appear in other
subsections. Because that issue was extensively debated and a floor
amendment was defeated, 159 Cong. Rec. S4615, S4616 (June 18, 2013), the
Government cannot undertake regulations addressed to that major question.
Further, the enforcement regulations bootstrap virtually all of the illegal 2015
Program Rules for no reason other than DOL's claim to need that authority,
29 C.F.R. §503.1(a), an assertion of power that Congress never authorized.
*Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745 (1973)("an
agency may not bootstrap itself into an area in which it has no jurisdiction.").
DOL was not given authority to enforce its own regulations.

**CONCLUSION**

58

The trial court's opinion should be reversed and the case remanded for further proceedings, including a determination of prejudice and remedy.


_____/s/_____
R. WAYNE PIERCE
D. Md. Bar No. 07999
The Pierce Law Firm, LLC
133 Defense Highway, Suite 201
Annapolis, Maryland  21401-7015
Phone:  (410) 573-9959
Fax:  (410) 573-9956
Email:  wpierce@adventurelaw.com


_____/s/_____
LEON R. SEQUEIRA, Esq.
Mo. Bar No. 52403
616 South Adams Street
Arlington, Virginia 22204
Phone: (202) 255-9023
E-mail:  lsequeira@lrs-law.com

**Attorneys for Plaintiffs**


## CERTIFICATES

I HEREBY CERTIFY that on February 11, 2019, Employer-Appellants' opening brief and Joint Appendix were served electronically by the Court's CM/ECF system on all counsel of record, each of whom is a filing user.

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) and 4th Cir. L.R. 29.1 because the word-count feature in

59

Word 97-2003 indicates that this brief contains **12,616** words, excluding the

parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii).


_____/s/_____
R. Wayne Pierce