No. 18-2370

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OUTDOOR AMUSEMENT BUSINESS ASS'N, INC., *et al.*,
*Plaintiffs-Appellants*,

*v.*

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND
D.C. No. 1:16-cv-01015-ELH
The Hon. Ellen L. Hollander

### BRIEF FOR THE APPELLEES

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

KATHRYNE M. GRAY
JOSHUA S. PRESS
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 305-7386
Kathryne.m.gray@usdoj.gov

*Attorneys for Defendants-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

STATEMENT OF THE CASE ...........................................................3

I.     Statutory and Regulatory Background .........................................3

II.    History of the H-2B Program ...................................................5

III.   This Lawsuit ........................................................................10

SUMMARY OF THE ARGUMENT ..................................................13

STANDARD OF REVIEW ..............................................................14

ARGUMENT ................................................................................15

I.     The District Court Correctly Rejected Appellants' Challenges to DHS's 2008 Rule .................................................................................15

       A.    Appellants' Challenges Are Time-Barred. ..........................15

       B.    Appellants' Challenges Are, in Any Event, Meritless. ......22

II.    The District Court Correctly Rejected Appellants' Challenges to the 2015 Rules .................................................................................34

       A.    Congress Ratified DOL's H-2B Role .................................41

III.   The District Court Correctly Rejected Enforcement-Based Challenges.49

CONCLUSION ..............................................................................55

CERTIFICATE OF COMPLIANCE ..................................................56

CERTIFICATE OF SERVICE ..........................................................56

i

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son v. Puerto Rico*,
    458 U.S. 592 (1982) ..................................................................45

*Alpha K9 Pet Servs. v. Johnson*,
    171 F. Supp. 3d 568 (S.D. Tex. 2016)......................................10

*Am. Fed. of Gov. Employees v. OPM*,
    821 F.2d 761 (D.C. Cir. 1987).................................................35

*Am. Hosp. Ass'n v. NLRB*,
    499 U.S. 606 (1991) ................................................................35

*Ayes v. Dep't of Veterans Affairs*,
    473 F.3d 104 (4th Cir. 2006)....................................................55

*Bayou v. Johnson*,
    173 F. Supp. 3d 1271 (N.D. Fla. 2016) ...................................10

*Bayou v. Perez*,
    81 F. Supp. 3d 1291 (N.D. Fla. 2014) .......................................8

*Bayou Lawn & Landscape Servs. v. Solis*,
    713 F.3d 1080 (11th Cir. 2013) .......................................... 8, 41

*Biggerstaff v. FCC*,
    511 F.3d 178 (D.C. Cir. 2007).................................................20

*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1983) ................................................................42

*Brown v. Nucor Corp.*,
    785 F.3d 895 (4th Cir. 2015)............................................ 17, 35

*CATA v. Perez*,
148 F. Supp. 3d  (D.N.J. 2015).......................................................................11

*CATA v. Perez*,
774 F.3d 173 (3d Cir. 2014) ...........................................................................9

*CATA v. Solis*,
2010 WL 3431761 (E.D. Pa. Aug. 30, 2010)................................................ 7, 40

*CATA v. Solis*,
933 F. Supp. 2d 700 (E.D. Pa. 2013)............................................................ 8, 41

*CFTC v. Schor*,
478 U.S. 833 (1986) .......................................................................................45

*Cheney R. Co. v. ICC*,
902 F.2d 66 (D.C. Cir. 1990)........................................................................ 26, 27

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ........................................................... 14, 23, 25, 27

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) .......................................................................................48

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......................................................................................23

*Cuozzo Speed Tech., LLC v. Lee*,
136 S. Ct. 2131 (2016) ............................................................................. 23, 24

*Davis v. FEC*,
554 U.S. 724 (2008) .......................................................................................15

*EEOC v. Seafarers*,
394 F.3d 197 (4th Cir. 2005)..........................................................................34

*Eltra Corp. v. Ringer*,
579 F.2d 294 (4th Cir. 1978)..................................................................... 42, 45

iii

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ...................................................................... 26, 28

*Fla. Sugar Cane League, Inc. v. Usery*,
  531 F.2d 299 (5th Cir. 1976) ................................................................22

*Friends of Back Bay v. U.S. Army Corps of Eng'rs*,
  681 F.3d 581 (4th Cir. 2012) ...............................................................14

*Fund for Animals v. Kempthorne*,
  538 F.3d 124 (2d Cir. 2008) .......................................................... 29, 30

*G.H. Daniels III & Assocs., Inc. v. Perez*,
  626 F. App'x 205 (10th Cir. 2015).................................................. 12, 32

*Gauley Mountain Coal Co. v. Director of U.S.B. of Mines*,
  224 F.2d 887 (4th Cir. 1955) ...............................................................30

*Gen. Elec. Co. v. EPA*,
  53 F.3d 1324 (D.C. Cir. 1995)...............................................................53

*Gentiva Healthcare Corp. v. Sebelius*,
  723 F.3d 292 (D.C. Cir. 2013)...............................................................55

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) .............................................................................22

*Harman Min. Co. v. DOL*,
  826 F.2d 1388 (4th Cir. 1987) .............................................................14

*Hire Order Ltd. v. Marianos*,
  698 F.3d 168 (4th Cir. 2012)......................................................... 16, 17

*Hispanic Affairs Project v. Acosta*,
  263 F. Supp. 3d 160 (D.D.C. 2017) ....................................................18

iv

*Humana v. Blue Cross*,
    622 F.2d 76 (4th Cir. 1980) ...................................................................35

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
    761 F.2d 798 (D.C. Cir. 1985)..............................................................43

*Int'l Union v. MSHA*,
    626 F.3d 84 (D.C. Cir. 2010)................................................................37

*Ivanhoe Irrigation Dist. v. McCracken*,
    357 U.S. 275 (1958) ..............................................................................46

*Janik Paving & Constr., Inc. v. Brock*,
    828 F.2d 84 (2d Cir. 1987) ...................................................................56

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999)................................................................15

*Johnson v. Whitehead*,
    647 F.3d 120 (4th Cir. 2001)................................................................26

*Kutty v. DOL*,
    764 F.3d 540 (6th Cir. 2014)................................................................38

*Lopez v. Davis*,
    531 U.S. 230 (2001) ................................................................. 33, 34, 36

*Louisiana Forestry Association v. DOL*,
    745 F.3d 653 (3d Cir. 2014) ...................................................... *passim*

*Louisiana Forestry Association v. Solis*,
    889 F. Supp. 2d 711 (E.D. Pa. 2012)......................................................9

*Mayo Found. v. United States*,
    562 U.S. 44 (2011) ..................................................................... 25, 45

v

*Md. Highways Contractors Ass'n v. Maryland*,
   933 F.2d 1246 (4th Cir. 1991) ...............................................................50

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) ........................................... 18, 21, 40

*Morton v. Ruiz*,
   415 U.S. 199 (1974) ............................................................... 37, 47

*Nat'l Ass'n of Home Builders v. OSHA*,
   602 F.3d 464 (D.C. Cir. 2010) ............................................... 53, 54

*Nat'l Ass'n of Mfrs. v. Dep't of Interior*,
   134 F.3d 1095 (D.C. Cir. 1998) ...........................................................21

*Nat'l Min. Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014) ............................................... 24, 31

*Nat'l Petroleum Ref. Ass'n v. FTC*,
   482 F.2d 672 (D.C. Cir. 1973) ............................................... 37, 38, 54

*Nat'l Taxpayers Union v. United States*,
   68 F.3d 1428 (D.C. Cir. 1995) ............................................... 50, 51

*Nielsen v. Preap*,
   —S. Ct.—, 2019 WL 1245517 (Mar. 19, 2019) ...................................42

*P&V Enters. v. Arm Corps. of Eng'rs*,
   516 F.3d 1021 (D.C. Cir. 2008) ...........................................................16

*Pension Benefit Guaranty Corp. v. LTV Corp.*,
   496 U.S. 633 (1990) ...........................................................................48

*Perot v. FEC*,
   97 F.3d 553 (D.C. Cir. 1996) ...............................................................30

*Production Tool Corp. v. ETA*,
   688 F.2d 1161 (7th Cir. 1982) ............................................... 36, 38

vi

*Recreation Vehicle Indus. Ass'n v. EPA*,
    653 F.2d 562 (D.C. Cir. 1981)...................................................................24

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ...................................................................................23

*S. Pac. Transp. Co. v. Watt*,
    700 F.2d 550 (9th Cir. 1983) ............................................................ 30, 31

*Satellite Broadcasting Co. v. FCC*,
    824 F.2d 1 (D.C. Cir. 1987).........................................................................53

*T-Mobile Ne. v. Fairfax Cty. Bd. of Sup'rs*,
    672 F.3d 259 (4th Cir. 2012) ............................................................ 19, 20

*Tabor v. Joint Bd. for Enrollment of Actuaries*,
    566 F.2d 705 (D.C. Cir. 1977).....................................................................31

*Terran v. HHS*,
    195 F.3d 1302 (Fed. Cir. 1999) ..................................................................32

*U.S. ex rel. & for Use of Tennessee Val. Authority v. Two Tracts of Land*,
    456 F.2d 264 (6th Cir. 1972) ......................................................................46

*U.S. Telecom Ass'n v. FCC*,
    359 F.3d 554 (D.C. Cir. 2004)........................................................... 29, 31

*United States v. Davison Fuel & Dock Co.*,
    371 F.2d 705 (4th Cir. 1967) ......................................................................45

*United States v. Matherson*,
    367 F. Supp. 779 (E.D.N.Y. 1973)..............................................................31

*United States v. Southwestern Cable Co.*,
    392 U.S. 157 (1968) ....................................................................................49

*United States v. Wise*,
  370 U.S. 405 (1962) ........................................................................49

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*,
  435 U.S. 519 (1978) ........................................................................32

*Vierra v. Rubin*,
  915 F.3d 1372 (9th Cir. 1990) .......................................................55

*W. Va. CWP Fund v. Bender*,
  782 F.3d 129 (4th Cir. 2015) .........................................................48

**Statutes**

5 U.S.C. § 706(2)(A) ..........................................................................14

5 U.S.C. § 553 ....................................................................................37

8 U.S.C. § 1103(a)(1) ..........................................................................3

8 U.S.C. § 1184(c) ....................................................................... 26, 43

8 U.S.C. § 1184(c)(1) ................................................................. *passim*

8 U.S.C. § 1184(c)(14) .......................................................................50

8 U.S.C. § 1184(g)(1)(B) ....................................................................37

8 U.S.C. § 1103 ..................................................................................14

8 U.S.C. § 1103(a)(3) .........................................................................33

8 U.S.C. § 1182(a)(5) .........................................................................38

8 U.S.C. § 1188(a)(1) .........................................................................26

28 U.S.C. § 2401(a) ...........................................................................15

viii

Pub. L. No. 99-603 ................................................................................6

Pub. L. No. 107-296 ...............................................................................5

Pub. L. No. 109-13 ...............................................................................46

Pub. L. No. 112-55 ...............................................................................46

Pub. L. No. 112-74 ...............................................................................46

Pub. L. No. 113-76 ...............................................................................47

Pub. L. No. 113-235 .............................................................................47

Pub. L. No. 114-113 .............................................................................47

Pub. L. No. 115-31 ...............................................................................48

Pub. L. No. 115-141 (2018) ............................................................ 47, 48

Pub. L. No. 115-245 (2019) .................................................................47

