**RECORD NO. 18-2370**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**OUTDOOR AMUSEMENT BUSINESS ASSOCIATION, INC.,** *et al.,*
Plaintiffs/Appellants

**v.**

**DEPARTMENT OF HOMELAND SECURITY,** *et al.,*
Defendants/Appellees

Appeal from the United States District Court for the District of Maryland
Hon. Ellen L. Hollander, District Judge

*AMICI CURIAE* **BRIEF OF COMITÉ DE APOYO DE LOS**
**TRABAJADORES AGRICOLAS (CATA),** *et al.,*
**IN SUPPORT OF APPELLEES**
*and*
**SUPPORTING AFFIRMANCE OF THE JUDGMENT BELOW**

Edward Tuddenham
23 Rue du Laos
75015 Paris, France
+336 84 79 89 30

Clermont Ripley
North Carolina Justice Center
224 S. Dawson St.
Raleigh, NC 27601
(919) 856-2154

Art Read
Justice at Work
990 Spring Garden St.
Philadelphia, Pa. 19123
(215) 690-5687

Vanessa Coe
Legal Aid Society of Palm
Beach County, Inc.
423 Fern Street, Suite 200
West Palm Beach, Fl 33401
(561) 655-8944

D. Michael Dale
Northwest Workers' Justice Project
812 SW Washington, Suite 225
Portland, Or 97205
(503) 730-1706

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF THE AMICI CURIAE ........................................................ 1

STATEMENT OF THE CASE ............................................................................................ 3

REGULATORY HISTORY OF THE H-2B PROGRAM ................................................ 4

    I.    Establishment of the H-2 Program ................................................................. 4

    II.   The Attorney General's Regulation of the H-2 Program ......................... 5

    III.  DOL Regulation of H-2 Labor Certifications ............................................ 8

    IV.  Adoption of the Immigration Reform and Control Act of 1986 ............ 9

    V.   The Challenged 2008 and 2015 Rules ....................................................... 11

ARGUMENT ...................................................................................................................... 12

    I.    DHS Has Authority to Condition H-2B Visas on an Approved Labor Certification ..... 13

    II.   DOL Has Authority to Issue Regulations Governing the H-2B Labor Certification Process ..................................................... 19

CONCLUSION .................................................................................................................. 26

CERTIFICATE OF COMPLIANCE ............................................................................... 27

CERTIFICATE OF SERVICE ........................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**

*Bayou Lawn and Landscape v. Sec. of Labor,*
713 F.3d 1080 (11th Cir. 2013) ...............................................................14

*CATA v. Solis,* 2010 WL 3431761 (E.D.Pa. Aug. 30, 2010)...................................29

*Chevron USA, Inc. v. Nat. Resources Defense Council, Inc,*
467 U.S. 837 (1984)...................................................................... passim

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).....................................................26

*Cline v. Hawke,* 51 Fed.Appx 392, 395 (4th Cir. 2002)..........................................25

*E.I. Dupont de Nemours & Co. v. Collings,* 432 U.S. 46 (1977) ...........................30

*Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*,
614 F.3d 1276 (11th Cir. 2010) ...............................................................25

*G.H. Daniels v. Perez,* 626 Fed.Appx. 205 (10th Cir. 2015) ..................................21

*Gauley Mountain Coal Co. v. Director of U.S.B. of Mines,*
224 F.2d 887 (4th Cir. 1955) ...................................................................19

*Gomez v. Fla. State Employment Service,* 417 F.2d 569 (5th Cir. 1969)............7, 10

*Hernandez Flecha v. Quiros,* 567 F.2d 1154 (1st Cir. 1977) ....................................8

*Louisiana Forestry Assn v. Sec. of Labor,*
745 F.3d 653 (3d Cir. 2014)................................................... 14, 18, 22, 30

*Mendoza v. Perez,* 754 F.3d 1002 (D.C. Cir. 2014) ......................................... 28, 29

*Morton v. Ruiz,* 415 U.S. 199 (1974)............................................................ 24, 26

*Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356 (1973)...............................26

*NAACP, Western Region v. Brennan*, 360 F.Supp. 1006 (D.D.C. 1973)...............10

*Nat'l Ass'n of Pharm. Mfrs. v. Food & Drug Admin.*,
637 F.2d 877 (2d Cir. 1981)........................................................................25

*Outdoor Amusement Business Association, Inc. v. DHS,*
334 F. Supp.3d 697 (D. Md. 2018) ...............................................................4

*Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981) ..............................20

*Silva v. Sec'y of Labor*, 518 F.2d 301 (1st Cir. 1975) ..............................27

*Southern Pac. Transp. Co. v. Watt,* 700 F.2d 550 (9th Cir. 1983) ..........19

*Texas Rural Legal Aid v. Legal Serv. Corp.*, 940 F.2d 685 (D.C. Cir. 1991) .........25

*U.S. v. Telecom Ass'n v. F.C.C.,* 359 F.3d 554 (D.C. Cir. 2004) ..................... 19, 20

*United States v. Matherson,* 367 F. Supp. 779 (E.D.N.Y.),
*aff'd.* 493 F.2d 1339 (2d Cir. 1974) .........................................................19

*United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) ....................................... 24, 25