Pub. L. No. 116-6 .................................................................................48

## Regulations

8 C.F.R. Part 214 .................................................................................21

8 C.F.R. pts. 204 ...................................................................................7

8 C.F.R. § 214.2(h)(6) ........................................................................1, 4

8 C.F.R. § 214.2(h)(6)(ix) .............................................................. 51, 52

8 C.F.R. § 103.2(b)(1) ..........................................................................52

20 C.F.R. Part 655 ...............................................................................38

20 C.F.R. pts. 655-56 ........................................................................7

20 C.F.R. § 621.3 (1968) ...............................................................19

20 CFR § 655.31 ...........................................................................56

**Other Authorities**

31 Fed. Reg. 4 ...............................................................................43

31 Fed. Reg. 6 ...............................................................................25

33 Fed. Reg. 7 ........................................................................... 6, 43

38 Fed. Reg. 35 .............................................................................18

43 Fed. Reg. 10 ........................................................................ 6, 43

55 Fed. Reg. 2 ........................................................................ 18, 25

73 Fed. Reg. 78 ...........................................................................2, 7

76 Fed. Reg. 3 ................................................................................8

78 Fed. Reg. 24 ..............................................................................9

80 Fed. Reg. 24 ...................................................................... 2, 10

# INTRODUCTION

This appeal concerns challenges to certain rules and regulations governing the H-2B temporary non-agricultural guestworker program ("H-2B program") administered by the Departments of Homeland Security (DHS) and Labor (DOL). The Immigration and Nationality Act (INA) authorizes DHS to admit to the United States foreign workers under the "H-2B" nonimmigrant classification when they have no intention of abandoning their foreign residence and are "coming temporarily to the United States to perform ... [non-agricultural] temporary service or labor if unemployed [U.S.] persons capable of performing such service or labor cannot be found." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). To help DHS determine whether to admit prospective H-2B workers, *i.e.*, whether admitting them would take job opportunities away from "unemployed U.S. persons capable of performing" the proposed work, *id.*, DHS consults DOL about labor-market conditions. *Id.* § 1184(c)(1) (DHS shall determine H-2B petitions "after consultation with appropriate agencies"). Under DHS regulations issued in 2008, an H-2B petition must be accompanied by a labor certification from DOL, which serves as DOL's advice to DHS regarding whether qualified U.S. workers are available and whether employment of H-2B workers would adversely affect similarly-employed U.S. workers. 8 C.F.R. § 214.2(h)(6)(iii).

Appellants—employers and associations—brought suit challenging DHS's 2008 regulations, 8 C.F.R. § 214.2(h)(6), *et seq.*, requiring DOL-issued labor

certifications, 73 Fed. Reg. 78,104, 78,129 (or, "DHS's 2008 Rule"), and the Departments' authority to promulgate two jointly-issued H-2B rules in 2015. The jointly-issued rules include the 2015 Wage Rule, 80 Fed. Reg. 24,146, and 2015 Program Rule, 80 Fed. Reg. 24,042, which contains the 2015 Enforcement Rule, *id.* at 24,084 (collectively, "2015 Rules"). Each of these Rules implements distinct aspects of the H-2B program. DHS's 2008 Rule continues the consultative relationship between DHS and DOL and newly requires favorable DOL-labor-certifications submitted with H-2B petitions. 73 Fed. Reg. at 78,110. The 2015 Rules, in turn, establish the substantive standards governing prevailing wages and the labor-certification application process, and implement DOL's enforcement authority. 80 Fed. Reg. at 24,146, 24,042, 24,045. According to Appellants, whose H-2B petitions were all granted, these Rules are "unworkable." JA503.

The district court granted summary judgment in full for the Government. JA526. It held that Appellants' challenges to DHS's 2008 regulations were time-barred and, alternatively, meritless. JA507-15. The court further held that the 2015 Rules were lawfully issued by both Departments, which had sufficiently identified and explained their authority in the Rules, JA515-21, and that the Departments did not exceed their authority in promulgating the 2015 Enforcement Rule or exercising enforcement powers, JA523-24. This Court should affirm. First, as the district court held, challenges to DHS's 2008 regulatory determination to condition approval of H-2B petitions on DOL-labor-

2

certifications are time-barred under the governing six-year statute of limitations. Second, even if those challenges were not time-barred, the district court properly concluded that DHS had reasonably interpreted its statutory authority to allow it to condition its approval on DOL's certification, which is not an unlawful delegation of authority. Third, the 2015 Rules were lawfully issued by both DHS and DOL. As the district court and other courts have held, even without a *specific* grant of authority by statute, "Congress has not been silent" as to DOL's H-2B legislative rulemaking authority—an exercise of authority that is consistent with statutory objectives—but, instead, has repeatedly ratified DOL's longstanding practice of issuing both H-2B regulations and labor certifications. This defies any notion that DOL lacked authority to issue the 2015 Rules with DHS. JA520. Finally, the district court properly concluded that DOL lawfully exercises the H-2B-enforcement authority delegated to it by DHS, including concomitant rulemaking to support its enforcement efforts, and, thus, the 2015 Enforcement Rule is lawful.

## STATEMENT OF THE CASE

### I.    Statutory and Regulatory Background

Congress broadly charged DHS "with the administration and enforcement" of the INA, 8 U.S.C. § 1103(a)(1), directing DHS to "establish … regulations … and perform such other acts as [it] deems necessary for carrying out [its] authority under the [INA]," *id.* § 1103(a)(3). One of DHS's statutory responsibilities is administration of the H-2B program. The INA confers broad discretion on DHS to

allow "[t]he admission to the United States of any alien as a nonimmigrant … for such time and under such conditions as [DHS] may by regulations prescribe." *Id.* § 1184(a)(1). An H-2B "nonimmigrant," in turn, is "an alien having residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform [non-agricultural] temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." *Id.* § 1101(a)(15)(H)(ii)(b). The statute further provides:

> The question of importing any alien as a nonimmigrant under subparagraph (H)...of section 1101(a)(15)...in any specific case or specific cases shall be determined by [DHS], *after consultation with appropriate agencies of the Government*, upon petition of the importing employer….The petition shall be in *such form and contain such information as [DHS] shall prescribe*.

*Id.* § 1184(c)(1) (emphases added). DHS adjudicates H-2B petitions. By regulation, DHS has long designated DOL as the agency that it "consult[s]" when determining whether to grant petitions and has defined the scope of that consultation. 8 C.F.R. § 214.2(h)(6).

Before petitioning DHS, employers must obtain a labor certification from DOL, which is "advice to [DHS]" on whether (1) U.S. workers "capable of performing the temporary services or labor are available," and (2) "the alien's employment will adversely affect the wages and working conditions of similarly employed [U.S.] workers." *Id.* § 214.2(h)(6)(iii)(A), (C), (iv) ("two-part labor-market test") If, after reviewing employers' job offer and recruitment efforts, DOL

4

determines that U.S. workers are not available and the offered job terms will not adversely affect U.S. workers, DOL issues a temporary labor certification that employers must attach to H-2B petitions submitted to DHS. *Id.* § 214.2(h)(6)(iii)(C), (iv)(A). DHS's regulations consequently envision DOL regulatory procedures establishing how employers obtain labor certifications. *Id.* § 214.2(h)(6)(iii)(D).

## II.     <u>History of the H-2B Program</u>

A single program—the H-2 visa program—formerly encompassed the admission of unskilled foreign workers for both agricultural and non-agricultural jobs, and was administered under regulations and guidance by the Attorney General[1] and Secretary of Labor. Pub. L. No. 82-414, § 101(a)(15)(H)(ii) (1952). Beginning in 1953, as is current practice, DHS's predecessor, Immigration and Naturalization Service (INS)), exercised its statutory authority to "determine[] … [H-2 petitions] after consultation with appropriate agencies" by requesting DOL-certification on whether importing H-2 workers would adversely affect the domestic labor market. *See, e.g.*, 18 Fed. Reg. 4,925 (1953); *Temporary Worker Programs*, 96th Cong., 2d sess., 64 n.84 (1980) ("Responsibility for H-2 advisory certification was specifically vested in the U.S. Labor Department by regulation from 1953 until…1954…and

---

[1] Congress transferred authority to administer the INA from the Attorney General to DHS under the Homeland Security Act of 2002, Pub. L. No. 107-296, Title XV, § 1517.

5

from…1964…until the present….").[2] Since 1968, DOL has structured its consultative advice in the non-agricultural program through formal regulations. 33 Fed. Reg. 7,570-71 (1968); 43 Fed. Reg. 10,311 (1978).

Because Congress concluded that DOL's regulations did not fully meet the need for a manageable *agricultural* program, *see* H.R. Rep. No. 99-682, pt.1, at 80, it amended the statute in 1986 to provide for separate programs for agricultural (H-2A) workers and non-agricultural (H-2B) workers. Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, § 301(a). As noted in the accompanying House Report, "[o]verall, the program has worked reasonably well with respect to *non-agricultural* occupations" and, thus, "[t]he bill makes no changes regarding the non-agricultural H-2 law." H.R. Rep. No. 99-682, pt.1, at 50-51. Congress left untouched the statutory terms and conditions of the H-2B program, retaining the pre-IRCA definition of H-2B workers in section 1101(a)(15)(H)(ii)(b) and its delegation of broad discretion to INS to determine the terms and conditions of admission, provided that it consult with appropriate agencies. IRCA § 301(a). Nor did Congress disrupt DOL's longstanding practice of rulemaking—a practice it specifically recognized. H.R. Rep. No. 99-682, pt.1, at 80-89.

---

[2] Cited legislative materials are attached. Abbreviated citations are provided here.

6

In 2008, DOL and DHS issued companion rulemakings updating their respective H-2B regulations. 73 Fed. Reg. 78,020 (2008) (20 C.F.R. pts. 655-56) (DOL); 73 Fed. Reg. 78,104 (2008) (8 C.F.R. pts. 204, 214, 215) (DHS).

DHS's 2008 Rule acknowledged that DHS lacks requisite labor-market expertise and continued to require DOL-certification on the two-part labor-market test. 73 Fed. Reg. at 78,104, 78,107, 78,110. DHS also determined that DOL-labor-certifications are a necessary pre-condition for DHS's final determination on the H-2B petition and thus required that all petitions be accompanied by a favorable labor certification. *Id.* Although a labor certification is a prerequisite, the statutory authority to grant or deny a petition ultimately rests with DHS. *Id.*

DOL's 2008 Rule, which was the precursor to the 2015 Rules at issue here, contained updated program rules for labor-certification criteria, 73 Fed. Reg. at 78,058, and amended wage rules governing the method for determining prevailing wages and codifying certain wage policies previously provided in informal guidance letters, *id.* at 78,056. DOL's 2008 Rule gave rise to a number of challenges by both employer and worker advocates. Shortly after the Rule took effect, worker advocates challenged certain of its substantive aspects in *CATA v. Solis*, 2010 WL 3431761 (E.D. Pa. Aug. 30, 2010) ("*CATA I*"). *CATA I* upheld aspects of DOL's 2008 Rule, *id.* at *12-14, but invalidated elements of its wage rules in part because they codified without adequate explanation certain policies that had previously been provided in

7

guidance letters issued without requisite notice-and-comment, *id.* at *24.