**Statutes**

29 U.S.C. § 49 ..............................................................................................6

5 U.S.C. §§ 553-554.....................................................................................22

6 U.S.C. § 101, *et seq*.................................................................................4

8 U.S.C. § 1101(a)(15)(H)(ii) (1952) .....................................................4, 6

8 U.S.C. § 1101(a)(15)(H)(ii)(a)...................................................................9

8 U.S.C. § 1101(a)(15)(H)(ii)(b).............................................................9, 14

8 U.S.C. § 1103(a)(6).................................................................................11

8 U.S.C. § 1184(a) ..................................................................................4, 14

8 U.S.C. § 1184(c) ............................................................................... passim

8 U.S.C. § 1184(c)(1)................................................................... 5, 9, 14, 19

8 U.S.C. § 1188 ...................................................................................10

8 U.S.C. § 1188(a)(1)........................................................................23

8 U.S.C. § 1188(c)(3)(B) ...................................................................23

8 U.S.C. § 1188(c)(4)....................................................................... 23

**Other Authorities**

16 Fed. Reg. 9142 (Sept. 8, 1951) ......................................................6

18 Fed. Reg. 4925 (Aug. 19, 1953 ......................................................6

18 Fed. Reg. 4925 (Aug. 19, 1953)......................................................6

31 Fed. Reg. 4446 and 6611 (Mar. 16 and May 4, 1966)........................7

33 Fed. Reg. 4629 (Mar. 16, 1968) ....................................................9

33 Fed. Reg. 7570 (May 22, 1968) .....................................................9

38 Fed. Reg. 35427-28 (Dec. 28, 1973)...........................................6, 7

43 Fed. Reg. 10306-18 (Mar. 10, 1978) .............................................9

49 Fed. Reg. 25841 (Jun. 25, 1984) ...................................................9

52 Fed. Reg. 20496 (June 1, 1987) ...................................................23

55 Fed. Reg. 50510 (Dec. 6, 1990) ................................................9, 10

73 Fed. Reg. 78104 (Dec. 19, 2008) ........................................ 3, 11, 18

77 Fed. Reg. 10038 (Feb. 21, 2012) ..................................................12

80 Fed. Reg. 24042 (Apr. 29, 2015) ................................................3, 12

80 Fed. Reg. 24146 (Apr. 29, 2015) ....................................................3, 12

**Regulations**

20 C.F.R. § 655.0(a)(2) ...........................................................................7

20 C.F.R. § 655.10 ..................................................................................3

20 C.F.R. §§ 655.1-.73 ...........................................................................3

29 C.F.R. § 503 ......................................................................................3

8 C.F.R. § 214.2(h) .............................................................................4, 11

8 C.F.R. § 214.2(h) (6)(iv) ...................................................................3, 7

8 C.F.R. § 214.2(h)(6)(4)(1) .................................................................13

8 C.F.R. § 214.2(h)(6)(iii)(A) .................................................................6

8 C.F.R. § 214.2(h)(6)(iv)(A) ...............................................................11

## STATEMENT OF INTEREST OF THE AMICI CURIAE

Amici curiae are three organizations, Comité de Apoyo de los Trabajadores Agricolas ("CATA"), Pineros y Campesinos Unidos Del Noroeste ("PCUN"), and Northwest Forest Workers Center (NFWC), and seven individuals, Margharita Kuri, Timothy King, Andrew Mitschell, Henry Wojdylo, Ronald Nyenhuis, Shirley Harmon, and Antonio Rivera Martinez. All of these amici appeared as amici in the district court to support the federal Defendants and defend the challenged regulations. They also participated in the summary judgment oral argument that resulted in the judgment that is the subject of this appeal.

As detailed in their motion for leave to file this *amici curiae* brief, the individual *amici* are U.S. workers who compete with H-2B workers for jobs in the United States. The organizational *amici* are each membership organizations who seek to assist their U.S. worker members who compete with H-2B workers for jobs in the United States. The individual amici and the members of the organizational amici are the intended beneficiaries of the Department of Homeland Security (DHS) and Department of Labor (DOL) regulations challenged in this appeal. Those regulations are designed to ensure that U.S. workers receive job preference over foreign workers and to further ensure that the wages and working conditions of U.S. workers are not adversely affected by competition from foreign H-2B workers. Because *amici,* as U.S. workers who compete with foreign H-2B

workers, are precisely the workers that the challenged regulations are designed to protect, they have a strong legal interest in defending the challenged regulations.

*Amici's* motion for leave to file a brief *amici curiae* provides the authority for filing this brief.

## STATEMENT OF THE CASE

Appellants challenge three sets of regulations governing the H-2B visa program:

(1) The DHS regulation making an approved labor certification from the Secretary of Labor a mandatory part of an H-2B petition ("The 2008 DHS Rule"). 73 Fed. Reg. 78104 (Dec. 19, 2008), codified at 8 C.F.R. § 214.2(h) (6)(iv).

(2) The 2015 Program Rules issued jointly by DOL and DHS which set forth the minimum work terms and recruitment requirements for obtaining a DOL H-2B labor certification as well as DOL's rules for enforcing the terms of work offered in H-2B labor certification applications. 80 Fed. Reg. 24042 (Apr. 29, 2015), and codified at 20 C.F.R. §§ 655.1-.73 and 29 C.F.R. § 503.

(3) The 2015 Wage Rule issued jointly by DOL and DHS which sets forth DOL's procedures for determining the minimum wage which must be offered to obtain an approved DOL H-2B labor certification. 80 Fed. Reg. 24146 (Apr. 29, 2015) codified at 20 C.F.R. § 655.10.

Although Appellants also challenged certain aspects of DOL's rules as arbitrary and capricious, they did not pursue those claims below or on appeal. Their sole argument on appeal is that the challenged rules were issued in excess of the authority granted by Congress in the Immigration and Nationality Act. The district court found otherwise and dismissed the case. *Outdoor Amusement*

*Business Association, Inc. v. DHS,* 334 F. Supp.3d 697 (D. Md. 2018). This appeal followed.

## REGULATORY HISTORY OF THE H-2B PROGRAM

### I.   Establishment of the H-2 Program

The Immigration and Nationality Act of 1952 (INA) created numerous non-immigrant visa categories including an "H-2" visa category for foreign workers coming to perform temporary services or labor "if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii) (1952).  Beyond that brief definitional requirement, the INA gave the Attorney General, now DHS,[1] complete discretion over the issuance of H-2 visas.  The Attorney General was authorized to grant H-2 visas "under such conditions as the Attorney General may by regulations prescribe," 8 U.S.C. § 1184(a), and to do so "upon petition of the importing employer . . . in such form and contain[ing] such information as the Attorney General shall prescribe."