In response to *CATA I*'s order to issue new legislative rules "in compliance with the Administrative Procedure Act['s]" formal rulemaking requirements, *id.* at *27, DOL promulgated, following notice and comment, a separate wage rule in 2011 revising prevailing-wage methodologies. 76 Fed. Reg. 3,452 ("2011 Wage Rule").[3] DOL separately issued a 2012 Program Rule implementing a broader range of revisions to the labor-certification process, many of which were prompted by *CATA I*. 77 Fed. Reg. 10,038 ("2012 Program Rule").

Thereafter, two different employer groups, which preferred the 2008 DOL Rule that worker advocates had successfully challenged in *CATA*, challenged DOL's 2011 Wage Rule and 2012 Program Rule. In *Bayou Lawn & Landscape Servs. v. Solis*, the Eleventh Circuit affirmed the Northern District of Florida's preliminary injunction, finding that employers were likely to succeed on the merits of their claim that DOL lacked authority to engage in rulemaking "even without the DHS." 713 F.3d 1080, 1084 (11th Cir. 2013). On remand, the district court held that DOL lacked independent rulemaking authority and vacated DOL's 2012 Program Rule. *Bayou v.*

---

[3] DOL was never able to implement its 2011 Wage Rule because Congress withheld appropriations to fund the Rule, directing DOL to continue using its 2008 Rule, which it did. *See infra* p. 47. Eventually, the *CATA* court vacated and enjoined further use of DOL's 2008 Rule. *CATA v. Solis*, 933 F. Supp. 2d 700, 716 (E.D. Pa. 2013) ("*CATA II*").

*Perez*, 81 F. Supp. 3d 1291, 1300 (N.D. Fla. 2014) ("*Bayou II*").[4] Meanwhile, the second group of employers, including Appellant Outdoor Amusement, failed to prevail on an identical theory against DOL's 2011 Wage Rule in *Louisiana Forestry Association v. Solis*, 889 F. Supp. 2d 711 (E.D. Pa. 2012) ("*LFA*"). There, the court held that while the statute does not expressly state that DOL may issue rules, the statutory scheme, DOL's history of issuing H-2 legislative rules, and Congress's acquiescence demonstrate Congress's intent to grant rulemaking authority with respect to DOL's consultative role under 8 U.S.C. § 1184(c). *Id.* at 727-30. The Third Circuit affirmed in full, concluding both that DHS's 2008 labor-certification requirement is lawful and DOL has rulemaking authority, rejecting the Eleventh Circuit's conclusion. *LFA v. DOL*, 745 F.3d 653, 669, 675 n.17 (3d Cir. 2014).

In response to *CATA II*'s vacatur of the wage rules in DOL's 2008 Rule and *Bayou*'s holding that DOL lacked independent rulemaking authority, DHS and DOL jointly promulgated an interim final wage rule in 2013. 78 Fed. Reg. 24,047 ("2013 Wage IFR"). The 2013 Wage IFR amended DOL's prior wage rules. Litigation challenging DOL's prior rules continued, however. *CATA v. Perez*, 774 F.3d 173 (3d Cir. 2014) ("*CATA III*") (vacating wage provisions of DOL's 2008 Rule, which were amended by 2013 Wage Joint IFR). The same court that vacated DOL's 2012

---

[4] By the time *Bayou* was back before the Eleventh Circuit, DOL and DHS had jointly issued the 2015 Rules at issue here, mooting challenges to DOL's Rules, and the court vacated the district court's order. 621 F. App'x 620 (11th Cir. 2015).

Program Rule then vacated DOL's 2008 Rule in *Perez v. Perez*, 2015 U.S. Dist. LEXIS 27606 (N.D. Fla. Mar. 4, 2015), which created a regulatory void and brought the H-2B program to a standstill.

Given a second impending shutdown of the program, DHS and DOL jointly issued the 2015 Rules at issue here. 80 Fed. Reg. 24,042, 24,084, 24,146. The 2015 Program Rule is virtually identical to DOL's 2012 Program Rule, and the 2015 Wage Rule finalizes the 2013 Wage IFR. The Departments proceeded jointly given challenges to "DOL's authority to issue its own legislative rules." *Id.* at 24,045. The 2015 Rules collectively establish "the process by which employers obtain a temporary labor certification from DOL for use in petitioning DHS," 80 Fed. Reg. at 24,042, "the methodology by which DOL calculates the prevailing wages," and "set forth enforcement procedures and remedies pursuant to DHS's delegation of enforcement authority to DOL." *Id.* at 24,146. These Rules were intended to bring certainty, stability, and continuity to the program after nearly a decade of uncertainty brought on by litigation.

## III.    <u>This Lawsuit</u>

Appellants brought suit on April 5, 2016, challenging the 2015 Rules and DHS's 2008 Rule, discussed above. Before this suit, the 2015 Rules were the subject of several challenges by worker and employer advocates, all of which were rejected: *Bayou v. Johnson*, 173 F. Supp. 3d 1271 (N.D. Fla. 2016) ("*Bayou III*), *Alpha K9*

10

*Pet Servs. v. Johnson*, 171 F. Supp. 3d 568 (S.D. Tex. 2016), and *CATA v. Perez*, 148 F. Supp. 3d 36 (D.N.J. 2015) ("*CATA IV*"). Even so, and despite being granted labor certifications and H-2B petitions, JA503-04, Appellants challenge the Departments' authority to issue the 2008 and 2015 Rules. JA27.

The district court granted summary judgment for the Government on all counts. It held that Appellants' 2016 facial challenges to DHS's 2008 regulations are time-barred, rejecting Appellants' "attempt to forestall this conclusion" by invoking the "reopening doctrine,"—"a theory derived from D.C. Circuit case law." JA507-08. "Even assuming, *arguendo*, that the Fourth Circuit would recognize the reopening doctrine," the court concluded "it does not apply here" because the 2015 Rules do "not reconsider" DHS's 2008 regulations: neither their "mere citation to C.F.R. Part 214" nor their request for "general comments on every aspect" of the Rules constitutes "*serious*, *substantive reconsideration*" of DHS's 2008 Rule. JA509-11 (emphasis in original). The court also rejected Appellants' theory that DHS "constructively reopened" its 2008 Rule by changing the regulatory context in ways that could not have been anticipated, causing onus to Appellants' interests, which fell "short of the type of 'sea change' required to trigger a 'constructive reopening,' assuming that doctrine applies in this Circuit. JA511 (citation omitted). Alternatively, the court held that even if these challenges were not time-barred, they still do not survive because DHS's 2008 regulatory requirements "follow from a

11

reasonable interpretation of DHS's statutory authority." JA512-15. Rejecting an "unpublished Tenth Circuit decision [*G.H. Daniels III & Assocs., Inc. v. Perez*, 626 F. App'x 205 (10th Cir. 2015)] that found an impermissible delegation of DHS's authority" the court agreed with the Third Circuit's contrary ruling "that DHS had reasonably interpreted the consultation provision of 8 U.S.C. § 1184(c)(1) to allow it to '*condition*[] its own granting of an H-2B visa petition on the DOL's grant of a temporary labor certification.'" JA513 (quoting *LFA*, 745 F.3d at 673 (emphasis in original)). According to the court, DHS's "use of the DOL's labor certification as a condition precedent" is supported by DOL's longstanding H-2B role, DOL's labor expertise, and "[a] plain reading of [section 1101(a)(15)(H)(ii)(b)]." JA514-15.

Additionally, the court held that the 2015 Rules, including the Enforcement Rule, were lawfully issued by both Departments, which had sufficiently explained their authority to issue the Rules in compliance with the APA. JA515-21. It concluded that DOL's exercise of rulemaking authority "is consistent with Congress's intent," even in the absence of "explicit congressional authorization," in light of statutory purposes, DOL's longstanding history of rulemaking, and Congress's ratification of DOL's H-2B role. JA515-21. The court also held that the 2015 Enforcement Rule was lawfully issued because "[g]iven that Congress clearly anticipated that DOL would be delegated some enforcement authority, it seems

12

likely that Congress also anticipated that DOL might need to engage in limited rulemaking to support its enforcement efforts." JA523-24.

## SUMMARY OF THE ARGUMENT

The district court correctly granted summary judgment for the Government. First, Appellants' challenges to DHS's 2008 regulations, including to DOL's role in the H-2B program and the labor-certification requirement, are time-barred. But even if they were not, DHS's requirement that an employer first obtain a DOL-labor-certification before petitioning DHS for H-2B classification is a reasonable interpretation of the statute, which provides that the question of importing any H-2B worker shall be determined by DHS after consultation with appropriate agencies. Because requiring a DOL-issued labor certification constitutes a reasonable precondition to DHS's determination whether admitting H-2B workers would displace U.S. workers, the Court need not decide whether DHS's regulations effect a delegation of authority, as Appellants suggest.

The district court also properly rejected Appellants' challenges to the 2015 Rules. DHS resolves requisite factual questions whether there are capable and available U.S. workers and whether admitting H-2B workers would adversely affect U.S. workers by consulting DOL. The 2015 Joint Rules create the substantive standards by which DOL makes these labor-market determinations. The statutory scheme authorizes DOL to rely on legislative rules, as it has for decades, to resolve

issues of general applicability and to structure its fact-finding and related advice to DHS. The Departments' choice to proceed jointly in issuing the rules was reasonable in light of conflicting judicial orders as to whether DOL had authority to unilaterally issue rules. Finally, the INA authorizes DHS to delegate its H-2B enforcement authority, and concomitant rulemaking authority, to DOL, which has not exceeded that authority. This Court should affirm.

## STANDARD OF REVIEW

Under the APA, the Court may hold agency action unlawful only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Review under this standard is "highly deferential," *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012), and legislative rules are "presumptively valid and [must] be sustained so long as [they are] reasonably related to the purposes of the enabling legislation." *Harman Min. Co. v. DOL*, 826 F.2d 1388, 1390 (4th Cir. 1987). Additionally, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), mandates that an agency's construction of a statute it administers should be followed absent compelling indications it is wrong. Finally, Appellants carry a "heavy burden … to demonstrate the invalidity of a regulation promulgated under a statute providing a broad grant of rulemaking authority," such as 8 U.S.C. §§ 1103 and 1184. *Harman*, 826 F.2d at 1390.

# ARGUMENT

## I.   The District Court Correctly Rejected Appellants' Challenges to DHS's 2008 Rule.

### A.   Appellants' Challenges Are Time-Barred.

A six-year statute of limitations applies to claims against DHS's 2008 Rule. 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999). Thus, as the district court held, "[d]espite plaintiffs' vague protests to the contrary," because challenges to the "issuance" of the 2008 Rule (and 2015 Rules), JA50-52, 63-67, "clearly represent a facial, rather than an as-applied, challenge," Appellants' case against DHS's 2008 Rule, including its labor-certification requirement, is time-barred. JA507. This was the correct result. Appellants do not seek any relief related to individual labor-certification applications or H-2B petitions (all of which were granted), but instead seek to enjoin operation of the 2008 Rule nationwide. JA39-42, 45, 49, 68.[5] Accordingly, "the limitations

---

[5] Even if Appellants' challenges to the 2008 Rule were not time-barred, Appellants also failed to identify any injury from DHS's 2008 Rule and thus lack standing to challenge it. A plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought," *Davis v. FEC*, 554 U.S. 724, 734 (2008), including an injury traceable to the challenged action. *Id.* at 733. But Appellants' purported injuries were *expressly* alleged to stem from the *2015 Program and Wage Rules*. JA91-110 (affidavits identifying alleged injuries from the 2015 Rules, but not DHS's 2008 Rule).

period begins to run when the agency publishes the regulation." *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012).