The only limit placed on the Attorney General was the requirement that he or she consult "with appropriate agencies of the Government" before issuing such

---

[1] The Homeland Security Act of 2002, 6 U.S.C. § 101, *et seq.*, transferred the authority for administering certain immigration functions from the Attorney General and the Immigration and Naturalization Service to the new Department of Homeland Security.  6 U.S.C. §§ 202, 236.  The savings provisions of that Act make clear that the delegation of the authority and duties of DOL under 8 U.S.C. § 1184(c) and 8 C.F.R. § 214.2(h) were unaffected by this transfer of authority.  6 U.S.C. § 552.

visas. 8 U.S.C. § 1184(c)(1). In requiring this consultation Congress intended to

"provide[] strong safeguards for American labor." H.R. Rep. No. 1365, 82d Cong.,

2d Sess., reprinted in 1952 U.S. Code Cong. & Ad. News 1653, 1705. As

originally proposed the Act did not contain this consultation requirement, S.716,

82d Cong., 1st Sess. § 215(c) (1951), causing domestic labor representatives to

object:

> [It is] undesirable to give such authority to a person not thoroughly
> acquainted with the labor needs of the economy.... In order to protect
> domestic labor from competition of nonresident aliens, the law should
> provide that the Secretary of Labor should be required to make a
> thorough survey of the labor market, certify the need for the importation
> of foreign labor, and establish regulations governing the importation and
> use of such labor.

Revision of Immigration, Naturalization, and Nationality Laws: J. Hearings on S.

716, H.R. 2379, and H.R. 2816 Before the Subcomms. of the Comms. on the

Judiciary, 82d Cong., 1st Sess. 664-65 (statement of Walter Mason, member,

National Legis. Comm., American Federation of Labor). Congress then changed

the H-2 provisions to require that the Attorney General decide H-2 petitions only

"after consultation with appropriate agencies of the Government." 8 U.S.C. §

1184(c).

## II.    The Attorney General's Regulation of the H-2 Program

Immediately after the passage of the INA, the Attorney General designated

DOL as the appropriate agency with which to consult. 18 Fed. Reg. 4925 (Aug.

19, 1953). Since that time, the Attorney General, and subsequently DHS, have required that the consultation with DOL take the form of a "temporary labor certification" from the Secretary of Labor advising "the director [of DHS] on [1] whether or not United States workers capable of performing the temporary services or labor are available and [2] whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers." [2] 8 C.F.R. § 214.2(h)(6)(iii)(A). *See* 38 Fed. Reg. 35427-28 (Dec. 28, 1973). The two parts of the required labor certification – unavailability of U.S. workers and no adverse effect—work together to carry out Congress' mandate that H-2 visas only issue "if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. §1101(a)(15)(H)(ii) (1952).

[2] Prior to 1973, the certification took the form of a "clearance order from the U.S. Employment Service bearing a statement that (1) qualified workers of the kind proposed to be imported are not available and (2) the Employment Service policies have been observed." 18 Fed. Reg. 4925 (Aug. 19, 1953). After 1973 the certification took the form quoted above. 38 Fed. Reg. 35427-28 (Dec. 28, 1973). The U.S. Employment Service, a bureau within DOL created by the Wagner Peyser Act of 1933, operates an interstate system of employment service offices. 29 U.S.C. § 49. A job offer became known as a "clearance order" because it was filed with a local employment service office then circulated, or "cleared" through the system, to areas where unemployed workers might be found. *See Gomez v. Fla. State Employment Service,* 417 F.2d 569, 571-573 (5th Cir. 1969). In order "to offer some protection to those employees who shift about the country to meet the needs of employers who voluntarily use the resources of the federal government" DOL promulgated Employment Service regulations setting substantive work standards for clearance orders, including a requirement that they offer at least the prevailing wage. *Id ;* 16 Fed. Reg. 9142 (Sept. 8, 1951).

In order to measure the availability of U.S. workers, it is first necessary to set minimum, non-depressed terms of work that will be offered to U.S. workers. If wage offers are depressed or would have an adverse effect, "the ultimate determination of availability within the meaning of the INA cannot be made since US. Workers cannot be expected to accept employment under conditions below the established minimum levels." 20 C.F.R. § 655.0(a)(2). *See Hernandez Flecha v. Quiros,* 567 F.2d 1154, 1156 (1st Cir. 1977) (the balance struck by the H-2 program requires employers to offer specified minimum terms of work to test U.S. worker availability; conversely U.S. workers cannot demand better terms or they are, by definition, unavailable).

An employer seeking H-2B visas is required to attach an approved labor certification from DOL to its H-2B petition. *Id.* §214.2(h)(6)(iv). From 1966 until 2008, employers who were unable to obtain an approved labor certification from DOL were "permitted to present [to DHS] countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor have been observed."[3] That provision was eliminated in 2008 because, as DHS explained,

> DHS . . . does not have the expertise needed to make any labor market determinations, independent of those already made by DOL. For this reason, DHS finds that it is in the best interests of

[3] 31 Fed. Reg. 4446 and 6611 (Mar. 16 and May 4, 1966); 38 Fed. Reg. 35427-28 (Dec. 28, 1973).

> U.S. workers and the public that DHS not approve H-2B petitions
> when DOL had denied an employer's application for temporary
> labor certification.