DHS's labor-certification requirement was published through notice-and-comment rulemaking on December 19, 2008. 73 Fed. Reg. at 78,104. Appellants' ability to challenge those regulations thus lapsed in 2014. They did not file suit until April 2016. So, as the district court held, JA511, Appellants' case against the 2008 regulations is plainly time-barred.

Appellants make several arguments for why their suit is not time-barred, relying solely on the D.C. Circuit's "reopener" doctrine, App.Br.43-47, which applies when an agency undertakes a serious, substantive reconsideration of the [existing] rule." *P&V Enters. v. Arm Corps. of Eng'rs*, 516 F.3d 1021, 1024 (D.C. Cir. 2008).

To start, this Circuit has not adopted the reopener doctrine—and Appellants provide no good reason why it should do so. Regardless, that doctrine would not help Appellants because the 2015 Rules did not reopen DHS's 2008 labor-certification regulations. As the district court held, JA507-11, the 2015 Rules had no effect on the date Appellants' claims against the 2008 Rule—which all relate to the labor-certification requirement itself and DHS's authority to structure its consultation with DOL—accrued. Appellants identified the following requirements in DHS's 2008 regulations as "pertinent" to their challenges: (1) employers must

"[a]pply to DOL for a labor certification"; (2) they must "[o]btain an 'approved' or 'favorable' DOL labor certification"; and (3) employers must then "[s]ubmit an 'approved' or 'favorable' DOL labor certification with the employer's H-2B petition to DHS." JA41. None of these obligations changed or were reconsidered in the 2015 Rules, which separately set forth the specific requirements and standards by which DOL issues certifications. 80 Fed. Reg. at 24,045. Appellants' challenges to regulations published in 2008—when DHS "completed its decisionmaking process" to make labor certifications mandatory—cannot evade this Court's ruling in *Hire Order*, 698 F.3d at 170.

Appellants nonetheless make several arguments for why the 2015 Rules reopened DHS's 2008 Rule. None has merit.

*First*, Appellants argue that the 2015 Rules "fundamentally altered the obligations under the program," App.Br.46-47. As the district court held, however, the 2015 Rules and 2008 Rule implemented distinct objectives. JA510. And Appellants fail to adequately explain the alleged changes they vaguely claim occurred or how they modified DHS's 2008 regulations. A party waives an argument by failing to "'develop [its] argument'—even if [its] brief takes a passing shot at the issue." *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (citation omitted). In any event, contrary to Appellants' suggestion (App.Br.47), DHS has long required DOL-labor-certifications "attached to each visa petition," 38 Fed. Reg. 35,425

17

(1973); 55 Fed. Reg. 2,621 (1990), and it was DHS's *2008* Rule, not the 2015 Rules, that specifically required *favorable* certifications be attached to petitions. 73 Fed. Reg. at 78,129. The 2015 Rules did not modify this requirement. Moreover, Appellants' suit does not actually challenge the *substantive* "obligations" that they ambiguously identify, App.Br.47. Finally, to the extent the 2015 Rules amended any rule, it was to prior, now inactive *DOL* rules governing its "determin[ation] of whether … to grant a temporary employment certification" and the "process by which employers obtain a temporary labor certification and the protections that apply to H-2B workers and corresponding [U.S.] workers." 80 Fed. Reg. at 24,043-45, 24,049 (2015 Rule, which is "virtually identical" to DOL's 2012 rule, "immediately replaces [DOL's] 2008 rule"); *see Hispanic Affairs Project v. Acosta*, 263 F. Supp. 3d 160 (D.D.C. 2017) (finding similar challenges to H-2A regulations time-barred because "the relevant provisions of the DHS H-2A regulations were last revised in 2008"). Accordingly, to the extent the D.C. Circuit's "reopener rule" controls, the 2015 Rules did not enact "a substantive change [to DHS's 2008 Rule] that restarted the statute of limitations clock." *Mendoza v. Perez*, 754 F.3d 1002, 1018-19 (D.C. Cir. 2014).

*Second*, Appellants assert that DHS "reconsidered its 2008 rule" in the 2013 Wage IFR, where Appellants claim that "DHS mandated that DOL issue H-2B rules and adjudicate prevailing wages." App.Br.45. This argument is flawed for a number

18

of reasons. First, Appellants have waived any claims relating to the 2013 Wage IFR, which they did not challenge below, *see* JA27 (Compl.), JA114 (MSJ). *See T-Mobile Ne. v. Fairfax Cty. Bd. of Sup'rs*, 672 F.3d 259, 272 (4th Cir. 2012). Second, the 2013 regulatory reference to DOL's *regulations*—not *specifically* referenced in DHS's prior regulations requesting DOL "procedures"—and DOL's adjudication of prevailing wages did not modify DHS's 2008 labor-certification requirement—the target of Appellants' belated suit. In any event, DHS, and INS before it, have required, well before 2013, that DOL "establish procedures" for issuing labor certifications—which DOL did by *regulation* in 20 C.F.R. § 621.3 (1968). 55 Fed. Reg. at 2,618, 2,627 (1990) ("petitioners may not file an H-2B petition *unless* [they] have applied for a labor certification….[Thus,] Secretary of Labor...shall…*establish procedures* for administering" certifications) (emphasis added). Similarly, INS/DHS has long required DOL to determine prevailing wages. *Id.* ("[INS] seeks advice…from…Labor on…prevailing wages…."). And Appellants have not actually challenged DHS's request for DOL-adjudication of prevailing wages, App.Br.45, as part of their challenges to DHS's 2008 regulations, rendering claims that the 2013 Wage IFR reopened DHS's regulations irrelevant.

*Third*, Appellants argue that the 2015 Rules' removal of the "countervailing-evidence" provision reopened DHS's 2008 Rule. App.Br.45. But it was DHS's 2008 Rule that ended the practice of accepting countervailing evidence, not the 2015

19

Rules. 73 Fed. Reg. at 78,103-07 ("Precluding DHS from approving H-2B petitions filed without an approved temporary labor certification."). "Due to a drafting oversight, when enacting the [2008 regulations eliminating countervailing evidence regulations], DHS inadvertently left untouched" one of several countervailing evidence provisions in 8 C.F.R. itself, "which should have been deleted." 80 Fed. Reg. at 24,050. Deletion of this provision in the code itself was merely "a housekeeping matter," *id.*, that did not "actually reconsider" DHS's 2008 decision, *cf.* App.Br.44-45.

*Fourth*, Appellants contend that DHS's 2008 Rule was reopened when the 2015 Rule "requested public comment on *all* issues," and comments were allegedly made questioning the legitimacy of prior *DOL* rules. App.Br.45 (emphasis in original). The district court flatly rejected this argument. JA511. "[A]n agency [does not] reopen an issue by responding to a comment that addresses a settled aspect of some matter, even if the agency had solicited comments on unsettled aspects of the same matter." *Biggerstaff v. FCC*, 511 F.3d 178, 186 (D.C. Cir. 2007). And "the 'reopening rule' is not a license for bootstrap procedures by which petitioners can comment on matters other than those actually at issue, goad an agency into a reply, and then sue on the grounds that the agency had re-opened the issue." *Nat'l Ass'n of Mfrs. v. Dep't of Interior*, 134 F.3d 1095, 1103 (D.C. Cir. 1998). Regardless, as Appellants acknowledge, App.Br.45, the 2015 Rule did not request comments on

20

DHS's Rule, including its labor-certification requirement, but only on the 2015 Rule itself. 80 Fed. Reg. at 24,050.

*Fifth*, as the district court held, Appellants are wrong that the 2015 Rules' mere *citation* to "8 C.F.R. Part 214" as relevant authority reopens the 2008 Rule, App.Br.45. JA510. Citing DHS's regulations as authority "does not alter the status quo" and is thus far from the "substantive change" necessary to restart the limitations period. *Mendoza*, 754 F.3d at 1018-19. *Finally*, Appellants' assertion that, without the 2015 Rules, "the 2008 DHS Rule not only cannot 'function sensibly,'…but it cannot function at all," App.Br.47 (citing *Mendoza*, 754 F.3d at 1020),[6] defies the reality that for the seven years prior to the 2015 Rules, DHS's 2008 Rule applied in full force. The district court rightly rejected this "constructive reopening" theory as "fall[ing] short of the type of 'sea change' required to trigger a 'constructive reopening.'" JA511.

## B. Appellants' Challenges Are, in Any Event, Meritless.

Even if Appellants' challenges were timely, DHS's 2008 labor-certification regulations are a reasonable interpretation of its authority and are owed substantial deference. As the district court correctly held (JA512-15), pursuant to Congress's directive that it consult with appropriate agencies on the question of admitting H-2B

---

[6] This is in stark contrast to the 2011 H-2A guidance in *Mendoza*, which "rescind[ed] and replace[d] procedures" contained in a 2001 memo and "substantively altered the 2001 policies…thus sparking a new period for review." 754 F.3d at 1019.

workers, 8 U.S.C. § 1184(c)(1), DHS has lawfully conditioned its granting of H-2B petitions on the advice of DOL—the federal agency with institutional labor-market expertise and a long-standing role in the program. *Fla. Sugar Cane League, Inc. v. Usery*, 531 F.2d 299, 301-03 (5th Cir. 1976) ("Labor…is responsible for whatever fact-finding and evaluation are necessary to effectuate the statutory purpose of protecting domestic workers' right to work."). The fact that a negative conclusion by DOL in its fact-finding and advice-giving role precludes an employer from petitioning DHS for H-2B classification does not transform this reasonable precondition into an unlawful delegation.

To start, contrary to Appellants' arguments otherwise, App.Br.14, because DHS has congressionally-delegated authority "generally to make rules carrying the force of law," and its 2008 regulations were "promulgated in the exercise of that authority,'" *Gonzales v. Oregon*, 546 U.S. 243, 244 (2006), "*Chevron* and its progeny provide the applicable standard of review." *LFA*, 745 F.3d at 670. Under *Chevron*, if "Congress has directly spoken to the precise question at issue" and "the intent of Congress is clear, that is the end of the matter" and courts must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If the agency's interpretation, including of its

own jurisdiction or authority, *City of Arlington v. FCC,* 569 U.S. 290, 296-97 (2013), "reflects a *plausible* construction of the plain language of the statue and does not otherwise conflict with Congress's *expressed* intent" it "may not be disturbed." *Rust v. Sullivan*, 500 U.S. 173, 184 (1991) (emphasis added). This approach is based on the understanding that "where a statute leaves a gap or is ambiguous," Congress intended to grant "the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute." *Cuozzo Speed Tech., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016).

Here, DHS has broad authority to administer the H-2B program, including the authority to prescribe the form and content of petitions and the conditions and procedures for admitting workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b), 1184(a), 1184(c). The statute specifically contemplates that DHS's procedures will involve "consultation with appropriate agencies" to determine whether to grant H-2B petitions. *Id.* § 1184(c)(1). However, the statute does not specify the scope of DHS's consultation or which agencies are "appropriate" to consult. Exercising its authority to determine the form and content required of H-2B petitions and conditions and procedures for participating in the program, DHS determined by regulation that (1) DOL is the "appropriate agenc[y]" with which to consult; (2) the scope and nature of its consultation shall take the form of DOL-labor-certifications certifying to DHS that the labor-market test, required by statute before *any* petition is granted,

23

is satisfied; and (3) procedures governing labor certifications are necessary. 73 Fed. Reg. at 78,107, 78,110 (2008); 55 Fed. Reg. at 2,627 (1990); 8 C.F.R. § 214.2(h)(6)(iii). As explained below, the "text, nature, and purpose of the statute" authorize DHS's determinations. *Lee*, 136 S. Ct. at 2142.