73 Fed. Reg. 78104, 78110 (Dec. 19, 2008).

## III.    DOL Regulation of H-2 Labor Certifications

In order to provide the consultation mandated by the INA, DOL has, since

1953, relied on regulations to structure its labor certification process. DOL initially

relied on its Wagner Peyser Act regulations which set minimum work terms of

work for the U.S. Employment Service clearance system. *See* 16 Fed. Reg. 9142

(Sept. 8, 1951), and footnote 2, *supra*.  In 1964 DOL published regulations

governing labor certifications for H-2 agricultural workers.  Those regulations set

forth minimum work terms, including minimum wage rates, that had to be offered

to test U.S. worker availability as well a mandatory recruitment procedures. 29

Fed. Reg. 19101 (Dec. 30, 1964).  In 1968 DOL adopted regulations to structure

H-2 certifications for non-agricultural occupations.  Those non-agricultural

certification regulations provided:

> (a) When received, applications for certification shall be forwarded by
> the local office of the State employment service to the appropriate
> Regional Administrator of the Bureau of Employment Security who
> will issue them if he finds that qualified persons in the United States
> are not available and that the terms of employment will not adversely
> affect the wages and working conditions of workers in the United
> States similarly employed.

> (b) In making this finding, such matter as the employer's attempts to
> recruit workers and the appropriateness of the wages and working

conditions offered, will be considered.  The policies of the U. S. Employment Service set forth is Parts 602 and 604 of this chapter shall be followed in making the findings.[4]

*See* 33 Fed. Reg. 4629 (Mar. 16, 1968); 33 Fed. Reg. 7570 (May 22, 1968).[5]

Other than minor revisions made in 1978, 43 Fed. Reg. 10306-18 (Mar. 10, 1978), and 1990, 55 Fed. Reg. 50510 (Dec. 6, 1990), these regulations remained in effect until 2008 when DOL published more detailed regulations governing certifications for non-agricultural H-2B visas.

## IV.    Adoption of the Immigration Reform and Control Act of 1986

The Immigration and Control Act of 1986 (IRCA) divided the H-2 program into two parts, H-2A for agricultural workers and H-2B for non-agricultural workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and (b). The statute made several substantive changes to the H-2A agricultural visa program, including codifying DOL as the appropriate agency for consultation, 8 U.S.C. § 1184(c)(1), and mandating the prior regulatory requirement that consultation take the form of a

---

[4] The U.S. Employment Service policies, then codified at 20 C.F.R. Parts 602 and 604, required substantive protections such as payment of the prevailing wage, terms of work no less favorable than those prevailing in the area, and transportation to the job site. *See NAACP, Western Region v. Brennan,* 360 F.Supp. 1006, 1012-1013 fn 30, 31, 32 (D.D.C. 1973); *Gomez,* 417 F.2d at 571 fn 5. These policies originally applied to agricultural workers but DOL's 1968 regulation quoted above made them applicable to non-agricultural H-2 workers as well.

[5] DOL elaborated on these non-agricultural labor certification regulations in General Administration Letter No. 10-84 which was published in the federal register but not subjected to notice and comment rulemaking.  49 Fed. Reg. 25841-25845 (Jun. 25, 1984).

labor certification. 8 U.S.C. § 1188. However, Congress made no changes in the statutory language governing non-agricultural visas except to change the designation from H-2 to H-2B. Thus, DHS continued to have discretion to choose both the agency with which to consult and the form and subject matter of the consultation.

Because IRCA did not make any changes to the way the non-agricultural H-2 program had been administered, neither DHS nor DOL made substantive changes to their regulations governing such visas. As it had since 1953, DHS continued to consult with DOL by requiring that H-2B visa petitions contain an approved labor certification from the Secretary of Labor. DOL likewise continued to follow the same non-agricultural certification procedures that it had used for the H-2 program since 1968. *See* 55 Fed. Reg. 50510 (Dec. 6, 1990) (readopting non-agricultural H-2 regulations as H-2B regulations). As it had prior to IRCA, DOL supplemented its H-2B regulations with "General Administration Letters" setting forth in greater detail the terms of work and recruitment efforts that an employer had to meet to obtain an H-2B labor certification.[6]

---

[6] *See, e.g.,* GAL 1-95 ("Procedures for H-2B Temporary Labor Certification in Nonagricultural Occupations") (Nov. 10, 1994); GAL 2-97 ("Changes in the Prevailing Wage Process for Labor Certification During Fiscal Year 1997) (Oct. 1, 1996); GAL 2-98 ("Prevailing Wage Policy for Non-Agricultural Immigration Programs") (October 31, 1997); and "Prevailing Wage Determination Policy Guidance for Non-Agricultural Immigration Programs" (March 8, 2005).

**V.    The Challenged 2008 and 2015 Rules**

In 2008, DHS amended its H-2B certification regulation to eliminate the provision, added in 1966, that allowed an employer denied labor certification to present "countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor had been observed." 73 Fed. Reg. 78104, 78110-78111, 78129 (Dec. 19, 2008) *codified at* 8 C.F.R. § 214.2(h)(6)(iv)(A).  By eliminating that provision, DHS made an approved labor certification a mandatory pre-condition to obtaining H-2B visas. This change is one of the rules that Appellants challenge.

On the same day, DOL published its first substantive changes to its H-2B labor certification regulations since 1968. 73 Fed. Reg. 78020 (Dec. 19, 2008). These 2008 rules set forth by regulation the labor certification procedures that, for the most part, had previously been contained in DOL's General Administration Letters.  DOL cited as authority for the regulations, *inter alia,* 8 U.S.C. § 1184(c) and 8 C.F.R. § 214.2(h), the same authority cited for its earlier rulemaking. Pursuant to a delegation of authority from DHS under 8 U.S.C. §§ 1103(a)(6) and § 1184(c)(14)(B) of the INA, DOL also published rules governing its enforcement of the conditions of work for H-2B workers.  73 Fed. Reg. at 78040, 78047, 78063-78067 (Dec. 19, 2008.