The INA directs DHS to make H-2B petition determinations, including whether "unemployed persons capable of performing such service or labor cannot be found in this country," 8 U.S.C. § 1101(a)(15)(H)(ii)(b), "after consultation with appropriate agencies." *Id.* § 1184(c)(1). The statutory phrase "after consultation with appropriate agencies" epitomizes a congressional delegation of gap-filling authority.[7] *LFA*, 745 F.3d at 670-71; *Recreation Vehicle Indus. Ass'n v. EPA*, 653 F.2d 562, 569 n.53 (D.C. Cir. 1981) (Act requiring EPA to "consult with appropriate federal agencies" "clearly" left matter to EPA's "informed discretion"). The INA contemplates some consultation with sister agencies but leaves the specifics of that consultation unstated. Thus, Congress has not "directly spoken to the precise question at issue," namely, *what agencies* DHS can or should consult, and *how.*

---

[7] In rejecting "statutory silence [as] an implicit ban on inter-agency consultation," then-Judge Kavanaugh explained that "restricting such consultation and coordination would raise significant constitutional concerns" because "[u]nder Article II of the Constitution, departments and agencies in the Executive Branch are subordinate to one President and may consult and coordinate *to implement the laws passed by Congress.*" *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 249 (D.C. Cir. 2014) (emphasis added). Indeed, "[s]ingle mission agencies do not always have the answers to complex regulatory problems." *Id.*

Congress's declination to define "or otherwise attend to the precise question" of "consultation" and "appropriate agencies," *Mayo Found. v. United States,* 562 U.S. 44, 53-54 (2011), therefore renders the statute ambiguous and section 1184 represents "an express delegation of authority to [DHS] to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843-44. Faced with this statutory gap, DHS exercised its authority to adopt regulations requiring DOL-labor-certifications and procedures governing them. 8 C.F.R. §§ 214.2(h)(6)(iii), (iv).

It was reasonable for DHS to do so because, as the district court held, DOL is uniquely qualified to determine potential effects of H-2B workers' employment on U.S. workers and has been charged for decades with issuing labor certifications and accompanying procedures. JA512-15. DHS and its predecessors have long recognized DOL's expertise in evaluating labor markets. 31 Fed. Reg. 6,611 (1966); 55 Fed. Reg. 2,606, 2,617 (1990). Simply put, and by its own admission, "DHS ... does not have the expertise needed to make any labor market determinations, independent of those already made by DOL." 73 Fed. Reg. at 78,110. This rationale is consistent with the statutory authorization for "consultation with appropriate agencies," 8 U.S.C. § 1184(c). If Congress believed the Attorney General (now DHS) should or could effectively administer the program "alone," App.Br.3, 17-18, 23, 50, then inclusion of the "consultation" language would have been unnecessary. *Cf.* App.Br.17-18 (discussing, but not applying to this case, a "unitary-agency

25

model" and "exclusive jurisdiction" doctrine). And who better to consult on labor concerns than the Labor Department? It is reasonable to expect DHS—not Congress or courts—to best understand its own limitations and thus, the scope of consultation necessary to adequately administer the program. *See Johnson v. Whitehead*, 647 F.3d 120, 128 (4th Cir. 2001).

Furthermore, Congress clearly approves of the use of labor certifications in employment-based immigration programs: in both the temporary H-2A and permanent (green card) visa programs, Congress requires DOL to make substantially similar determinations before DHS may approve a petition. 8 U.S.C. §§ 1188(a)(1), 1182(a)(5)(A). That DHS, in filling the statutory gaps left by Congress, has chosen to conform the nature and scope of its consultation with DOL in the H-2B program to that in other, similar contexts promotes consistent and coherent administration of the statute and lends weight to the reasonableness of DHS's interpretation.[8] *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000).

Appellants offer mostly undeveloped arguments against DHS's labor-certification requirement. App.Br.21-28. None has merit.

---

[8] Appellants' attempt to employ the *expressio unius* maxim in arguing the opposite, App.Br.25-26, is unavailing and was rejected by the district court, JA517-18. *Cheney R. Co. v. ICC*, 902 F.2d 66, 68-69 (D.C. Cir. 1990). "[T]he contrast between Congress's mandate in one context with its silence in another suggests not a prohibition but simply a decision not to mandate any solution in the second context, *i.e.*, to leave the question to agency discretion." *Id.* This "can rarely if ever be the 'direct[ ]' congressional answer required by *Chevron*." *Id.*

*First*, Appellants suggest that section 1184(c) clearly precludes DHS's interpretation of how it may *consult* by mandating that DHS "determine" petitions. App.Br.22-25. Not so. The statute requires only that DHS "determine" the "question of importing any alien" "in any specific case or specific cases," "after consultation with appropriate agencies," "upon petition." 8 U.S.C. § 1184(c)(1). DHS does this. Upon receipt of DOL's certification, DHS determines, *inter alia*, eligibility for H-2B classification, that the job opportunity in the petition is of a temporary nature, that beneficiary aliens meet the educational, training, experience, or other requirements for the job opportunity, that H-2B visas are available, and that the petition is submitted consistent with strict requirements ensuring the integrity of the H-2B program. 80 Fed. Reg. at 24,044. DHS has reasonably determined that in order to establish threshold H-2B eligibility under section 1101(a)(15)(H)(ii)(b), an employer must also obtain certification from DOL that statutory labor-market conditions are satisfied, which in turn, fulfills the express statutory objective that DHS consult with other agencies. *Id.* Because section 1101(a)(15)(H)(ii)(b)'s criteria are threshold matters for further DHS action, requiring a labor certification as a condition-precedent to DHS consideration is directly supported by section 1184(c)(1)'s directive that DHS determine admission of H-2B workers "after consultation." It is "ultimately within DHS's discretion to grant or deny H-2B visa

27

petitions after assessing whether [these and other] requirements have been satisfied." *LFA*, 745 F.3d at 672.

*Second*, Appellants contend that DHS made DOL a "co-determiner of H-2B petitions," unlawfully "redelegat[ing] DHS's statutorily-assigned jurisdiction." App.Br.5. But DHS has not unlawfully delegated its statutory authority and DOL does not determine petitions. As the D.C. Circuit recognizes—and both the Third Circuit and district court concluded specifically on this claim against DHS—where Congress confers "broad discretion to permit or forbid certain activities," DHS's discretion may lawfully entail "condition[ing] its grant of permission on the decision of another entity ... so long as there is a reasonable connection" between DOL's decision and DHS's determination. *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 567 (D.C. Cir. 2004) (collecting cases); *LFA*, 745 F.3d at 671-75; JA27-28. Congress conferred broad discretion on DHS to issue rules governing the admission of H-2B workers. DHS has elected, under its statutory prerogative to consult with other agencies, to "condition its grant of permission" to admit H-2B workers on DOL's labor certification. *U.S. Telecomm*, 359 F.3d at 567. DOL's labor certification is "reasonabl[y] connected" to DHS's determination whether H-2B workers would displace available and capable U.S. workers and ultimately whether to admit H-2B workers. *Id.* This is especially so because section 1101(a)(15)(H)(ii)(b) requires satisfaction of certain labor market criteria before DHS admits workers, DHS has

clear authority under sections 1184(a) and (c) to prescribe conditions for their admission, and the statute is silent on the scope of permissible consultation.

The Third Circuit agrees. Applying the D.C. and Second Circuits' analyses in similar cases to identical challenges by Appellants to the 2008 labor-certification requirement, the Third Circuit concluded that DHS's labor-certification requirement is a "reasonable condition for granting federal approval." *LFA*, 745 F.3d at 671-75 (citing *U.S. Telecomm*, 359 F.3d at 567; *Fund for Animals v. Kempthorne*, 538 F.3d 124 (2d Cir. 2008)). Because "DHS was exercising its broad authority to 'determine' the specific 'question of importing any alien'" it "did not impermissibly subdelegate all of its authority" to DOL.[9] *Id.* at 672-73 (noting that the authority delegated by Congress to DHS "bears little resemblance to the far narrower band of discretion afforded to" DOL).[10]

---

[9] But even if it were a delegation, the INA explicitly provides that DHS may delegate aspects of the H-2B decisionmaking process to sister agencies. 8 U.S.C. § 1103(a)(6). While the district court expressed skepticism about DHS's authority to delegate *rulemaking* authority, it said nothing about DHS's authority to delegate labor-market decisionmaking to DOL, and ultimately declined to rule on section 1103(a)(6)'s scope. And the Tenth Circuit in *Daniels* did not have the benefit of full briefing on the issue of DHS's delegation authority under section 1103(a)(6), declining to rule on it on rehearing. 626 F. App'x at 212 n.10.

[10] Appellants' attempt to apply "non-delegation" principles—which limit *Congress* from delegating authority without laying down an "intelligible principle" constraining agencies' discretion—to this case is unavailing. App.Br.15-16. Section 1184(c)(1)'s reference to section 1101(a)(15)(H)(ii)(b) (nonimmigrants may only be admitted "if unemployed persons capable of performing [the relevant] service or labor cannot be found in this country") sufficiently informs, and limits, the subject of the Departments' discretionary consultation.

The Third Circuit is not the minority view. Courts, including this one, have upheld similar instances of a federal agency conditioning its decision on that of outside, *non-federal* parties. *See, e.g.*, *Kempthorne*, 538 F.3d at 132-33 (upholding decision by Interior Secretary to "grant [] permission conditioned on the decision of another entity"); *Perot v. FEC*, 97 F.3d 553, 559-60 (D.C. Cir. 1996); *S. Pac. Transp. Co. v. Watt*, 700 F.2d 550 (9th Cir. 1983) (upholding Interior Secretary's non-statutorily-based preconditions to granting rights-of-ways on approval of tribal officials where "regulation does not relinquish to a tribe the final authority to approve; it delegates a power to disapprove"); *Gauley Mountain Coal Co. v. Director of U.S.B. of Mines*, 224 F.2d 887, 890 (4th Cir. 1955) (no delegation where agency read statute as permitting it to require a state to classify a mine as a condition precedent to federal regulation); *United States v. Matherson*, 367 F. Supp. 779, 781-83 (E.D.N.Y. 1973), *aff'd*, 493 F.2d 1339 (2d Cir. 1974) (upholding agency's rule requiring persons seeking to operate motor vehicles on federal lands to first secure a permit from municipality).

Notably, policy concerns about delegations to "outside parties" beyond Executive control have less force where an agency conditions approval on the decision of a sister agency within the same Executive Branch, as DHS did. *McCarthy*, 758 F.3d at 248-49. In such situations, risk of "policy drift" or a loss of a "democratic check," on the Executive is absent because both agencies answer to

30

the same President. *U.S. Telecom*, 359 F.3d at 555-56. Thus, as the Third Circuit held, where an agency conditions its grant of permission on an assessment by a reasonably designated federal sister agency with legitimate expertise on narrow issues, like DOL here, the consultee-agency's action may properly result in denial of permission at that initial stage because the applicant has failed to satisfy the conditions ascribed to the consultee's expertise. *LFA*, 745 F.3d at 672-73; *see also S. Pac. Transp. Co.*, 700 F.2d at 553-56; *Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705, 708 n.5 (D.C. Cir. 1977); *Matherson*, 367 F. Supp. at 782-83. Effective administration of the H-2B statute requires that DHS first know whether U.S. workers are available and whether employment of H-2B workers will adversely affect U.S. workers. If the answer to either of those questions is yes, based on evidence submitted to DOL with a labor-certification application, the petitioner is disqualified from hiring H-2B workers, and it would be pointless for DHS to consider whether issuance of H-2B visas is warranted. This is a reasonable construction of the statute. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524-25 (1978).