DOL published revised H-2B labor certification rules in 2012, 77 Fed. Reg. 10038 (Feb. 21, 2012). Those rules were challenged by two different groups of H-2B employers. In one action, the Eleventh Circuit affirmed an order preliminarily enjoining enforcement of the rules on the grounds that DOL lacked rule making authority to structure its H-2B labor certification process. *Bayou Lawn and Landscape v. Sec. of Labor,* 713 F.3d 1080 (11th Cir. 2013) (affirming preliminary injunction). In the other, the Third Circuit upheld DOL's authority to issue the 2012 H-2B Rules. *Louisiana Forestry Assn v. Sec. of Labor,* 745 F.3d 653 (3d Cir. 2014) (hereafter *"LFA"*).

To avoid further challenges, DOL and DHS jointly issued amended H-2B labor certification rules in 2015. 80 Fed. Reg. 24042 (Apr. 29, 2015) (comprehensive rule); as well as a joint rule setting forth the process for determining the prevailing wage for an occupation. 80 Fed. Reg. 24146 (Apr. 29, 2015) (wage rule). These latter two jointly issued rules, along with DHS 2008 rule, are the subject matter of this suit.

## **ARGUMENT**

*Amici* join all of the arguments set forth in the Government's brief and offer the following additional points:

I.   **DHS Has Authority to Condition H-2B Visas on an Approved Labor Certification**

Appellants assert that DHS' regulation requiring that H-2B petitions be accompanied by an approved labor certification violates the INA. 8 C.F.R. § 214.2(h)(6)(4)(1). *Chevron USA, Inc. v. Nat. Resources Defense Council, Inc,* 467 U.S. 837 (1984), provides the appropriate standard of review. As *Chevron* explains, when an agency adopts a regulation interpreting a statute, the first question that must be asked is whether Congress has spoken directly to the issue. If it has, then "that intention is the law and must be given effect." *Id.* at 843 n.9. Conversely, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are entitled to controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."[7] *Id.* at 843-44.

Here, it is apparent that Congress did not speak to the question of the role of DOL labor certifications in the H-2B process. To the contrary, Congress gave DHS unfettered discretion to determine the "conditions" under which H-2B visas

---

[7] Appellants spend a considerable portion of their brief listing numerous doctrines and principles why *Chevron* does not apply to this case, including the unlawful-delegation doctrine, constitutional avoidance, clear-statement rules, major question doctrine, and the rule of lenity. Appellants never explain how those rules apply in this case or why they preclude normal *Chevron* analysis. Nor do Appellants explain what is the proper way to analyze the lawfulness of the challenged regulation if *Chevron* does not apply.

would be approved, 8 U.S.C. § 1184(a), as well as to determine the form and content of H-2B petitions. *See,* 8 U.S.C. § 1184(c)(1). While the INA directs DHS to consult with 'appropriate agencies of government," it leaves the choice of the agency and the form of the consultation as gaps for DHS to fill. *Id*

Since Congress did not speak to DOL's role in the H-2B process, the analysis proceeds to *Chevron* step two which asks whether DHS' interpretation of the INA, as embodied in the challenged regulation, is "permissible." *Chevron,* 467 U.S. at 843. Under this step, the agency's regulation is "entitled to controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 843-44. DHS's regulation is none of those things.

Given Congress' sweeping grant of authority to DHS, DHS' decision to consult with DOL and to require that the consultation take the form of an approved "labor certification," is clearly consistent with the statutory language of 8 U.S.C. §§ 1184(a) and (c)(1). Moreover, requiring consultation to take the form of an approved labor certification is an entirely reasonable way to carry out Congress' mandate in 8 U.S.C. § 1101(a)(15)(H)(ii)(b) that H-2B visas be issued only if unemployed persons capable of performing the job cannot be found and that is particularly true given DOL's expertise in labor market matters and DHS' admitted lack of expertise in that area. Thus, DHS' requirement of an approved labor certification is entitled to controlling deference under *Chevron.*

Despite the force of the *Chevron* analysis, Appellants argue that, by making

an approved labor certification a mandatory part of the contents of an H-2B

petition, DHS is abdicating its statutory responsibility to adjudicate H-2B petitions

and improperly delegating that authority to DOL. *See* Doc 15-1 at 14. That is

simply not true. DOL's function in the H-2B visa approval process is, as it has

been since 1953, to provide consultation in the form of a labor certification as

requested by DHS. It has no role whatsoever in defining what is to be certified and

it has no role in determining how DHS uses the certification (or the denial thereof)

in the H-2B approval process. Rather, in compliance with the mandate of

§1184(c), it is DHS alone that decided DOL's consultation should take the form of

an H-2B labor certification attesting to unavailability and no adverse effect, and it

is DHS alone that decided to give controlling weight to that certification. *See LFA*,

745F.3d at 672 (DHS retains its authority to determine whether petitioners meet

the H-2B visa criteria even though employers must first obtain DOL's advice to

DHS in the form of a labor certification).

To be sure, if DOL refuses to approve a labor certification no H-2B visas

will issue, but DHS is fully within its rights to condition its approval of an H-2B

visa on a petitioner first obtaining DOL's approval. "[A] federal agency entrusted

with broad discretion to permit or forbid certain activities may condition its grant

of permission on the decision of another entity, such as a state, local or tribal

government, so long as there is a reasonable connection between the outside

entity's decision and the federal agency's determination." *U.S. v. Telecom Ass'n v.*

*F.C.C.,* 359 F.3d 554, 567 (D.C. Cir. 2004). *See, e.g., Southern Pac. Transp. Co.*

*v. Watt,* 700 F.2d 550, 552-554 (9th Cir. 1983) (Interior Department regulation

conditioning approval of right-of-way application on railroad's obtaining approval

of tribal officials does not constitute improper delegation of authority); *Gauley*

*Mountain Coal Co. v. Director of U.S.B. of Mines,* 224 F.2d 887, 890 (4th Cir.