Appellants ignore this established body of law, citing only *Daniels*, 626 F. App'x at 215. App.Br.5, 23. But Appellants, and *Daniels*—an unpublished, out-of-circuit decision that the court specifically designated as "non-binding" and whose reasoning the district court specifically rejected here, JA 512-15—wrongly assume

31

that "consultation" cannot entail conditioning petition-approval, in part, on DOL's determinations. Both in the 1950s, when Congress enacted the INA, and the 1980s, when it created the modern H-2B program, "consult" meant to ask for advice or seek counsel. *See* Shorter Oxford English Dictionary 379 (3d ed. rev. 1955); Random House Dictionary of the English Language 437 (2d ed. 1987). Nothing in these definitions requires that "consultation" entail sometimes rejecting the given advice. The fact that DHS invariably takes DOL's advice does not make their relationship any less of a "consultation." *Terran v. HHS*, 195 F.3d 1302, 1314-15 (Fed. Cir. 1999) (by requiring consultation, "Congress clearly intended the [agency] to be guided by the findings" of the consultant). It simply reflects the reality, recognized by DHS, that DOL knows best when it comes to labor-market issues and has unparalleled expertise in the field.

Moreover, *Daniels* failed to recognize that DHS still exercises its final decisionmaking authority when it determined *prospectively*, through rules of general applicability, that any H-2B petitioner must obtain a labor certification. While Congress directed DHS to "determine" the question of importing workers on a case-by-case basis "after consultation" with DOL, which it does, Congress also gave DHS the discretion to "prescribe by regulation" the "form" of petitions and the "information" they must contain. 8 U.S.C. §§ 1103(a)(3), 1184; *see LFA*, 745 F.3d at 672-73. Nothing requires DHS to consult DOL on an *ad hoc* basis. *See Lopez v. Davis*, 531 U.S. 230,

32

243-44 (2001) (validating categorical decisions made by regulation, even with statutory schemes requiring individualized determinations). Rather, pursuant to its authority to issue regulations administering the program and consult with appropriate agencies, in 2008, DHS established the nature and substance of its consultation and then, in 2015, issued rules jointly with DOL to establish the substantive requirements for DOL to carry out that consultation. This is not an "abdication" of DHS's authority, App.Br.55, but reflects DHS's complete and undivided involvement throughout the process.

*Finally*, in an attempt to undercut DHS's reliance on DOL's fact-finding, Appellants argue that DHS improperly declines to exercise "jurisdiction," App.Br.9, and "its policymaking function," App.Br.27. But DHS has not declined to exercise powers conferred upon it; instead, it has exercised those powers to specify the conditions under which a petition will be granted. As noted, the fact that DHS has prospectively determined that petitioners must take certain interstitial steps in seeking an H-2B visa and deems the failure to satisfy such conditions as outcome determinative does not mean that it "is no longer 'determining'" petitions or improperly contracting out its jurisdiction, *id. Accord EEOC v. Seafarers*, 394 F.3d 197, 201-02 (4th Cir. 2005) (*Chevron* applies to EEOC's interpretation of its jurisdiction under similar rulemaking-authority provision). Moreover, Appellants' narrow reading of "determine" in section 1184(c)(1) cannot be squared with the

equal application of the language in that provision to H-2A. Congress plainly does not believe that DHS neglects its responsibility to "determine" H-2A petitions simply because it accepts as final (indeed at Congress's direction) DOL's predicate labor determinations per its "consultation" with DOL. 8 U.S.C. § 1184(c)(1).

## II.    The District Court Correctly Rejected Appellants' Challenges to the 2015 Rules.

The district court properly rejected Appellants' challenges to the Departments' authority to issue the 2015 Rules, concluding that "the Program's current regulatory scheme is consistent with Congress's intent," as gleaned from statutory text, structure, and history. JA515-521.[11] As the court put it, "in light of the principles articulated by the Supreme Court, Congress has not been silent." JA520. This Court should affirm.

DOL, in performing the consultative role Congress expressly provided for, reasonably relies on legislative rules to administer its issuance of labor certifications that DHS has determined are a prerequisite to any H-2B petition. JA520; *LFA*, 745

---

[11] Appellants do not challenge the Rules' substance, but only *DOL*'s authority to issue and implement them. JA502 (distinguishing Appellants' "structure[al]" challenges from prior H-2B "substan[tive]" suits). While Appellants claim that they brought an "*ultra vires* challenge" that the Rules were "substantively defective because the Departments expressly failed to consider either national or employers' interests" and "restricted the maximum petition length to 9 months," App.Br.8, these arguments were not fully developed below and they are even less developed on appeal, preventing an adequate response. Similarly, while *headings* in their brief purport to challenge the Departments' *joint* exercise of authority, App.Br.12, they fail to meaningfully develop this argument. *Brown*, 785 F.3d at 923.

F.3d at 669. As the district court noted, the absence of an express statutory statement that DOL shall issue rules to provide H-2B advice does not invalidate the 2015 Rules where "'the history of the H-2B program demonstrates Congress's expectation that DOL would engage in legislative rulemaking.'" JA520 (citation omitted). *Humana v. Blue Cross*, 622 F.2d 76, 78 (4th Cir. 1980) (grant of rulemaking authority need not be specific); *see also Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991); *Am. Fed. of Gov. Employees v. OPM*, 821 F.2d 761, 770 (D.C. Cir. 1987). Instead, the relevant inquiry is whether Congress granted DOL jurisdiction over a specific subject matter. *Production Tool Corp. v. ETA*, 688 F.2d 1161, 1166-67 (7th Cir. 1982) (DOL has authority to issue permanent labor-certification regulations even where Congress did not specifically grant rulemaking authority). While Section 1184(c)(1)'s provision for "consultation" is silent as to whether the consultant, DOL, may rely on general standards embodied in regulations when consulting with DHS, as the district court and Third Circuit held, the INA's structure, purpose, and history resolve the ambiguity in favor of DHS's regulatory decision to rely on DOL-labor-certifications issued pursuant to regulations. JA516-21; *LFA*, 745 F.3d at 674.

*First*, DOL's authority to participate in the joint rulemaking with DHS flows from its consultative role under section 1184(c)(1), so long as DHS seeks its consultation. *LFA*, 745 F.3d at 669. Thus, because DOL has authority as DHS's consultant, it necessarily has authority to resolve factual issues pertinent to its

35

consultative role through prospective rulemaking. *Id.* at 674 ("Without the ability to establish procedures to administer the temporary labor certification process, the DOL would not be able to fulfill the consulting role[.]"); *Lopez*, 531 U.S. at 243-44 (agency "not required continually to revisit issues that may be established fairly and efficiently in a single rulemaking proceeding").

*Second*, DOL's authority to participate in joint rulemaking through its consultative role on labor market matters within its expertise is *necessarily* implied in section 1184(c)(1) given the preference for rulemaking over *ad hoc* administration. *Morton v. Ruiz*, 415 U.S. 199, 231-32 (1974). When Congress grants an agency authority to act in a certain area, here to consult with DHS in the H-2B program, the APA provides the agency with two primary means to act: adjudications or rulemaking. 5 U.S.C. §§ 553-554. By stating that agencies may not issue substantive rules "except within the jurisdiction delegated to the agency and as authorized by law," *id.* § 558(b), Congress intended to provide agencies with powers that "may be readily *inferred* from the framework of the act … or [] *logically necessary* for the conduct of the powers granted to the agency." Clark, Attorney General's Manual on the APA 89 (emphasis added). "But whether an agency's powers are express or implied, in either case they may be exercised." *Id.* Rulemaking to structure DOL's labor-market advice for DHS reflects a reasonable interpretation and implementation of the statute given the uniformity, predictability, and

36

opportunity for the agencies to apprise themselves of relevant issues or views that legislative rules provide. *Int'l Union v. MSHA*, 626 F.3d 84, 95 (D.C. Cir. 2010). Indeed, without rulemaking, the public would be deprived of procedural protections that are unavailable in case-by-case adjudication. *Nat'l Petroleum Ref. Ass'n v. FTC*, 482 F.2d 672, 683-84 (D.C. Cir. 1973). DHS must adjudicate and seek "consultation" on thousands of petitions each year, 8 U.S.C. § 1184(g)(1)(B), and an absence of prospective rules governing DOL's consultation would lead to delay, lack of uniformity, and re-adjudication of basic issues with each petition.[12]

*Third*, structural considerations support DOL's authority to participate in the 2015 rulemaking. DHS is not the only agency administering the INA. DOL also has a significant role in defining conditions governing the importation of foreign workers. *E.g.*, 8 U.S.C. §§ 1182(a)(5) (permanent labor certifications); 1182(n) (H-1B nonimmigrant workers). DOL does not have *express* authority to issue rules governing labor certifications in these other programs, *id*., but given Congress's expectation that it play a significant role in protecting the domestic labor market, DOL has done just that in each of these areas. 20 C.F.R. Part 655 Subpart H (H-1B regulations); Part 656 Subpart C (permanent labor certifications); *Production Tool Corp*, 688 F.2d at 1167 (DOL has rulemaking authority over permanent labor

---

[12] Congress's intent that rules of general applicability govern the Departments' consultation and determinations is evidenced by its allotment of up to 66,000 H-2B visas to be issued each year—a cap that is continually reached.

certifications even in "[t]he absence of an express delegation of legislative power");

*Kutty v. DOL*, 764 F.3d 540, 547-48 (6th Cir. 2014) (H-1B program). This same authority to issue rules in aid of DOL's role in labor-certification processing exists in the H-2B program absent an express grant of rulemaking authority, especially given Congress's awareness of DOL's exercise of rulemaking authority in its consultative role. *See infra*; *LFA*, 745 F.3d at 673-74. DOL's rulemaking is also consistent with the overall objective of the H-2B statute, which is to permit employers to import foreign workers to perform non-agricultural work, provided that "unemployed persons capable of performing…service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(B). Answering this statutory question after assessing the domestic labor market is precisely within DOL's particular institutional expertise—expertise that DHS acknowledged it lacks.

Appellants say there is no "dispute" that "DOL cannot adjudicate without rulemaking authority," and instead broadly assert that "Congress has not explicitly extended a[ny] governmental function to DOL." App.Br.13. As explained, this is not the standard. Regardless, Congress *did* explicitly extend a "governmental function" to the "appropriate agencies" DHS elected to consult. 8 U.S.C. § 1184(c)(1). Appellants' challenges are without merit.