1955) (rejecting delegation challenge where agency read federal statute as

permitting it to require a state to classify a mine in a certain category as a condition

precedent to federal regulation); *United States v. Matherson,* 367 F. Supp. 779,

781-83 (E.D.N.Y.) *aff'd.* 493 F.2d 1339 (2d Cir. 1974) (rule issued by

Superintendent of Fire Island National Seashore requiring an approved vehicle use

permit from the local municipality as a condition precedent to granting a permit to

operate a motor vehicle on national seashore lands). *Cf., Sierra Club v. Costle*, 657

F.2d 298, 406 (D.C. Cir. 1981) (noting that "government simply could not function

effectively or rationally if key executive policymakers were isolated from each

other and from the Chief Executive. Single mission agencies do not always have

the answers to complex regulatory problems").

Here, Congress gave DHS discretion to determine the conditions under

which H-2B visas would be granted and there is no question that requiring an

approved labor certification is reasonably connected to DHS' statutory duty to ensure that H-2B visas are granted only if U.S. workers are not available to fill the jobs for which the visas are sought. Thus, under *U.S. Telecom* and the other cases cited above, DHS acted reasonably and within its Congressionally granted discretion when it chose to condition approval of an H-2B petition on an approved DOL labor certification.

Appellants also argue that DHS' making an approved labor certification a condition precedent for an H-2B visa is contrary to the "consultation" language in 8 U.S.C. § 1184(c). Appellants cite only *G.H. Daniels v. Perez,* 626 Fed.Appx. 205, 210-211 (10th Cir. 2015), as support for this proposition. According to *Daniels*, consultation means to "take counsel together, deliberate, confer, and to seek advice from." *Daniels* concludes from this definition that deferring to advice is not consultation because "advice is only that; it can, and sometimes should, be prudently ignored." *Id.* at 211. But the question is not whether, as a general matter, there are circumstances in which one should ignore a consultant's advice. Rather, the question posed by DHS' regulation is whether, in the specific context of adjudicating H-2B petitions, it is reasonable for DHS to defer to DOL's labor market advice. Clearly such deference is appropriate because, as DHS explained when it adopted the challenged regulation,

> DHS . . . does not have the expertise needed to make any labor market determinations, independent of those already made by

> DOL.  For this reason, DHS finds that it is in the best interests of
> U.S. workers and the public that DHS not approve H-2B petitions
> when DOL had denied an employer's application for temporary
> labor certification.

73 Fed. Reg. at 78110 (Dec. 19, 2008).  No one would doubt that a cancer patient

lacking medical expertise acts reasonably in deferring to his doctors' treatment

advice.  DHS' decision to defer to DOL's labor market advice is similarly

reasonable.[8]  The Third Circuit reached this same conclusion in rejecting a

challenge to this DHS requirement of a DOL certification:

> We find that there is a 'reasonable connection' between the DHS's
> determination of H-2B petitions and the DOL's decisions on
> temporary labor certifications in light of the statute's silence as to
> what constitutes permissible 'consultation' and the specific
> agencies with which DHS may consult regarding H-2B visas
> determinations. . . .
>
> We thus reject Appellants' contention that the [DOL] 2011 Wage
> Rule was promulgated pursuant to an unlawful subdelegation of
> the DHS's authority to administer the H-2B program.  We hold,
> instead, that the 2011 Wage Rule was issued pursuant to the
> DHS' permissible 'conditioning' of the grant of H-2B petitions on
> the advice of the DOL pursuant to the DHS's charge from
> Congress to 'determine[]' H-2B visa petitions 'after consultation
> with appropriate agencies of Government.'

---

[8]  That is not to say that DHS must defer to DOL.  It could revert to its prior
position of allowing countervailing evidence of compliance with DOL's labor
policies to be submitted in the absence of a certification.  Assuming both
approaches are reasonable, the choice between the two is one for DHS to make in
light of such things as its evaluation of the administrative costs involved in
reconsidering DOL's advice, and the relative reliability of DOL's advice versus
DHS' reevaluation of that advice.  That DHS has chosen to defer to DOL's
certification decision is a reasonable choice that must be upheld, even if it is not
the only choice available.

*LFA,* 745 F.3d 653, 673, 674-675 (3d Cir. 2014).

## II.    DOL Has Authority to Issue Regulations Governing the H-2B Labor Certification Process

The second issue raised by Appellants is whether DOL has authority to issue legislative regulations governing its labor certification process – i.e. does it have the authority to publish regulations setting the minimum terms of work and minimum recruitment procedures that it deems necessary to measure the availability of U.S. workers and certify the absence of an adverse effect. Appellants address this question as a problem of subdelegation of powers from DHS.  But it is unnecessary to get into questions of subdelegation because, properly analyzed, the INA itself confers rule-making authority on DOL to structure its consultation duty, just as DOL has done for more than fifty years.

Whether the INA confers rule-making authority on DOL must be analyzed under *Chevron*.  With respect to *Chevron* step one, nothing in the INA explicitly gives DOL authority to issue rules with respect to its labor certification advice, nor does anything explicitly forbid such rule-making.  However, read as a whole, the H-2B provisions of the INA clearly imply a Congressional intent to permit limited rule-making.

In adopting the consultation provision in 8 U.S.C. § 1184(c)(1), Congress expressed a clear intent that some agency of government participate in the

administration of the H-2B visa program by consulting with DHS.  The choice of

the consulting agency and the subject matter of the consultation were gaps that

Congress left for DHS to fill.  But Congress also left a gap with respect to how the

consulting agency, once chosen, would go about providing the consultation

requested by DHS.  By imposing a statutory duty on the agency selected by DHS

to participate in the administration of the H-2B statute through consultation, and by

leaving a gap as to how the consulting agency should fulfill that duty, Congress

necessarily, if implicitly, conferred rule-making authority on the chosen agency to

promulgate policies and rules necessary to carry out its consultation. *See United

States v. Mead Corp.*, 533 U.S. 218, 229 (2001) ("Congress, that is, may not have

expressly delegated authority or responsibility to implement a particular provision

or fill a particular gap. Yet it can still be apparent from the agency's generally

conferred authority and other statutory circumstances that Congress would expect

the agency to be able to speak with the force of law when it addresses ambiguity in

the statute or fills a space in the enacted law. . ."); *Morton v. Ruiz,* 415 U.S. 199,

231 (1974) ("The power of an administrative agency to administer a

congressionally created . . . program necessarily requires the formulation of policy

and the making of rules to fill any gap left, implicitly or explicitly by Congress").