To start, Appellants' only argument specifically concerning DOL's rulemaking authority, as opposed to objections to DOL playing *any* role in the

program, disputes the district court's finding of DOL's long-standing "legislative" rules and its exhaustive recounting of Congress's endorsement of those rules. App.Br.37-43. Appellants are flatly wrong that DOL did not issue legislative rules until 2008 (*see infra*)—a position the Government never adopted. *Cf.* App.Br.37. And, while the evidence of legislative intent recounted by the district court alone supports DOL's authority, the court based its decision on more than that. Namely, "DOL's rulemaking … is also consistent with the objective of the statute …, which is to permit U.S. employers" to seek foreign workers, "provided that 'unemployed persons capable of performing … service or labor cannot be found in this country.'" JA520 (quoting § 1101(a)(15)(H)(ii)(b)). The court also specifically explained why it rejected the *Bayou* cases' conclusion that DOL lacked rulemaking authority and agreed with the Third Circuit in *LFA*. JA521; *cf.* App.Br.13 (relying solely on *Bayou*). It ultimately declined "to take from DOL a power that it has openly exercised for decades." JA520-21.

*Second*, Appellants' position is that DOL cannot participate in the rulemaking governing its labor certifications, but neither can DHS unilaterally publish rules controlling DOL. App.Br.10. This is illogical for the reasons already addressed. To be sure, DOL is narrowly limited to issuing rules only on labor-market questions within its expertise, *LFA*, 745 F.3d at 674, and the 2015 joint rulemaking ensures that

accountability remains with DHS. *Cf.* App.Br.28 (alleging DHS has "subverted" Congress's decision "to hold DHS politically accountable").

Moreover, courts *required* DOL to engage in notice-and-comment rulemaking to establish labor-certification procedures. *CATA I*, 2010 WL 3431761, at \*24; *Mendoza*, 754 F.3d at 1021-25; *see* Clark, Attorney General's Manual on the APA 89 (rulemaking may be authorized when "logically necessary"). The implication of Appellants' position is that DOL would have to revert back to issuing the informal guidance courts prohibited. The irony of this position is that notice-and-comment rulemaking benefits employers like Appellants by providing them with advance notice of what is required of them and protects against arbitrary case-by-case decisionmaking.

Notably, the Departments' *joint* promulgation of *legislative* rules was reasonable and the result of conflicting court orders. On the one hand, DOL was told that it "likely" cannot unilaterally issue rules "without the DHS." *Bayou*, 713 F.3d at 1084. At the same time, DOL was enjoined from relying on procedures issued without notice-and-comment. *CATA II*, 933 F. Supp. 2d at 709, 716. On the other hand, the district court here questioned whether "DHS alone could issue [the 2015 Rule] that purports to govern the Secretary of Labor … and is published under DOL's title of the [CFR]." JA526; *see also* App.Br.10. Thus, the 2015 Joint Rules explain that "[t]o ensure that there can be no question about the authority for and

40

validity of the regulations in this area, DHS and DOL … together are issuing" the rule. 80 Fed. Reg. at 24,045. Nothing prohibits this joint participation.

## A. <u>Congress Ratified DOL's H-2B Role</u>

As the district court held (JA514-21), the overall regulatory scheme of the INA, legislative history, and subsequent legislation ratifying DHS's interpretations further demonstrate that DHS lawfully interpreted the statute as permitting it to require both labor certifications as a condition precedent and DOL's participation in rulemaking to establish the process by which DOL issues certifications. Although the core of Appellants' arguments is that Congress has not affirmatively allowed for the specific consultative relationship between DHS and DOL, "[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983); *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978). To the extent the statutory text does not permit DOL's H-2B role (it does), ample legislative history demonstrates that its role is lawful.[13]

---

[13] Most recently, the Supreme Court pointed to congressional awareness of "the legal backdrop against which Congress legislated" as cautioning against abrogating DHS's power. *Nielsen v. Preap*, —S. Ct.—, 2019 WL 1245517, at *10 (Mar. 19, 2019).

DOL has played a role in the administration of the immigration laws in general, and the admission of foreign workers in particular, since its inception in 1913.[14] Pub. L. No. 426-62, § 3. When DOL was first created, it housed the Bureaus of Immigration and Naturalization. *See id.* As early as 1917, the Secretary of Labor and Bureau of Immigration, then part of DOL, worked together to manage the importation of foreign laborers. Pub. L. No. 64-301, ch. 29 (1917). In 1933, the two bureaus were consolidated to form INS, which remained part of DOL until 1940, *see* Exec. Order No. 6166, § 14 (1933), when it was transferred to the Department of Justice, *see* 54 Stat. 1238, where it remained until the 2002-creation of DHS, *see supra* n.1.

Long before IRCA's creation of the modern "H-2B" program in 1986, INS for decades required H-2 employers to obtain "a certification from the Secretary of Labor" "stating … that the employment policies of [DOL] have been observed." 31 Fed. Reg. 4,446-03 (1966); 18 Fed. Reg. 4,925 (1953); *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 804-05 (D.C. Cir. 1985) ("Congress has [] been concerned with the impact of competition by foreigners…since 1885," and, since 1952, excluded H-2 laborers "if the Secretary of Labor certified" that U.S. labor would be adversely affected). To that end, since at least 1968, DOL has

---

[14] Indeed, Appellants' assertion that "[h]istorically, DOL's Secretary had a negligible role in temporary foreign labor needs," App.Br.28, is incredible. *Compare* H.R. Rep. 99-682 pt.1 at 89, 106, *with* App.Br.41 (DOL had "no" or "vague" roles).

structured procedures for labor certifications through legislative rules. 33 Fed. Reg. 7,570 (1968); 43 Fed. Reg. 10,306 (1978) (codified in 20 C.F.R.). As the district court noted, these legislative rules were "strikingly similar to the 2015 Rules at issue here." JA517, 520 ("DOL is not engaged in some sudden power-grab. DOL has not simply been *involved* in the H-2B program; it has actually been issuing legislative rules since the 1960s.").

Just as it is today, "[t]he statutory basis for the Labor Department's involvement is the requirement for consultation … in … 8 U.S.C. 1184(c)." *Temporary Worker Programs*, 96th Cong., 2d sess., 63 (1980) ("INS Regulations…require Labor Department certification…as a *prerequisite* for admitting H-2B workers, thus following the pattern established during the initial period of the temporary foreign labor programs, and after 1947."); *id.* (discussing "[a]dministrative *procedures developed jointly* in 1948 by [INS] and the…U.S. Employment Service"); *cf.* App.Br.39-40 (arguing "DOL did not engage in longstanding legislative rules" or historically cite § 1184 as authority).

In enacting IRCA, Congress repeatedly acknowledged DOL's practice of issuing H-2 labor certifications and legislative rules, yet it did not alter the non-agricultural program or limit DOL's authority.[15] H.R. Rep. No. 99-682, pt.1, at 80

---

[15] Appellants suggest that the Court must look only to Congress's intent in first enacting the INA in 1952. App.Br.22, 28-36. In doing so, they ignore evidence of congressional intent in 1986 during the enactment of IRCA, which amended the INA

43

("This…'H-2 program' has been used extremely [sic] by…[non-agricultural] employers….Detailed regulations governing the program have been issued by…Department of Labor…."); *see also id.* ("[T]he Committee strongly urges the promulgation of regulations consistent with existing….Department of Labor regulations…."). Specifically concluding that the non-agricultural program "has worked reasonably well," Congress chose to leave intact the statutory text conferring broad discretion to DHS over that program and, by implication, the preexisting regulatory scheme—a major component of which included DOL's legislative rules and labor certifications. *Id.* at 50-51, 80-82; *see Eltra Corp.*, 579 F.2d at 298 (relying on "Congress's long acquiescence in the [agency's] construction and, more importantly, by its specific approval as expressed in the House Report"). Notably, before IRCA, the Supreme Court had also recognized DOL's H-2 rulemakings and INS's reliance on DOL's initial labor-market determinations under section 1184(c) in *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 595-96 (1982). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and adopt that interpretation when it re-enacts a statute without change," as it did in 1986. *Lorillard*, 434 U.S. at 580-81; *CFTC v. Schor*, 478 U.S. 833, 846 (1986); *U.S. v. Davison Fuel & Dock Co.*, 371 F.2d 705 (4th Cir. 1967). This presumption is even

---

and actually created the H-2B program.

stronger here where, as noted, Congress explicitly acknowledged DOL's rulemaking.

Furthermore, the Supreme Court held in *Schor* that deference to the agency's interpretation was "especially warranted" where Congress had twice amended the applicable statute after the agency declared by regulation that it would exercise jurisdiction. 478 U.S. at 845-46. Since IRCA, and for the last 32 years, Congress has chosen on multiple occasions to leave DOL's labor certifications and rulemaking intact. First, in 2005, Congress amended the H-2B statute to permit delegation of enforcement powers on DOL, without abrogating DOL's rulemaking or labor-certification authority. REAL ID Act, Pub. L. No. 109-13, § 404 (2005). It would make little sense for Congress to specifically identify DOL as the only agency to whom DHS could delegate the authority to sanction employers that violate H-2B requirements if Congress did not endorse DOL's H-2B role. To the contrary, in hearings on the REAL ID Act, congressional members acknowledged DOL's regulations and that "employers must demonstrate to State and Federal departments of labor that there are no available U.S. workers and then "they must obtain an *approved* labor certification from the U.S. Department of Labor." 151 Cong. Rec. pt. 5, at 6,282-89, 6,535-36, 6,844-46 (April 13, 2005); *see also* 151 Cong. Rec. pt. 7, at 9,018-20 (May 10, 2005).

45

Second, in 2011, Congress withheld appropriations to implement DOL's 2011 wage rule, but not its 2008 rule. Pub. L. No. 112-55, Div. B, Title V, § 546 (2011); Pub. L. No. 112-74, Div. F, Title I, § 110 (2011). The conference report accompanying the "minibus" appropriations bill directed DOL to continue using DOL's 2008 legislative rule to administer the program. H.R. Rep. No. 112-284, 157 Cong. Rec. H7528 (2011). Congress's selectivity in this regard shows that if Congress considered DOL's practice of using legislative rules *ultra vires*, it would not have funded them. *Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 293-94 (1958), *overruled in part on other grounds*, 438 U.S. 645 (1978); *Fleming*, 331 U.S. at 116; *U.S. ex rel. & for Use of Tennessee Val. Authority v. Two Tracts of Land*, 456 F.2d 264 (6th Cir. 1972) (repeated enactment of appropriations for project, over objections that no authority existed to carry out project, supports interpretation that authority does exist).

Additionally, when Congress creates a program and appropriates funds for an agency to administer it, courts presume that the funded agency will necessarily engage in the "formulation of policy and the making of rules to fill any gap left, implicitly or explicitly[] by Congress." *Morton*, 415 U.S. at 231. Here, Congress has repeatedly directed DOL to use appropriated funds to administer the H-2B program. Pub. L. No. 114-113, §§ 111(a)(3) (2016) (discussing DOL's role in the H-2B process regarding employers' dates of need), 112 (employees' prevailing wages),

113 (instructions about how DOL may "*regulat[e* the] admission of temporary workers under the H-2B program") (emphasis added); Pub. L. No. 113-235, § 108 (2015) (similar); Pub. L. No. 113-76, § 113 (2014) (similar). It follows that Congress reasonably expects DOL to use rules to formulate the procedures necessary to provide DHS with labor-market advice.

Congress has also acquiesced in the Departments' decision to issue rules *jointly*, when it appropriated funds for provisions of the 2015 Program and Enforcement Rules. Pub. L. No. 113-235, § 108 (2015); Pub L. No. 114-113 (2016); Pub. L. No. 115-141 (2018); Pub. L. No. 115-245 (2019). And in 2017-2019, Congress authorized DHS, "after consultation with the Secretary of Labor," to increase the number of H-2B visas available. Pub. L. No. 115-31, Div. F, § 543 (2017); Pub. L. No. 115-141, Div. M, § 205 (2018); Pub. L. No. 116-6, Div. H, § 105 (2019). This frames the manner in which the statutory text must be read and is fully in line with the "assum[ption] … that Congress intended to retain the agenc[ies]'[] interpretation." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 140 (4th Cir. 2015) (citation omitted).