*See also*, *Cline v. Hawke,* 51 Fed.Appx 392, 395 (4th Cir. 2002) ("An

administrative agency's authority need not be expressly delegated by Congress.

Sometimes the legislative delegation to an agency on a particular question is implicit.).[9]

To be sure, DOL's role in the administration of the H-2B statute is limited to its role as a consultant. But the fact that DOL's assigned role is narrow does not mean that the normal rules governing implied rule-making power do not apply. After all, the *Mead* case itself talks about implying rule-making authority to fill "a particular gap." It is not the size of the gap that is to be filled that matters, it is the fact that Congress has imposed a duty on an agency and left a gap as to how the agency is to fulfill that duty.[10] A statutory duty coupled with a gap as to how to carry out the duty, necessarily, if implicitly, grants rule-making authority because "[n]o matter how rational or consistent with Congressional intent a particular

---

[9] Other courts have also recognized that rule-making authority may be granted implicitly. *See, e.g.*, *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1281 (11th Cir. 2010) (recognizing the validity of an implicit delegation of rulemaking authority); *Texas Rural Legal Aid v. Legal Serv. Corp.*, 940 F.2d 685, 691-92 (D.C. Cir. 1991) (LSC has rulemaking authority even where Congress did not specifically delegate LSC this authority); *Nat'l Ass'n of Pharm. Mfrs. v. Food & Drug Admin.*, 637 F.2d 877, 889 (2d Cir. 1981) (upholding agency's legislative rules under an implicit delegation theory).

[10] Rules issued by an agency in response to an implicit grant of authority must be "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 369 (1973); *Chrysler Corp. v. Brown*, 441 U.S. 281, 304 (1979) (holding that, for a regulation to be a legislative rule with the force and effect of law, the agency must "establish a nexus between the regulations and some delegation of the requisite legislative authority by Congress"). But Appellants do not contend, nor could they, that the challenged 2015 Program Rules and Enforcement Rules are not reasonably related to filling the consultation "gap" left by Congress.

[agency] decision might be, [that decision] cannot be made on an *ad hoc* basis by [the agency]. The Administrative Procedure Act (APA) was adopted to provide, *inter alia,* that administrative policies affecting individual rights and obligations be made pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of ad hoc determinations." *Morton,* 415 U.S. at 232-33. The APA provides DOL with two primary means to carry out its consultation duty: either through adjudications or rulemaking. 5 U.S.C. §§ 553-554. Thus, because DOL has a duty to consult and because its consultation affects rights of members of the public who seek labor certifications, the gap in §1184(c) as to how DOL is supposed to accomplish its consultation compels the conclusion that Congress must have intended the consulting agency chosen by DHS to be able to structure its consultation consistent with the APA either through adjudication or rule-making. DOL has chosen the latter which, given the thousands of labor certification applications it must decide each year is the only reasonable choice. *See also, Silva v. Sec'y of Labor*, 518 F.2d 301, 311 (1st Cir. 1975) (nothing that "much of the confusion" associated with the Secretary's labor certification decisions for permanent visas could be avoided by issuing suitable regulations rather than relying on case by case adjudication).

That Congress must have intended to confer rule-making power on DOL (or whatever agency was chosen by DHS) is evident from the H-2A provisions of

IRCA.  When IRCA split the H-2 program into two, Congress itself chose DOL as

the consulting agency for the H-2A program, 8 U.S.C. §1184(c), and required the

consultation to take the form of a labor certification certifying both unavailability

and no adverse effect. 8 U.S.C. § 1188(a)(1).  In so doing, Congress granted DOL

rule-making authority to establish the minimum work terms and recruitment

procedures necessary to make the required certification.[11]  *See* 52 Fed. Reg. 20496

(June 1, 1987) (DOL regulations implementing IRCA H-2A labor certification

process); *Mendoza v. Perez,* 754 F.3d 1002*,* 1021-1025 (D.C. Cir. 2014) (holding

DOL certification rules were legislative and had to be published through notice and

comment rule-making).  But if Congress' recognized that DOL needed rule-

making authority to consult by way of a labor certification for purposes of the H-

2A program, it must have recognized that the consulting agency chosen by DHS

for H-2B program would also need rule-making authority to structure its

consultation:  After all, <u>Congress gave DHS the discretion to select the same</u>

<u>agency (DOL) as well as the discretion to require precisely the same kind of</u>

<u>consultation (a labor certification) as Congress mandated for the H-2A program</u>—

which is precisely what DHS did.  Since Congress gave DHS the discretion to

---

[11] Congress gave DOL explicit rule-making authority to regulate housing, 8 U.S.C. § 1188(c)(4), and the statute specifically refers to the need of employers to comply with the "benefits, wages and working conditions required pursuant to this section and regulation," *id.* 8 U.S.C. § 1188(c)(3)(B)(i), and the Secretary's duty to publish regulations based on his findings about U.S. worker availability and adverse effect. *Id.* § 1188(c)(3)(B)(iii).

choose the same consultation process that Congress chose for the H-2A program, a process that Congress recognized required rule-making power, Congress must have intended to grant the agency chosen by DHS the same rule-making power.