Appellants' citation to several failed bills, or proposals by outside entities, in years ranging from pre-IRCA to 2013, App.Br.28-37, is seriously flawed. First, failed bills reflect, at most, the views of a few individual members of Congress, not Congress as a whole. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633,

47

649-50 (1990) ("It is a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns…a proposal that does not become law."). Also, "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979). And Appellants provide no evidence that these bills—most of which were comprehensive immigration reform proposals to amend numerous *other* parts of the INA—were rejected specifically because Congress disapproved of proposals to clarify DOL's H-2B role. Any refusal "to mandate" DOL's H-2B role, as Appellants characterize it, App.Br.36, is just as likely to be a refusal to mandate *how* DHS must exercise its authority.

Additionally, while these proposed bills might represent those *particular* legislators' attempts to give DOL a "new" power (as Appellants argue), they also might reflect a desire to reaffirm or clarify DOL's existing powers. *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170-71 (1968) (Mere "requests for legislation" do not reflect congressional belief that agency "did not already possess regulatory authority"); *United States v. Wise*, 370 U.S. 405, 411 (1962) ("Logically, several equally tenable inferences could be drawn from the failure of Congress to adopt an amendment…including the inference that existing legislation already incorporated the offered change."). Indeed, the most recent failed bill Appellants cite from 2013 expressly proposes "clarification" of DOL's labor-certification and

48

rulemaking authority. Err.Add.130. Finally, most of Appellants' submissions relates to debate about DOL's authority in the H-2 *agricultural* program—a contentious topic among some members who wished to secure necessary farm labor for their constituents. Even then, Congress rejected objections to DOL's labor-market determinations and rulemaking authority. H.R. Rep. No. 99-682, pt.1, at 80.

## III.    <u>The District Court Correctly Rejected Enforcement-Based Challenges.</u>

The district court upheld the 2015 Rule and DOL's implementation of it. JA524. It also concluded that DOL enforcement authority gave it concomitant rulemaking authority to "support its enforcement efforts." JA523. Both conclusions are correct.

As an initial matter, Appellants' challenges to the 2015 Enforcement Rule were underdeveloped and not discussed "with any degree of particularity," as the district court noted. JA524. Appellants also fail to allege *any* injury caused by the 2015 Enforcement Rule. No Appellant suggested that this Rule has been applied to it or that DHS or DOL has otherwise exercised enforcement powers against it. JA91 (affidavits alleging injury but not from any enforcement action or rule). This is fatal to Appellants' challenges because an "abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III." *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991). "Such a showing requires more than allegations of damage to an

49

interest in seeing the law obeyed or a social goal furthered." *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quotations and citations omitted). Rather, Appellants "must allege that discrete programmatic concerns are being directly and adversely affected" by the challenged action. *Id.* Appellants have never even tried to satisfy this standard.

Regardless, section 1184(c)(14)(A) expressly provides DHS with H-2B enforcement authority. Under that section, if DHS "finds, after notice and an opportunity for a hearing, a substantial failure to meet any of the conditions of the petition … or a willful misrepresentation of a material fact in such a petition," DHS may, "in addition to any other remedy authorized by law, impose such administrative remedies … as [DHS] determines to be appropriate. 8 U.S.C. § 1184(c)(14)(A)(i). In 2005, Congress specifically granted DHS the power to delegate this authority to DOL. *Id.* § 1184(c)(14)(B). Expressly invoking its authority under sections 1184(c)(14)(B) and 1103(a)(6), DHS then delegated to DOL all of the enforcement authority in section 1184(c)(14)(A)(i). JA82-87 (Notice of Delegation & IAA). DOL accepted the delegation effective January 18, 2009. *Id.* An interagency agreement (IAA), signed by DHS and DOL, sets forth additional details about the agreed-upon delegation, and specifies that "DOL will issue regulations as needed for the implementation and operation of the enforcement authority." JA84. This delegation was also provided for in DHS's 2008 Rule, 73 Fed. Reg. at 78,115, 78,130; 8 C.F.R.

50

§ 214.2(h)(6)(ix). The 2015 Rule reaffirmed DOL's six-year-long exercise of delegated enforcement authority from DHS. 80 Fed. Reg. at 24,085.

Appellants press several theories against the Departments' authority to issue the 2015 Enforcement Rule. App.Br.55-58. None are correct.

*First*, Appellants allege that after DHS delegated enforcement authority to DOL, "it simply had no power by which to redefine a covered 'petition' to include the attached labor certification." App.Br.56. But by participating jointly in the rulemaking, which reaffirmed several instances of the agencies' long-established authorities in the program, DHS did not exercise or take back enforcement authority. JA82-83 (stating that DHS did not retain any enforcement authority it was permitted to delegate). The fact that the 2015 Rule was signed by both Departments does not call into question the continuing validity of the delegation. As the preamble states, "this … rule sets forth enforcement procedures and remedies pursuant to DHS's delegation of enforcement authority to DOL" and "reaffirms that DOL … is authorized to conduct the enforcement activities." 80 Fed. Reg. at 24,085. In any event, DHS was specifically tasked by Congress with defining the required content of petitions. 8 U.S.C. § 1184(c)(1).[16] DHS's 2008 regulations require labor certifications as part of the H-2B petition filing, explicitly making DOL-labor-

---

[16] *See also* 8 C.F.R. §§ 103.2(b)(1) ("Any evidence submitted in connection with a benefit request is incorporated into and considered part of the request."); 1.1 ("benefits request" includes petitions).

51

certifications a condition of the petition. 8 C.F.R. § 214.2(h)(6)(iv)(A). Accordingly, DHS has included within DOL's enforcement authority the power to enforce the conditions of its own labor certification together with any other conditions of the petition. *Id.* § 214.2(h)(6)(ix); 73 Fed. Reg. at 78,130. Appellants mistakenly imply that it was the 2015 Rule that provided this definition, but the 2015 Rule merely tracks DHS's 2008 definition, *see* 73 Fed. Reg. at 78,129 (8 C.F.R. § 214.2(h)(6)(iv)(A)), which is not contested here. Thus, DHS defined "petition" to include labor certifications *before* it delegated enforcement authority to DOL. To the extent DHS's 2008 definition *is* contested, it is time-barred for the reasons discussed.

*Second*, Appellants argue that DOL lacks *any* authority to issue rules, jointly or unilaterally, governing its enforcement powers. App.Br.56-58. They also suggest that DHS could not issue and publish regulations in its own C.F.R. title purporting to govern DOL. App.Br.10. But, putting aside the specific delegation of rulemaking authority from DHS in 2009, once DOL was delegated enforcement authority, prospectively-issued rules implementing that authority were necessary to provide notice to the regulated community of what is required to participate in the program and penalties for non-compliance. DOL must clarify what a violation is in order to enforce it. *Nat'l Ass'n of Home Builders v. OSHA*, 602 F.3d 464, 467 (D.C. Cir. 2010) (delegated authority to determine standards includes authority to determine what a violation is). This is especially so in the enforcement context. *Gen. Elec. Co.*

52

*v. EPA*, 53 F.3d 1324, 1330-32 (D.C. Cir. 1995) (enforcement agency must provide notice of its interpretation of what regulations prohibit before imposing penalties); *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 3-4 (D.C. Cir. 1987). The "general rule" that "courts have adopted toward agencies' use of rulemaking power to define standards of conduct by regulated parties," *Nat'l Petroleum Refiners*, 482 F.2d at 680, favors allowing the agency charged with adjudicating a violation to use "supplemental means of putting flesh on that standard, such as rulemaking," *id.* at 675. It is therefore reasonable for DOL to establish standards that apply to its own enforcement actions. *Nat'l Ass'n of Home Builders*, 602 F.3d at 467 ("In giving…authority to define what constitutes a violation…the Act necessarily gave…the authority to define the unit of prosecution.").

This is different from the cases cited by Appellants, App.Br.56-58, where Congress separately granted rulemaking and investigative authority to different agencies on the disputed topic. Here, Congress delegated enforcement authority to DHS, but permitted DHS to delegate aspects of this power—including the concomitant rulemaking authority—to DOL. DHS delegated to DOL authority to issue rules governing H-2B enforcement pursuant to sections 1184(c)(14)(B) and 1103(a)(6), which were *expressly* cited in the IAA, JA84; *cf.* App.Br.55 (claiming that DHS's position that it delegated rulemaking authority under these sections is a "*post hoc* rationalization"). Thus, because DHS, the delegator, possesses express

rulemaking authority in section 1103(a)(3), as well as broad delegation power in section 1103(a)(6), and enforcement authority in section 1184(c)(14)(B), DOL, as the delegatee, assumes that authority and may act as the delegator would act to effectively exercise its delegated authority, including issuing rules to govern the delegated subject matter. *See Vierra v. Rubin*, 915 F.3d 1372, 1378 (9th Cir. 1990).

*Third*, Appellants allege that DOL exceeds its authority because "Congress only authorized redelegation of the remedies contained in § 1184(c)(14)(A)(i)." App.Br.58. Appellants' interpretation of 8 U.S.C. § 1184(c)(14)(A)(i) is that DHS may delegate *only* the authority included in clause (i) to impose remedies, but not the authority to hold a hearing under subparagraph (A). But DHS was expressly authorized to delegate to DOL the authority to hold hearings, which is included in the terms of section 1184(c)(14)*(A)(i)*. Clause (i) cannot be read in isolation from subparagraph (A).[17] *Ayes v. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006). And procedural due process entails notice and an opportunity for a hearing prior to imposing penalties.

---

[17] Subparagraph (A) is an "if" statement and (A)(i) is implicitly a "then" statement: "*If* the Secretary…finds, after notice and an opportunity for a hearing, a substantial failure to meet any of the conditions of the petition…or a willful misrepresentation of a material fact...the Secretary...may, in addition to any other remedy authorized by law,...impose such administrative penalties...as the Secretary...determines to be appropriate." 8 U.S.C. § 1184(c)(14)(A)(i) (emphasis added).

*Fourth*, Appellants argue DOL unlawfully exercises debarment authority under section 1184(c)(14)(A)(ii). App.Br.58. But DHS did not delegate, and DOL does not exercise, the debarment authority authorized in section 1184(c)(14)(A)(ii); rather, DOL has the inherent authority to prevent parties from participating in its own program. 73 Fed. Reg. at 78,043-44 (citing, *inter alia*, *Janik Paving & Constr., Inc. v. Brock*, 828 F.2d 84, 91 (2d Cir. 1987), which recognized implied powers of administrative enforcement and held DOL possesses inherent debarment authority). The IAA acknowledged that DOL's inherent debarment power is separate from DHS's debarment authority under section 1184(c)(14)(A)(ii). JA86 (DOL will communicate "any debarment under 20 CFR § 655.31 so [DHS] may take appropriate action with respect to the petition, including exercising [its] authorities under...§ 1184(c)(14)(A)(ii)").

## **CONCLUSION**

This Court should affirm the district court's decision in full.

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1.     It contains 12,998 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Kathryne M. Gray*
KATHRYNE M. GRAY
U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2019, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Kathryne M. Gray*
KATHRYNE M. GRAY
U.S. Department of Justice