The highly complex factual determinations necessary to issue a labor certification necessarily requires the setting of mandatory minimum work standards and recruitment efforts which can only be done through the exercise of legislative rule-making power. *See CATA v. Solis,* 2010 WL 3431761 at *19 (E.D.Pa. Aug. 30, 2010) (holding that minimum wage requirements for H-2B certification are legislative rules that must be published by notice and comment); *Mendoza,* 754 F.3d at 1021-1025 (holding DOL's procedures for granting H-2A labor certification are legislative rules that must be subject to notice and comment procedures). Because DHS had historically required a labor certification, and was authorized to continue to do so as a result of IRCA, Congress must have intended, implicitly, to authorize the consulting agency chosen by DHS to issue the regulations needed to provide the requested consultation.[12] It is only through the publication of clear standards and procedures that DOL is able to make reasoned and non-arbitrary decisions about U.S. worker availability and the necessary minimum terms of work. As the Third Circuit recognized in *LFA,* 745 F.3d at 674,

---

[12] Whether DHS could have defined the required consultation in a way that did not require the consulting agency to issue rules is a question that is not presented by this case.

"[w]ithout the ability to establish procedures to administer the temporary labor certification process, the DOL would not be able to fulfill the consulting role," assigned by Congress, and "defined by DHS's charge to the DOL to issue temporary labor certifications."

Thus, *Chevron* step one answers the question as to DOL's rule-making authority: Congress did speak to the issue by implicitly granting rule-making authority to the consulting agency chosen by DHS. Even if this Court were to find the INA ambiguous on this point, DOL's interpretation of the INA as implicitly granting it rule-making authority to structure its consultation is an entirely reasonable reading of the statue and is, therefore, entitled to deference. That interpretation is consistent with the language and the purpose of the statute, and the use of legislative regulations to structure consultation is neither arbitrary nor capricious. It scarcely needs repeating that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *E.I. Dupont de Nemours & Co. v. Collings,* 432 U.S. 46, 54-55 (1977).

DOL's rule-making authority is further supported by the fact that Congress has repeatedly ratified that rule-making authority as explained in the Government's brief.

## **CONCLUSION**

For the foregoing reasons, amici curiae respectfully submit that this Court

should affirm the opinion of the district court dismissing Appellants' challenge to

DHS' and DOL's H-2B rules.

Respectfully submitted, this 10th day of April 2019.

/s/ Clermont F. Ripley
Clermont F. Ripley
North Carolina Justice Center
224 S. Dawson Street
Raleigh, North Carolina 27601
(919) 856-2154

Edward Tuddenham
23 Rue du Laos
75015 Paris, France
+336 84 79 89 30

Vanessa Coe
Legal Aid Society of Palm Beach County, Inc.
423 Fern Street, Suite 200
West Palm Beach, Florida 33401
(561) 655-8944

Art Read
Justice at Work
990 Spring Garden St.
Philadelphia, Pennsylvania 19123
(215) 690-5687


D. Michael Dale
Northwest Workers' Justice Project
812 SW Washington, Suite 225
Portland, OR 97205
(503) 730-1706

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,203 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14pt.


Dated: April 10, 2019                    /s/ Clermont F. Ripley
                                          Clermont F. Ripley
                                          *Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2019, I filed the foregoing brief with the Clerk of Court using the Court's electronic case filing system, which will provide service of the brief on all attorneys of record.

I further certify that I caused the required bound copy of the foregoing brief to be filed with the Clerk of Court by placing it in a postage pre-paid enveloped addressed to the Clerk and sending it by U.S. Mail.

<u>/s/ Clermont F. Ripley</u>
Clermont F. Ripley
North Carolina Justice Center
224 S. Dawson Street
Raleigh, North Carolina 27601
(919) 856-2154
*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

**THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO.** 18-2370 _____ as

[✓] Retained  [ ] Court-appointed(CJA)  [ ] Court-assigned(non-CJA)  [ ] Federal Defender  [ ] Pro Bono  [ ] Government

COUNSEL FOR: Amici Curiae _____

_____ as the

(party name)

[ ] appellant(s)  [ ] appellee(s)  [ ] petitioner(s)  [ ] respondent(s)  [✓] amicus curiae  [ ] intervenor(s)  [ ] movant(s)

/s/ Clermont F. Ripley _____

(signature)

**Please compare your information below with your information on PACER. Any updates or changes must be made through PACER's Manage My Account.**

| | |
|---|---|
| Clermont F. Ripley | (919) 856-2154 |
| Name (printed or typed) | Voice Phone |
| North Carolina Justice Center | (919) 856-2175 |
| Firm Name (if applicable) | Fax Number |
| PO Box 28968 | |
| Raleigh, North Carolina 27611-8068 | clermont@ncjustice.org |
| Address | E-mail address (print or type) |

### CERTIFICATE OF SERVICE

I certify that on Aoril 10, 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Clermont F. Ripley _____      April 10, 2019 _____
Signature                                           Date

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 18-2370      Caption: Outdoor Amusement Business Assoc. v. DHS

Pursuant to FRAP 26.1 and Local Rule 26.1,

Pineros y Campesinos Unidos del Noroeste
(name of party/amicus)

who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Clermont F. Ripley      Date: _____ April 10, 2019 _____

Counsel for: amici curiae

# CERTIFICATE OF SERVICE
****************************

I certify that on _____ April 10, 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Clermont F. Ripley _____      _____ April 10, 2019 _____
        (signature)                                     (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>18-2370</u>        Caption: <u>Outdoor Amusement Business Assoc. v. DHS</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Northwest Forest Workers Center</u>
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☐ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Clermont F. Ripley          Date: _____April 10, 2019_____

Counsel for: amici curiae

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____April 10, 2019_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Clermont F. Ripley          April 10, 2019
(signature)                         (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _18-2370_     Caption: _Outdoor Amusement Business Assoc. v. DHS_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Comite de Apoyo de los Trabajadores Agricolas_____
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.      Does party/amicus have any parent corporations?                ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                  ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☐ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Clermont F. Ripley                    Date: _____ April 10, 2019 _____

Counsel for: amici curiae

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ April 10, 2019 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Clermont F. Ripley                                    April 10, 2019
        (signature)                                          (date)

- 2 -